Mitchell J. Langberg, Esq., Nev. Bar. No. 10118
Laura F. Bielinski, Esq., Nevada Bar No. 10516
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
mlangberg@bhfs.com
lbielinski@bhfs.com
Telephone: (702) 382-2101
Facsimile (702) 383-8135

and

MALHAR S. PAGAY (CA BAR NO. 189289) (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: mpagay@pszjlaw.com
jfried@pszjlaw.com

Attorneys for Wynn Las Vegas, LLC d/b/a Wynn Las Vegas

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>WYNN LAS VEGAS LLC d/b/a/ WYNN LAS VEGAS, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>GGW DIRECT, LLC, a Delaware limited liability company; GGW BRANDS, LLC, a Delaware limited liability company; GGW EVENTS, LLC, a Delaware limited liability company; MANTRA FILMS, INC., a suspended Oklahoma corporation; BLUE HORSE TRADING, LLC, a California limited liability company; PEPE BUS, LLC, an inactive Montana limited liability company; SANDS MEDIA, INC., a revoked Nevada domestic corporation; JOSEPH R. FRANCIS, an individual; DAVID R. HOUSTON, an individual; and DAVID R. HOUSTON, LTD., a Nevada professional corporation, doing business as THE LAW OFFICE OF DAVID R. HOUSTON,<br><br>Defendants. | Adversary Case No.: 13-01050-MMN<br><br>Chapter 11<br><br>**NOTICE OF HEARING AND NOTICE OF MOTION TO REMAND THE REMOVED NEVADA ACTION BACK TO NEVADA STATE COURT**<br><br>**Hearing**<br><br>Date: May 8, 2013<br>Time: 9:30 a.m.<br>Place: Courtroom 2<br>U.S. Bankruptcy Court<br>District of Nevada<br>Foley Federal Building<br>300 Las Vegas Boulevard South<br>Las Vegas, Nevada 89101 |

**TO THE HONORABLE MIKE M. NAKAGAWA, UNITED STATES BANKRUPTCY JUDGE, ALL PARTIES IN INTEREST AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Wynn Las Vegas, LLC d/b/a Wynn Las Vegas ("Wynn") hereby moves (the "Remand Motion"), pursuant to 28 U.S.C. §§ 1334, and 1452 (a) and (b), to remand the above-captioned adversary proceeding to the District Court, Clark County of Nevada, Case No. a-12-660288-B, Dept. No. XI.

**PLEASE TAKE FURTHER NOTICE** that if you object or opposed the relief sought in the Remand Motion, or if you want the court to consider your support of the Remand Motion, then you must file a response with the court, and serve a copy on undersigned counsel **no later than fourteen (14) days preceding the hearing date** for the Remand Motion, unless an exception applies (see Local Rule 9014(d)(3)). The response must state your position, set forth all relevant facts and legal authority, and be supported by affidavits or declarations that conform to Local Rule 9014(c).

**PLEASE TAKE FURTHER NOTICE** that if you object to the relief requested by the Remand Motion, you *must* file a written response to this pleading with the court on or prior to the deadline set forth herein. You *must* also serve your written response on undersigned counsel.

**PLEASE TAKE FURTHER NOTICE** that if you do not file a written response with the court on or before the deadline set forth herein, or if you do not serve your written response on undersigned counsel, then the court may *refuse to allow you to speak* at the scheduled hearing and the court may *rule against you* without formally calling the matter at the hearing.

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Remand Motion will be held before a United States Bankruptcy Judge, in the Foley Federal Building, 300 Las Vegas Boulevard South, Third Floor, Bankruptcy Courtroom No. 2, Las Vegas, Nevada 89101, on **May 8, 2013 at 9:30 a.m.**

Dated: April 10, 2013

BROWNSTEIN HYATT FARBER SCHRECK, LLP
By:    */s/ Mitchell J. Langberg*
      Mitchell J. Langberg
      and
PACHULSKI STANG ZIEHL & JONES LLP

      Malhar S. Pagay
      Attorneys for Wynn Las Vegas, LLC, d/b/a Wynn Las Vegas

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT

In recent years, Joseph Francis has been involved in numerous criminal and civil actions and has been incarcerated on account of his actions relating to his "Girls Gone Wild" venture. The claims have resulted in judgments in the millions, other claims have been delayed by repeated appeals or other dilatory tactics designed to prevent the plaintiffs from recovering against Francis or one of the Girls Gone Wild companies.

When creditors successfully obtain final judgments against him, Francis moves his assets to the companies he controls and has them support his extravagant and lavish lifestyle. To this end, the GGW Debtors (defined below) pay all or substantially all of Francis's personal expenses, including his mortgage, his personal American Express bills, and hundreds of thousands of dollars of his legal fees on personal matters in which the GGW Debtors have no business interest. When creditors seek to collect from the Girls Gone Wild related entities, puppet managers with no experience or knowledge regarding the companies' operation, finances, or the inter-relationship with Francis are quickly placed in company roles. Francis himself feigns ignorance regarding the inter-relationships, finances, and operations of his Girls Gone Wild companies yet somehow he has invariably managed to collect substantial sums of money or have his personal expenses directed through the companies.

On August 18, 2009, Wynn Las Vegas, LLC d/b/a Wynn Las Vegas ("Wynn") obtained a judgment against Francis arising from his failure to repay gambling markers that now excess of $4,200,000 inclusive of pre and post-judgment interest. In addition to this judgment, Wynn and Steve Wynn obtained a defamation judgment against Francis in the amount of $7.5 million and Steve Wynn personally obtained a judgment against Francis in California in the amount of $19 million.

On the date hereof, Wynn estimates that Francis owes Wynn and Mr. Wynn well over $30,000,000 on account of these judgments. In one of its many attempts to collect the gambling debt, Wynn filed an action in the state court of Clark County, Nevada (the "Nevada State Court") on the basis of alter-ego theories for the purpose of recovering Francis' money that he has transferred to his Girls Gone Wild entities. This action has since been removed to this Court and is the subject of

this Motion. It is no surprise the action was removed because the case was not going well for Francis and the other defendants prior to removal. The Nevada State Court issued a preliminary injunction finding that there is a substantial likelihood that Wynn will prevail on its counts that the GGW Entities (defined below) are Francis's alter-egos. In another attempt to delay the case and avoid the injunction, the defendants tried to remove the Removed Nevada Action (defined below) to the United States District Court, District of Nevada on December 4, 2012, but the case was quickly remanded by the district court on December 12, 2012 on account of various infirmities regarding the basis for the removal.

Francis's and the other defendants' next attempt to delay and obstruct Wynn from recovering its multi-million judgments was to commence bankruptcy cases for certain of the Girls Gone Wild entities, which is nothing more than his personal *de facto* bankruptcy. As discussed in greater detail herein, the removal of the Removed Nevada Action is a blatant attempt at forum shopping by Francis so that he can further delay the adjudication of the Removed Nevada Action and obtain a "do over" by yet another court. In addition, the Removed Nevada Action must be remanded because it involves claims and causes of actions against non-debtor defendants against whom the United States Bankruptcy Court for the Central District of California (the "<u>California Bankruptcy Court</u>"), the current venue of the GGW Debtors' bankruptcy cases, because that court does not have jurisdiction to enter final orders against them or Wynn absent their consent. Absent their consent, the California Bankruptcy Court cannot efficiently and effectively administer the relief against the non-debtor defendants that Wynn is entitled to which could result in inconsistent rulings by the California Bankruptcy Court and other courts with competent jurisdiction over Francis and the non-debtor defendants. In addition, the failure to remand this case back to the Nevada State Court would fully eviscerate over a year's work in the Nevada State Court, require the California Bankruptcy Court to start over and rehash and adjudicate the same proceedings that have already been decided in the Nevada State Court and have been scheduled for trial in three (3) short months.

Francis obviously wants to restart the litigation in the hopes that his selection of another forum may yield different results more favorable to him. However, this type of forum shopping should not be allowed and this Court should remand Removed Nevada Action back to the Nevada

State Court to put an end to Francis' improper use of the justice system for his own personal benefit at the expense of creditors, like Wynn, that are owed millions in liquidated final judgments.

In support of the Motion, the *Declaration of Mitchell J. Langberg, Esq. in Support of Motion to Remand the Removed Nevada Action Back to Nevada State Court* (the "Langberg Declaration") is annexed hereto as **Exhibit A**. The facts stated herein are supported by the Langberg Declaration and the other exhibits annexed hereto.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Removed Nevada Action

On April 18, 2012, Wynn filed the a complaint in the District Court, Clark County, Nevada (the "Nevada Complaint") against GGW Direct, LLC "GGW Direct"), GGW Events, LLC ("GGW Events"), GGW Brands, LLC ("GGW Brands"), Mantra Films, Inc. ("Mantra Films"), Blue Horse Trading, LLC ("Blue Horse"), Pepe Bus, LLC ("Pepe Bus"), Sands Media, Inc. ("Sands Media" and collectively, the "GGW Entities" and each a "GGW Entity"), Joseph R. Francis ("Francis"), David R. Houston ("Houston"), and David R. Houston, Ltd. (the "Law Offices of Houston" and together with Francis and the GGW Entities, the "Defendants"). The action between Wynn and the Defendants (the "Removed Nevada Action") is styled as *Wynn Las Vegas LLC d/b/a Wynn Las Vegas vs. GGW Direct, LLC, et al.*, Case No. A-12-660288-B and is pending in the Nevada State Court.

The Nevada Complaint contains three counts, all of which are non-core as they relate to Francis and the other non-debtor defendants. The first count is against Francis and all of the other GGW Entities seeking a declaratory judgment that the GGW Entities are mere alter egos of Francis. The second count is against Francis and all of the other Defendants seeking an injunction prohibiting Francis and the other Defendants from transferring funds that could be used to pay the judgments of Wynn. The third count is against Houston for an accounting of the funds that have been transferred to him by Francis and the other Defendants.

On August 17, 2012, Nevada State Court issued a preliminary injunction that provides that there is a substantial likelihood that Wynn will prevail on its counts that the GGW Entities are

Francis' alter-egos and enjoined the parties from transferring assets. *See* Preliminary Injunction annexed hereto as **Exhibit B**. The events that gave rise to the Removed Nevada Action are described in detail below.

B. **Judgments against Francis for Gambling Debts**

In February 2007, Francis obtained gambling markers from Wynn totaling $2,800,000. *See Order Granting Plaintiff Wynn Las Vegas' Motion for Summary Judgment*, entered August 18, 2009 annexed hereto as **Exhibit C**, at ¶¶ 1 and 2 (the "Gambling Marker Order"). Francis, however, left the Wynn casino without repaying $2,000,000 of the gambling marker debt. Gambling Marker Order at ¶¶ 4-12. In an effort to consensually work out the repayment of the $2,000,000, Wynn waited more than a year before taking affirmative action to collect Francis' $2,000,000 gambling debt while Francis was incarcerated on an unrelated matter. Gambling Marker Order at ¶¶ 9-10. In the end, Francis refused to pay and forced Wynn to sue Francis for the $2,000,000 plus accrued interest (the "Gambling Marker Case"). Gambling Marker Order at ¶¶ 11-13. In the Gambling Marker Case, the Honorable Judge Michelle Leavitt found Francis liable and awarded Wynn $2,000,000.00 as the principal sum due on the gambling markers, plus pre-judgment interest in the amount of $838,356.00, and post-judgment interest accruing at a rate of $986.30 per day. Gambling Marker Order at pp. 5 and 6. On the date hereof, Wynn estimates that Francis owes Wynn more than $4,200,000 on account of the judgment awarded in the Gambling Marker Case.[1]

C. **Judgment Against Francis for Defamation of Wynn and Mr. Steve Wynn**

After Wynn filed the Gambling Marker Case, Francis launched a campaign of actions designed to destroy Wynn's reputation by publicly and falsely accusing Wynn and Stephen Wynn of deceiving high-end customers and breaching agreements with Francis. *See Order Granting Plaintiffs Wynn Las Vegas, LLC and Stephen Wynn's Motion for Partial Summary Judgment Regarding Defamation* Claims (the "Defamation Order") annexed hereto as **Exhibit D**, at 2:11-17, 4:17-27, and 5:1-27. As a result, Wynn and Mr. Wynn sued Francis in yet another action for defamation arising from Francis' false public statements (the "Francis Defamation Case"). *See*

---

[1] This is an estimate that was determined by calculating the pre and post-judgment interest that accrues at 18% per annum since February 17, 2007 through April 10, 2013.

DOCS_SF:82899.7 93837/001                4

Defamation Order, at 2:1-7. In the Francis Defamation Case, the Honorable Mark Denton found that Francis had again made repeated, improper, and abusive assertions of the Fifth Amendment privilege to further his goal of not testifying. *See* Defamation Judgment at 3:12-24. Nevertheless, Judge Denton found that Francis willfully and maliciously defamed Wynn and Mr. Wynn and entered judgment against Francis, awarding the plaintiffs $7,500,000 in damages, including $2.5 million in punitive damages. See Defamation Judgment annexed hereto as **Exhibit E** at 6:1-9. Between the judgment in the Francis Defamation Case and the judgment from the Gambling Marker Case, Francis owes Wynn and Mr. Wynn approximately $12,000,000. In addition to these judgments, Mr. Wynn also has a separate judgment against Francis in the amount of $19,000,000 from a California court. Langberg Declaration at 17.

**D.    Francis' Efforts to Avoid Repayment of the Gambling Debts and Defamation Claims**

Francis repeatedly impeded Wynn's attempts to prosecute its claims against him and continually obstructed Wynn's attempts to collect on its judgment in the Gambling Marker Case. To this end, Francis has been evasive and dishonest at judgment debtor exams and attempted to obstruct Wynn from obtaining information from third parties regarding his hidden earnings and assets.

During the course of three debtor's examinations, Francis continually provided incomplete and false information regarding questions about his assets, including how he makes a living and whether he receives compensation from the various "Girls Gone Wild" related entities that Francis claimed to own or with which he has been publicly affiliated.

When asked about his personal finances, how he pays for routine living expenses, or how he earns a living, Francis generally responds that he does not understand the structure of his finances despite of being the owner or controller of companies that pay for and support his lifestyle. Judgment Debtor's Examination of Joseph R. Francis, dated August 22, 2011, at 15:4-6 (the "2011 Francis Examination") annexed hereto as **Exhibit F**. Francis claims he has no idea how he obtained money in his possession or how expenses charged on his American Express credit card are paid. 2011 Francis Examination at 15:22-25 – 16:1-2. Francis has even claimed he does not know how he pays for his own groceries. 2011 Francis Examination at 14:10-18.

Similarly, Francis purports to be ignorant of how he keeps a roof over his head. Francis testified that he lives, rent free, at a home in Bel Air, California owned by the GGW Entity Blue Horse, though the mortgage is in his own name. 2011 Francis Examination at 6:21-25 – 12:23. However, when asked if he had any connection with Blue Horse, Francis stated "I don't know. I just - I would have to ask my attorney about that." 2011 Francis Examination at 7:22-23. Despite being the head and chief financial officer of his various companies, Francis disclaims any knowledge of the amount of stock he owns, the value of that stock, what portion of his companies he owns, whether the companies have assets or even whether he has an ownership interest in them. 2011 Francis Exam at 7:22-23.

### E. Wynn's Unsuccessful Collection and Garnishment Efforts

Wynn promptly domesticated its Nevada judgment in California arising from the Gambling Marker Case, and has since attempted to collect on the judgment, and obtain information in furtherance of its efforts, in both Nevada and California. Wynn also made several attempts to garnish Francis's wages and execute upon his assets, but Francis has to date succeeded in stonewalling Wynn's efforts. Langberg Declaration at ¶¶ 16-17. Wynn has also attempted to execute on funds held by Francis' attorneys. Langberg Declaration at ¶ 18. Notwithstanding its prompt and diligent efforts, Wynn has collected just over ten thousand dollars. Langberg Declaration at ¶ 19.

### F. Francis Uses the GGW Entities to Hide Assets From His Creditors

As set forth in greater detail in the pleadings filed in the Removed Nevada Action, Francis uses the GGW Entities and their bank accounts to pay his personal expenses. These expenses include hundreds of thousands of dollars in legal fees and expenses in numerous criminal and civil actions against Francis. As discussed above, after obtaining a mortgage on his Bel Air mansion, Francis transferred the ownership of the mansion to GGW Entity Blue Horse, which in turn began paying Francis' personal mortgage while he lived in the home without making any other personal

payments for the mortgage. Langberg Declaration at ¶ 20 and Residential Loan Application of Joseph R. Francis (the "Residential Loan Application") annexed here **Exhibit. G**.[2]

It has been documented that the GGW Entities regularly paid Francis's personal credit card bills. Langberg Declaration at ¶ 21 and Subpoenaed American Express Records (the "American Express Records") annexed hereto as **Exhibit H**. Most importantly, Wynn has evidence that Francis may have a significant amount of cash that was being held by GGW Direct and that was later transferred to Houston's trust account with the Law Offices of Houston, Francis' personal attorney. See Boulevard Letter annexed hereto as **Exhibit I**.

### G. Defendants' First Attempt to Remove

In furtherance of his dilatory tactics, on December 4, 2012, the Defendants first attempted to remove the Removed Nevada Action pursuant to 28 U.S.C. § 1441 to the United States District Court of the District of Nevada on the basis of diversity jurisdiction. *See* First Removal Notice annexed hereto as **Exhibit J**. However, on December 14, 2012, the United States District Court for the District of Nevada remanded the Removed Nevada Action to the Nevada State Court because the removal was improper. *See* Order Granting Remand annexed hereto as **Exhibit K**.

### H. The Removed Nevada Action Was Set for Trial

Almost immediately after the action was remanded to the Nevada State Court and prior to the current removal, the state court judge entered a scheduling order that calendared certain events and milestones beginning in April 2013 that concluded with a trial scheduled to take place in June 2013. The chart below list the key dates, milestones, and the commencement date of the trial.

| Date | Event/Milestone |
|---|---|
| April 12, 2013 | Initial Expert Disclosures |
| May 3, 2013 | Rebuttal Expert Disclosures |
| May 24, 2013 | Discovery Cut Off |
| May 30, 2013 | Status Conference |
| May 31, 2013 | Motions in Limine and Dispositive Motions |
| June 19, 2013 | Pre-Trial Memoranda |
| June 20, 2013 | Calendar Call |
| June 24, 2013 | Commence Trial |

---

[2] The Langberg Declaration also references other exhibits attached to the Motion supporting facts regarding the Bel Air mansion and the payment of the mortgage.

DOCS_SF:82899.7 93837/001                    7

1  A true and correct of the Scheduling Order is annexed hereto as **Exhibit L**.

**I.     GGW Entities Commence Bankruptcy Cases and Remove the State Court Action**

On February 27, 2013 (the "Petition Date"), GGW Direct, GGW Brands, and GGW Event (the "GGW Debtors") each commenced voluntary chapter 11 cases (the "California Bankruptcy Cases") pending before the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "California Bankruptcy Court").  The commencement of the California Bankruptcy Cases is Francis's and the other Defendants' latest effort to further delay and obstruct the execution of Wynn's judgments and insulate Francis and the other non-debtor Defendants from his creditors.

Subsequently on March 26, 2013, pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the GGW Debtors removed the Removed Nevada Action to the United States Bankruptcy Court for the District of Nevada [Docket No. 1] (the "Second Removal Notice").  A true and correct copy of the Removal Notice is annexed hereto as **Exhibit M**.  The Second Removal Notice states that Removed Nevada Action:

> is proper because it arises in and relates to "core proceedings" over which the United States Bankruptcy Court for the Central District of California, Los Angeles Division, has jurisdiction under, inter alia, 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (G), (H), (I), (K) and (O).

Second Removal Notice, ¶ 5.

Notably, the Removal Notice does not state whether the Removed Nevada Action is core or non-core, but only that it relates to "core proceedings."  Further, the Removal Notice does not state whether the Defendants consent to the bankruptcy court's jurisdiction to enter final judgments in the Removed Nevada Action as required by Bankruptcy Rule 9027(a)(1).

**J.     The Non-Debtor Defendants**

Only certain of the Defendants in the Removed Nevada Action are debtors in the California Bankruptcy Cases (*i.e.*, GGW Direct, GGW Brands, and GGW Events).  The other seven (7) Defendants are all non-debtors (*i.e.*, Francis, Mantra Films, Blue Horse, Pepe Bus, Sands Media, Houston, and the Law Offices of Houston.  Notably Houston or the Law Offices of Houston, hold substantial funds of Francis' in excess of $1,800,000.

DOCS_SF:82899.7 93837/001                        8

### K.  The Chapter 11 Trustee Motion

On March 21, 2013 in the California Bankruptcy Cases, Wynn filed a motion to appoint a chapter 11 trustee (the "Trustee Motion") for each of the GGW Debtors. Consistent with the facts supporting the Nevada Complaint, the Trustee Motion is based on facts showing that for more than the past year the GGW Debtors caused substantial funds to be paid to Francis. The funds were not paid as a salary but were instead part of a scheme to enable Francis to avoid his creditors. The GGW Debtors pay all or substantially all of Francis' personal expenses, including his mortgage, personal American Express bills, and hundreds of thousands of dollars of his legal fees on personal matters in which the GGW Debtors had no business interest.

Remarkably, the GGW Debtors made these "distributions" to Francis even though, on paper, Francis had no ownership interest in the GGW Debtors and was not their employee. The GGW Debtors are ultimately owned by a foreign trust (formed in the Cook Islands) for which Francis is the settlor and is one of the beneficiaries. That trust, however, was never intended to receive any distributions from the various entities it owns. As of early last year, no money had ever been distributed to the trust—all of it going to Francis who, until late last year, was the manager of the GGW Debtors. Francis's management role at the GGW Debtors was only changed—on paper—when it was strategically advantageous to Francis to do so. To that end, late last year, Christopher Dale ("Dale"), the individual who signed the GGW Debtors' bankruptcy petitions, was installed as the new manager. Just months prior to the commencement of the Debtors' cases, Dale testified that he was the human resources director at the Girls Gone Wild companies and that he knew nothing about their finances, daily operations, and relationship with Francis outside of that role.

Two different courts, one in Nevada and one in California, have examined the facts pertaining to the manner in which the GGW Debtors are operated and their relationship with Francis. Both courts have made preliminary determinations that the evidence reflects an improper relationship between Francis and these companies, notwithstanding their efforts to hide that relationship through the GGW Debtors' financial arrangements and the use of figurehead managers, such as Dale. Like the preliminary injunction issued in the Removed Nevada Action, a state court in California has just determined that a limited receiver should be appointed to review the books and

records of the companies and to determine what income of Francis has been hiding through the GGW Debtors' businesses. *See Order Appointing Limited Receiver* annexed hereto as **Exhibit N**.

The diversion of assets to satisfy Francis' personal obligations and the GGW Debtors' use of "puppet" management to ensure that the funds can be held in and funneled through GGW Debtors to Francis to support his lifestyle demonstrate the complete abandonment of the GGW Debtors' fiduciary responsibilities to creditors. Simply stated, Francis has used the Debtors as his personal "piggy bank." Francis' self-dealing has been at the expense of the GGW Debtors and their creditors and, through his *de facto* control over the GGW Debtors, Francis has misused the funds of the GGW Debtors for his benefit. Under these circumstances, Wynn has argued in the Trustee Motion, the GGW Debtors remaining as debtors in possession would be antithetical to the interests of creditors and the appointment of a chapter 11 trustee is mandated. At hearings conducted on April 10, 2013, the California Bankruptcy Court granted the Trustee Motion and ordered the appointment of a chapter 11 trustee in each of the California Bankruptcy Cases.

### III.

### THE REMOVED NEVADA ACTION SHOULD BE REMANDED

A. **Nevada State Court Action Should Be Remanded**

Federal law creates a distinct set of procedural rules for the conduct of cases that are related to bankruptcy proceedings. 28 U.S.C. § 1452(a) gives parties the right to remove a pending action to the district court for the district in which the action is pending, if the district court has jurisdiction under 28 U.S.C. § 1334. That provision, in turn, confers upon the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Accordingly, as the Removed Nevada Action does not arise under title 11 or in the California Bankruptcy Case, removal jurisdiction exists only if it is "related to" the bankruptcy.

Whether or not removal jurisdiction exists, the district may remand a claim or action "on any equitable ground." 28 U.S.C. § 1452(b). Such an order is "not reviewable by appeal or otherwise by the court of appeals . . . or by the Supreme Court. . . ." *Id*. If the decision to remand is made in the first instance by a bankruptcy court, rather than the district court, the decision is subject to review by

the district court or bankruptcy appellate panel. *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995); *In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999).

28 U.S.C. § 1334(c)(1) permits a court, in the interest of justice, or in the interests of comity or respect for state law, to abstain from hearing a proceeding that arises under or in, or is related to a case under title 11. 28 U.S.C. § 1334(c)(2) <u>requires</u> a court to abstain if it is a "State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section . . . if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." Although this provision would appear on its face to require abstention in this matter, the Ninth Circuit has held that the permissive and mandatory abstention provisions of section 1334(c) are inapplicable to removed actions. *In re Lazar*, 237 F.3d 967 (9th Cir. 2001).[3] Accordingly, remand, rather than abstention, is the appropriate mechanism for returning the Removed Nevada Action to state court. *See generally TIG Ins. Co. v. Smolker*, 264 B.R. 661, 665 (Bankr. C.D. Cal. 2001). Nonetheless, courts have recognized that "circumstances which weigh in favor of discretionary abstention or dictate mandatory abstention under the respective provisions of section 1334(c), likewise weigh in favor of . . . remand under section 1452[(b)]." *See, e.g.*, *In re Norrell*, 198 B.R. 987, 998 (Bankr. N.D. Ala. 1996).

When considering the propriety of removal, the Ninth Circuit has stated: "[w]e strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). In furtherance of the "strong presumption" against removal jurisdiction, the Ninth Circuit has further emphasized that, "the Defendant always has the burden of establishing that removal is proper." *Id.*

In this case, remand is warranted because the Removed Nevada Action is an action based on state claims against Francis and other non-GGW Debtor Defendants that at most are nothing more than related to the California Bankruptcy Case. Because the Removed Nevada Action is based on

---

[3] The Ninth Circuit is alone in this view. "[O]ther than the Ninth Circuit, all of the courts of appeals to have addressed this issue hold that mandatory abstention applies to a removed action" *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446 (2d Cir. 2005) (rejecting Lazar) (citations omitted).

DOCS_SF:82899.7 93837/001         11

state claims against Francis and the other non-GGW Debtor Defendants, the California Bankruptcy Court is not able to enter final orders without the consent of Wynn, Francis, and the other non-GGW Debtor Defendants that are not the GGW Debtors. As reflected in the Removal Notice, consent was not provided by Francis and the other non-GGW Debtor Defendants, and Wynn confirms herein that it does not consent. Thus, **only three (3)** of the ten (10) Defendants are debtors in the California Bankruptcy Cases, **including one non-Debtor party, Houston, who potentially holds in excess of $1.8 million**. Accordingly, it is not clear how the California Bankruptcy Court can enter orders against Francis and the other non-GGW Debtor Defendants without their consent. For these reasons and those discussed in greater detail below, there is overwhelming cause to remand the Removed Nevada Action to the Nevada State Court under section 1452(b).

B. **The Removal Was Intended to Obstruct and Delay Wynn's Collection Efforts**

It is clear from the foregoing facts that the removal of the Removed Nevada Action three months prior to the start of the trial has nothing to do with judicial efficiency and everything to do with Francis's continued attempts to delay and obstruct Wynn's ability to collect on its multi-million dollar judgments. It serves no practical purpose for anyone to transfer this action when (a) it is on track for trial in three short months before a court that has jurisdiction over Francis and the other non-GGW Debtor Defendants, (b) the case has been pending for over a year, (c) it is already in a very advanced stage, (d) and it is pending before a judge that is intimately familiar with the facts and legal issues. The goal here is not judicial efficiency, it is to obstruct and delay Wynn's valid collection efforts.

The Removed Nevada Action is being argued before a judge that is intimately familiar with the facts and legal issues raised in the Nevada Complaint. There is no person more familiar with the facts and issues in the Removed Nevada Action than the judge in the Nevada State Court Action. In fact, the Nevada State Court already issued a preliminary injunction on the basis that there is a substantial likelihood that Wynn will prevail on its counts that the GGW Entities are Francis' alter-egos. If the Removed Nevada Action is not remanded, the prosecution of the counts by Wynn will be further delayed by the fact that it will take months, if not another year, for the California Bankruptcy Court to get up to speed regarding the case history and legal issues. Failure to remand

DOCS_SF:82899.7 93837/001               12

the Removed Nevada Action will only serve to reward Francis' dilatory tactics and his endless attempts to use the GGW Entities to hide his assets from Wynn.

In the next phase of intentional delay, the GGW Debtors filed a motion to transfer venue (the "Venue Motion") from this Court to the California Bankruptcy Court. Notably, the reasons in support of the Venue Motion have no application to the actual facts and actually support remand of the Removed Nevada Action to the Nevada State Court. For example, the GGW Debtors state that the Venue Motion is not premised on forum shopping because Delaware law will be used to determine the counts in the Nevada Complaint, not California or Nevada law. Contrary to the GGW Debtors' bald assertions, they are forum shopping. They are taking every measure they can to run from the Nevada State Court because the judge has already issued a preliminary injunction finding that there is a substantial likelihood that Wynn will prevail on its counts that the GGW Entities are Francis's alter-egos. Further, it is not clear that Delaware law would be applied to the Removed Nevada Action. While the Nevada Supreme Court has not yet decided whether to apply Nevada law or the law of the state of the foreign entity's formation, the distinction is not material where there is no conflict of law. *See Goff v. Harrah's Operating Company, Inc.*, 392 F. Supp. 2d 1244, 1244 n.1 (D. Nev. 2005) (finding that Nevada law applied to piercing the corporation veil of a foreign entity when there was no actual conflict of law). Here, it is not clear whether this body of law conflicts with applicable California law. Notably, the GGW Debtors are not seeking to transfer the case to Delaware for that reason.

In further support of the Venue Motion, the GGW Debtors state that the most important factor in deciding such a motion is "whether the requested transfer would promote the economic and efficient administration of the estate" and cite *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239 (5th Cir. 1979). As discussed above, by not remanding the Removed Nevada Action and transferring the case to the California Bankruptcy Court, the action and the outcome will be delayed and undoubtedly interrupt the regular administration of the chapter 11 cases.

The GGW Debtors also assert that it will promote efficiency for the estates because they will not have to obtain separate Nevada bankruptcy counsel to prosecute the Removed Nevada Action. This makes absolutely no sense. The Nevada Complaint is based on bread and butter state law

DOCS_SF:82899.7 93837/001                                    13

claims against Francis and the other non-GGW Debtor Defendants, who the California Bankruptcy Court does not have authority over to enter judgments on a final basis, including Wynn.  Further, the Removed Nevada Action has been pending in the Nevada State Court for over a year and the GGW Debtors have competent counsel that is familiar with the facts, case history, and legal issues and that has been preparing for trial.

C.     **The Removed Nevada Action Is Not Core and Should Be Remanded**

A bankruptcy judge may only determine a claim that meets Congress' definition of a core proceeding that arises under or in a case under title 11.  *In re Harris*, 590 F.3d 730, 737-41 (9th Cir. 2009).

28 U.S.C. § 157(b) defines core proceedings as ones "arising under title 11, or arising in a case under title 11," and provides a nonexhaustive list of types of core proceedings.  In the Removal Notice, the GGW Debtors assert, without any discussion or support, that the Removed Nevada Action is "related to" core proceedings by virtue of 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (G), (H), (I), (K) and (O).  While it is far from clear what the GGW Debtors mean by "related to core proceedings," it is certain that the claims in the Removed Nevada Action are not core because they are based on state law and are being asserted against parties that are not debtors in the California Bankruptcy Cases.  It is one thing for an action or claim to be core and quite another for it to be "related to" a core action or claim.  In fact, it is not clear what it means to be "related to" a core proceeding.  The GGW Debtors' equivocation here demonstrates that they cannot identify how or why the Removed Nevada Action is core or how the California Bankruptcy Court will have jurisdiction over Francis and the other non-GGW Debtor Defendants.

"Arising under" and "arising in" in title 11 are terms of art.  They are two of the three categories of cases over which district courts have bankruptcy jurisdiction under 28 U.S.C. § 1334(b) as core matters.  The Bankruptcy Code does not describe what it means for a proceeding to "arise under title 11" or "arise in a case under title 11."  However, binding Ninth Circuit case law holds that proceedings arising under title 11 "involve a cause of action created by or determined by a statutory provision of title 11."  *In re Marshall*, 600 F.3d 1037, 1054 (9th Cir. 2010).  For example, a proceeding arising under title 11 would include a preference claim based on section 547 of the

DOCS_SF:82899.7 93837/001                         14

Bankruptcy Code. Similarly, a proceeding "arises in a case under title 11 when they are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 1055. For example, a proceeding arising in a case under title 11 would include a claim objection under section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 (*i.e.*, something that would not exist outside a bankruptcy case). The third category includes cases "related to" a case under title 11, which relates to matters that are non-core. For the third category, the Ninth Circuit has long held that an action is "related to" a case under title 11 if the outcome could alter the debtor's right, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).

Here, there is no question that the counts against Francis and the other non-GGW Debtor Defendants are non-core because they do not arise under title 11 or arise in a case under title 11. If the California Bankruptcy Court were to adjudicate the counts raised in the Nevada Complaint, it is not clear whether the court could grant relief against Francis or the other the non-GGW Debtor Defendants. At the most, any ruling would not have any force or effect unless and until the proposed findings and conclusions of law are reviewed and approved by yet another court, the district court. This issue is crucial because Houston, a non-GGW Debtor Defendant, potentially holds in excess of $1,800,000 of cash that was transferred by Francis or at his direction.

At most, the counts in the Removed Nevada Action are "related to" the California Bankruptcy Cases because the result could have a conceivable effect upon the GGW Debtors' and their estates. However, this conclusion supports remand rather than removal because the counts are based entirely on state law, would exist independently whether or not the California Bankruptcy Cases had been filed, and are inextricably intertwined with and against Francis and the other non-GGW Debtor Defendants. As reflected by the Removal Notice, neither Francis nor any of the other non-GGW Debtor Defendants have consented to the California Bankruptcy Court's jurisdiction to enter a final order regarding the counts raised in the Nevada Complaint.

Consequently, the California Bankruptcy Court cannot effectively and efficiently adjudicate the Removed Nevada Action except in a piecemeal fashion. For example, it could hear the entire

action, enter final findings and rulings against the GGW Debtors and proposed findings and rulings as to Francis and the other non-GGW Debtor Defendants. Next the district court would have to review and approve or disapprove of the proposed findings and rulings. If, however, the district court disagrees with the proposed findings and conclusion of law, the district court's findings and rulings would be inconsistent with the final findings and rulings against the GGW Debtors. It makes the most sense to remand the Removed Nevada Action back to the Nevada State Court so that a single judge that has jurisdiction over Francis and the other Defendants can adjudicate the Nevada Complaint on a final basis.

In the end, the removal of the Removed Nevada Action is nothing more than Francis's latest and perhaps last attempt to prevent Wynn from collecting on its multi-million judgments. Francis has consistently used the GGW Entities for his benefit to obstruct creditors from collecting valid, final judgments against him by funneling his personal funds through these companies. Now that all of Francis's other dilatory tactics have proven futile, the GGW Debtors are being used to further shield Francis and are actually a proxy for his own personal bankruptcy. The Court should view the California Bankruptcy Cases of the GGW Debtors for what they are and remand the Removed Nevada Action back to the Nevada State Court where the case will be ready for trial in three short months. Any other decision will only reward Francis's improper use of the judicial system and the bankruptcy process for his own personal gain without him having to make any of the disclosures that will demonstrate there is no difference between him and the GGW Entities.

## IV.

## **CONCLUSION**

Based on the foregoing, Wynn respectfully requests that the court enter an order remanding the Removed Nevada Action to the Nevada State Court and granting such other and further relief as the court may deem just and proper.

Dated: April 10, 2013

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Mitchell J. Langberg*
      Mitchell J. Langberg

and

PACHULSKI STANG ZIEHL & JONES LLP

Malhar S. Pagay
Attorneys for Wynn Las Vegas, LLC, d/b/a
Wynn Las Vegas

DOCS_SF:82899.7 93837/001            17