# **EXHIBIT C**

**(Settlement Motion)**

1 | David M. Stern (State Bar No. 67697)
2 | Michael L. Tuchin (State Bar No. 150375)
  | Matthew C. Heyn (State Bar No. 227474)
3 | Jonathan M. Weiss (State Bar No. 281217)
  | KLEE, TUCHIN, BOGDANOFF & STERN LLP
4 | 1999 Avenue of the Stars, Thirty-Ninth Floor
  | Los Angeles, California 90067
5 | Telephone:     310-407-4000
  | Facsimile:     310-407-9090
6 | Email:         dstern@ktbslaw.com
  |                mtuchin@ktbslaw.com
  |                mheyn@ktbslaw.com
7 |                jweiss@ktbslaw.com

8 | *Attorneys for R. Todd Neilson, Chapter 11*
  | *Trustee, and GGW Marketing, LLC*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| In re | Jointly Administered |
|---|---|
| | Under Case No. 2:13-bk-15130-SK |
| GGW BRANDS, LLC, | |
| GGW DIRECT, LLC, | Chapter 11 |
| GGW EVENTS, LLC, | |
| GGW MAGAZINE, LLC, and | **NOTICE OF MOTION AND MOTION** |
| GGW MARKETING, LLC, | **FOR APPROVAL OF SETTLEMENT** |
| | **WITH WYNN LAS VEGAS, LLC AND** |
| Debtors. | **STEPHEN A. WYNN; MEMORANDUM** |
| | **OF POINTS AND AUTHORITIES;** |
| | **DECLARATIONS OF R. TODD** |
| This pleading affects: | **NEILSON, MATTHEW C. HEYN, AND** |
| All Debtors               ☒ | **MANDY ISAAC** |
| GGW Brands, LLC           ☐ | |
| GGW Direct, LLC           ☐ | [Ex Parte Application for Order Setting |
| GGW Events, LLC           ☐ | Hearing and Request for Judicial Notice filed |
| GGW Magazine, LLC         ☐ | concurrently herewith] |
| GGW Marketing, LLC        ☐ | |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

145125.5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

**TO THE HONORABLE SANDRA KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that GGW Marketing, LLC ("GGW Marketing"), in its capacity as debtor in possession, and R. Todd Neilson (the "Trustee"), in his capacity as chapter 11 trustee of the bankruptcy estates of GGW Brands, LLC ("GGW Brands"), GGW Direct, LLC ("GGW Direct"), GGW Events, LLC ("GGW Events"), and GGW Magazine, LLC ("GGW Magazine" and, collectively with GGW Brands, GGW Direct, GGW Events, and GGW Marketing, the "Debtors"), hereby jointly move for an order pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105 approving that certain settlement agreement dated as of July 10, 2013 (the "Settlement Agreement") between the Trustee and GGW Marketing, on the one hand, and Wynn Las Vegas, LLC ("Wynn LV") and Stephen A. Wynn, on the other hand.  The Settlement Agreement is attached as Exhibit A to the accompanying memorandum of points and authorities.[1] In support of this motion, the Trustee and GGW Marketing (collectively, the "Movants") submit the attached memorandum of points and authorities, the declarations of R. Todd Neilson ("Trustee Decl."), Mandy Isaac ("Isaac Decl."), and Matthew C. Heyn ("Heyn Decl."), and concurrently file a request for judicial notice (the "RJN"), which have been filed concurrently herewith.

As described in the attached memorandum of points and authorities, the Settlement Agreement is in the best interests of the Debtors and their creditors.  Mr. Wynn and Wynn LV have asserted the largest claims against the Debtors' estates.  All told, Mr. Wynn and Wynn LV collectively have judgments of more than $31 million against Joseph Francis.  At the time the Debtors filed for bankruptcy, Wynn LV was prosecuting an action (the "Alter Ego Litigation") in the Clark County, Nevada District Court (the "Clark County District Court") seeking declaratory

---

[1]	The descriptions of the Settlement Agreement in this Notice of Motion and Motion and the attached memorandum of points and authorities do not supplement or alter the terms of the Settlement Agreement, which is controlling as to rights and obligations established and settled thereby.  In order to understand whether you have any objection to the Settlement Agreement, you should read the Settlement Agreement itself and all exhibits to the Settlement Agreement.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  judgment that certain of the Debtors are alter egos of Mr. Francis and thereby liable for his debts.

2  That action has been removed to U.S. Bankruptcy Court for the District of Nevada (the "Nevada

3  Bankruptcy Court"), but Wynn LV has filed a motion to have the Alter Ego Litigation remanded

4  to the Clark County District Court for trial, and certain of the Debtors filed a motion to transfer

5  venue of the Alter Ego Litigation to this Court.

6       Mr. Wynn and Wynn LV contend that each of the Debtors is fully liable for all of

7  Mr. Wynn's and Wynn LV's judgments against Mr. Francis because the Debtors are his alter egos.

8  They allege that Mr. Francis (i) indirectly owns all of the beneficial interest in the Debtors,

9  (ii) controlled them (until the Trustee was appointed), and (iii) used them to perpetuate a fraud on

10  his creditors.  These allegations are not without support.  At least one other court *already* has ruled

11  that three of the Debtors (GGW Marketing, GGW Direct, and GGW Events) are Mr. Francis's

12  alter egos and alter egos of each other.  Moreover, the Clark County District Court has ruled that

13  Wynn LV has a "substantial likelihood of success on the merits of its claim for declaratory

14  relief…."  Thus, Mr. Wynn's and Wynn LV's large judgment claims threaten to substantially

15  dilute all other claims against the Debtors.

16       The Settlement Agreement favorably resolves Mr. Wynn's and Wynn LV's claims against

17  the Debtors, ensuring that substantial amounts will be distributed to ordinary trade creditors.  First,

18  in exchange for allowed claims against the Debtors, Mr. Wynn and Wynn LV have agreed that

19  their claims should be discounted to 90% of the amounts owed on the judgments – even less if

20  those judgments are modified or reversed on appeal or re-trial.  Second, Mr. Wynn and Wynn LV

21  agree to subordinate all their claims to $400,000 of claims of general unsecured creditors (except

22  general unsecured claims of insiders and persons and entities specified on Exhibit 8 to the

23  Settlement Agreement (the "Specified Persons and Entities")).[2]  Third, Mr. Wynn and Wynn LV

24  agree to reduce their claims against the Debtors if they are successful in collecting their judgments

25

---

26  [2]   As described in the memorandum of points and authorities, the Specified Persons and Entities
    are Mr. Francis, entities that appear to be beneficially owned or controlled by Mr. Francis, and

27      law firms, lawyers, and other persons that represented and/or assisted Mr. Francis in his efforts
    to resist Wynn LV's claims and collection efforts.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  against Mr. Francis or any non-Debtor entities.  Finally, Mr. Wynn and Wynn LV have agreed that

2  over $2.3 million of their claims will be subordinated to *all* non-subordinated creditors.

3       The Settlement Agreement also provides for a split of approximately $1.8 million to which

4  the Movants and Wynn LV assert conflicting rights (the "Trust Funds").  Contingent upon

5  approval of the Settlement Agreement, Wynn LV and the Movants will enter into a stipulation to

6  be filed in the Nevada Bankruptcy Court under which $800,000 of the Trust Funds will be

7  immediately distributed to the Trustee for the benefit of the Debtors' estates with the remaining

8  Trust Funds to go to Wynn LV.[3]  In exchange for allowing the Debtors to have $800,000 of the

9  Trust Funds, Wynn LV will be entitled to a $250,000 administrative priority expense that shall be

10 entitled to be paid ahead of all claims and administrative expenses of the Debtors and their estates

11 except for amounts allowed under 11 U.S.C. § 503(b)(2) (the "Priority Claim").  Payment of the

12 Priority Claim and the Trust Funds to Wynn LV will reduce Wynn LV's allowed general

13 unsecured claim for one of its judgments against Mr. Francis.  Wynn LV's agreement to accept a

14 $250,000 Priority Claim (rather than insisting on $250,000 more of the Trust Funds) gives the

15 Movants more liquidity, with which they can administer the Debtors' estates.

16      The Settlement Agreement is the result of extended, arm's-length negotiations with Mr.

17 Wynn and Wynn LV.  The Settlement Agreement reflects an appropriate exercise of Movants

18 business judgment and obviates the need for Movants to engage in costly out-of-state  litigation

19 with Mr. Wynn and Wynn LV.[4]

20      **PLEASE TAKE FURTHER NOTICE** that, concurrently with this motion, Movants have

21 filed an ex parte application for setting a hearing on this motion to approve the Settlement

22 Agreement for August 7, 2013 at 9:30 a.m. or as soon thereafter as counsel may be heard, in

23 Courtroom 1575 of the Roybal Federal Building and United States Courthouse at 255 East Temple

---

[3]  The Trustee is continuing to investigate which Debtor(s)' estates should receive the $800,000, or whether the Debtors should be substantively consolidated.

[4]  While it is possible that the currently pending motion to remand would be denied and the motion to change venue would be granted (so that the Alter Ego Litigation is tried in California), at the very least, these motions would have to be briefed and litigated in the Nevada Bankruptcy Court, which would require that Movants retain Nevada counsel.

Street, Los Angeles, California 90012.  Once the Court sets a hearing date, a further notice of the

hearing will be provided.  Any response or opposition to this motion must be in writing, must

otherwise comply with Local Bankruptcy Rule 9013-1(f), and must be filed with the Court and

served upon counsel for the Trustee and GGW Marketing at the address set forth in the upper left-

hand corner of the first page of this motion no later than fourteen (14) days before the date of the

hearing on this motion.  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file

and serve a written opposition may be deemed by the Court to be consent to the granting of the

relief requested herein.

**WHEREFORE**, the Movants respectfully requests that the Court enter an order:

(i)        approving the Settlement Agreement;

(ii)       authorizing the Movants to perform the acts and enter into the transactions

contemplated by the Settlement Agreement (including entering into the stipulation regarding the

Trust Funds);

(iii)      allowing Mr. Wynn's and Wynn LV's claims as set forth in the Settlement

Agreement; and

(iv)      granting Movants such further relief as is necessary and proper based on these

papers, the record in the Debtors' bankruptcy cases (including related adversary proceedings), and

the evidence and argument presented at the hearing on the motion.

An agreed-upon form of order is attached as Exhibit 10 to the Settlement Agreement.

DATED: July 15, 2013                                 Respectfully submitted,

KLEE, TUCHIN, BOGDANOFF & STERN LLP

By: _____
        Matthew C. Heyn
        Attorneys for R. Todd Neilson and
        GGW Marketing, LLC

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone: 310-407-4000

# **TABLE OF CONTENTS**

**Page(s)**

I.      STATUS OF THE CASES AND JURISDICTION. ............................................. 1

II.     STATEMENT OF FACTS. ................................................................................. 3

    A.      The Debtors were owned and controlled by Joseph Francis. ................... 3

    B.      The Wynn Judgments. ............................................................................. 4

    C.      The Alter Ego Litigation. ........................................................................ 7

    D.      The Settlement Agreement Proposes to Resolve the Wynn Claims. ....... 9

III.    THE SETTLEMENT AGREEMENT SHOULD BE APPROVED. .................. 12

    A.      The Applicable Standard. ....................................................................... 12

        1.      The compromise of the Wynn claims is fair, reasonable and
            equitable. ...................................................................................... 13

            a.      The probability of success in the litigation. .................... 14

            b.      The difficulties, if any, to be encountered in the matter of
                 collection. ......................................................................... 20

            c.      The complexity of the litigation involved, and the expense,
                 inconvenience and delay necessarily attending it. ........... 20

            d.      The paramount interest of the creditors and a proper
                 deference to their reasonable views in the premises. ....... 21

        2.      The division of the Trust Funds is fair, reasonable and equitable. .............. 22

            a.      The probability of success in the litigation. .................... 22

            b.      The difficulties, if any, to be encountered in the matter of
                 collection. ......................................................................... 23

            c.      The complexity of the litigation involved, and the expense,
                 inconvenience and delay necessarily attending it. ........... 23

            d.      The paramount interest of the creditors and a proper
                 deference to their reasonable views in the premises. ....... 24

IV.     CONCLUSION. ............................................................................................... 25

<div align="left">

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

</div>

<div align="center" style="writing-mode: vertical">

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

</div>

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ASARCO LLC v. Americas Mining Corp.*,
  382 B.R. 49 (S.D. Tex. 2007)..................................................................... 16

*Cascade Energy & Metals Corp. v. Banks*,
  896 F. 2d 1557 (10th Cir. 1990) ................................................................ 16

*Case Financial, Inc. v. Alden*,
  2009 WL 2581873 (Del. Ch. Aug. 21, 2009) ............................................ 16

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
  699 F.2d 599 (2d Cir. 1983) ...................................................................... 12

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995) ...................................................................... 14

*Fourth Investment LP v. United States*,
  __ F.3d __, 2013 WL 2631514 (9th Cir. June 13, 2013) ................... 17, 18

*Goff v. Harrah's*,
  392 F. Supp. 2d 1244 (D. Nev. 2005) ....................................................... 17

*Great Neck Plaza, L.P. v. Le Peep Restaurant, LLC*,
  37 P.3d 485 (Colo. App. 2001) ................................................................. 16

*In re ALT Hotel LLC*,
  479 B.R. 781 (Bankr. N.D. Ill. 2012) ....................................................... 16

*In re Giampietro*,
  317 B.R. 841 (Bankr. D. Nev. 2004).......................................................... 14

*In re JMS Automobile Rebuilders, Inc.*,
  2002 WL 32817517 (C.D. Cal. Jan. 15, 2002)........................................... 12

*In re Lee Way Holding Co.*,
  120 B.R. 881 (Bankr. S.D. Ohio 1990) ..................................................... 13

*In re Pacific Gas & Electric Co.*,
  304 B.R. 395 (Bankr. N.D. Cal. 2004)....................................................... 12

*In re Schwab*,
  378 B.R. 854 (Bankr. D. Minn. 2007) ....................................................... 16

*In re Turner (Kendall v. Turner)*,
  335 B.R. 140 (Bankr. N.D. Cal. 2005)....................................................... 16

145125.5

1

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

*Irewin & Leighton, Inc. v. W.M. Anderson Co.*,
    532 A.2d 983 (Del. Ch. 1987) .......................................................................... 14

*Kandi v. United States*,
    2006 WL 83463 (W.D. Wash. Jan. 11, 2006) .............................................. 21

*Klaxon v. Stentor Electric Manfacturing Co.*,
    313 U.S. 487 (1941) ...................................................................................... 17

*LFC Marketing Group, Inc. v. Loomis*,
    8 P.3d 841 (Nev. 2000) ............................................................................ 14, 16

*Litchfield Asset Management Corp. v. Howell*,
    799 A.2d 298 (Conn. App. 2002) ................................................................. 16

*Mabon, Nugent & Co. v. Texas American Energy Corp.*,
    1990 WL 44267 (Del. Ch. Apr. 12, 1990) .................................................... 14

*Martin v. Kane (In re A & C Properties)*,
    784 F.2d 1377 (9th Cir. 1986) ................................................................. 12, 13

*MicroStrategy Inc. v. Acacia Research Corp.*,
    2010 WL 5550455 (Del. Ch. Dec. 30, 2010) ............................................... 16

*NetJets Aviation, Inc. v. LHC Commcations, LLC*,
    537 F.3d 168 (2d Cir. 2008) ......................................................................... 14

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ...................................................................................... 17

*Postal Instant Press, Inc. v. Kaswa Corp.*,
    77 Cal. Rptr. 3d 96 (2008) ............................................................................ 16

*Rothwell, Ltd. v. United States*,
    2013 WL 2997188 (9th Cir. June 18, 2013) .............................................. 8, 17

*Rothwell, Ltd. v. United States*,
    Case No. SA CV 10-00479-RGK, Dkt. No. 77 (C.D. Cal. June 30, 2011) ............. 8

*Spinnell v. JP Morgan Chase Bank, N.A.*,
    59 A.D.3d 361 (N.Y. App. Div. 2009) ......................................................... 16

*Trevubi v. Mescorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ............................................................. 14

*United States v. Alaska National Bank (In re Walsh Constr., Inc.)*,
    669 F.2d 1325 (9th Cir. 1982) ...................................................................... 12

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
    839 F.2d 610 (9th Cir. 1988) ........................................................................ 12

**STATUTES**

11 U.S.C. § 503(b)(2) .................................................................................................. 24

11 U.S.C. § 510(c) ...................................................................................................... 13

Nevada Revised Statutes § 78.747 .............................................................................. 15

**RULES**

Federal Rule of Bankruptcy Procedure 9019(a) ..................................................... 11, 12

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

145125.5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

## MEMORANDUM OF POINTS AND AUTHORITIES[5]

## I.

## II.  STATUS OF THE CASES AND JURISDICTION.

On February 27, 2013 (the "Petition Date"), GGW Brands, GGW Direct, GGW Events, and GGW Magazine filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  Their bankruptcy cases are being jointly administered under Case No. 2:13-bk-15130-SK.

On April 11, 2013, following a hearing and extensive briefing, the Court entered its *Order Granting Motion for Order Directing the Appointment of a Chapter 11 Trustee* [Dkt. No. 78]. Many of the Court's findings in connection with that order are relevant here:

- "The evidence is clear that … Francis was in complete control of debtors through at least early November of 2012.  [¶]  Pablo Holdings' operating agreement demonstrates that the manager of Pablo – who was Francis, not the member as asserted repeatedly by debtors – had absolute unfettered discretion and complete control over Pablo Holdings, which in turn controlled GGW Brands, the holding company of the other GGW entities."  April 10, 2013 Hearing Transcript [Dkt. No. 86] at 69:6-12 (Exhibit B).

- "From a review of his personal AmEx bills, it is beyond dispute that GGW funds were used to pay Francis's personal expenses.  He also used GGW assets to pay for lawyers who represented him personally." *Id.* at 70:2-5.

- "Although the evidence is insufficient for this Court to untangle the intricate web of interrelated companies in this case, it's abundantly clear that all of the interrelated companies are somehow related to Francis and are controlled by him or someone acting on his behalf." *Id.* at 79:14-18.

---

[5]  Capitalized terms not defined herein shall have the meanings ascribed to them in the *Notice of Motion and Motion for Approval of Settlement with Wynn Las Vegas, LLC and Stephen A. Wynn* and that certain Settlement Agreement dated July 10, 2013, which is attached hereto as Exhibit A.

- GGW Brands, GGW Direct, GGW Events, and GGW Magazine "have engaged in questionable transactions with insiders, and current management would not have an incentive to attempt to pursue possible fraudulent transfer or preference claims." *Id.* at 89:15-18.

- GGW Brands, GGW Direct, GGW Events, and GGW Magazine "are also embroiled in litigation which is likely to lead to more litigation costs to the estate." *Id.* at 89:19-21.

There has been no appeal of the Court's order appointing a Trustee.

On the same day that the Court entered its order authorizing the appointment of a trustee, the United States Trustee appointed R. Todd Neilson as chapter 11 trustee in the bankruptcy cases of GGW Brands, GGW Direct, GGW Events, and GGW Magazine. [Dkt. No. 78.] On April 12, 2013, the Court entered an order approving Mr. Neilson's appointment as Trustee. [Dkt. No. 82.]

On May 22, 2013, GGW Marketing filed a petition for relief under chapter 11 of the Bankruptcy Code. On May 23, 2013, the Court entered an order requiring GGW Marketing's bankruptcy case to be jointly administered with the other Debtors' cases under Case No. 2:13-bk-15130-SK. [Dkt. No. 98.] No trustee has been appointed in the GGW Marketing bankruptcy case.

Since his appointment, the Trustee and his professionals have investigated the financial affairs of the Debtors. Trustee Decl. ¶ 3. After the Court entered orders authorizing the Trustee to conduct Rule 2004 examinations of several witnesses and business entities [Dkt. Nos. 105 & 111], the Trustee's professionals interviewed, took sworn testimony from, or reviewed deposition transcripts of dozens of witnesses. Heyn Decl. ¶ 3. Among the transactions under investigation are Mr. Francis's relationship to the Debtors and the judgments in favor of Mr. Wynn and Wynn LV. *Id.* While the Trustee and his professionals have uncovered a significant amount of information, they have also been hampered by deliberate efforts by Mr. Francis and his co-conspirators to destroy evidence prior to the appointment of the Trustee. *Id.* ¶ 5. The Trustee's investigation continues.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

### III.  STATEMENT OF FACTS.

**A.    The Debtors were owned and controlled by Joseph Francis.**

The Debtors are in the business of producing and distributing adult entertainment through various media, including pay-per-view, internet, and DVDs.  The Debtors currently employ approximately 30 employees and sub-lease office space at 10940 Wilshire Blvd, Los Angeles, California.  Trustee Decl. ¶ 4.

Mr. Francis is the creator of Girls Gone Wild and the founder of the Debtors.  Since the time that the Debtors were formed, Mr. Francis has sought to deny and disguise his control and ownership of the Debtors – apparently as a means of thwarting creditors' debt collection efforts.  For example, in several declarations, Mr. Francis stated under oath that he has no management role at the Debtors.  *See, e.g.*, Dkt. No. 45 (Exhibit C).  In their organizational documents, the Debtors do not list Mr. Francis as their member or manager.  See Dkt. No. 52-2 thru 52-6 (Exhibit D).[6]  When asked in judgment debtor's examinations what his relationship to the Debtors is, Mr. Francis was evasive and denied owning them, managing them or under understanding the Debtors' corporate structure.  4/18/12 Tr. at 73:6-25 (Exhibit E).

The Trustee's investigation has revealed documents that show Mr. Francis formed and directly or indirectly owns and controlled each of the Debtors.

- At the time of the Debtors' formation, Rafael Bernardino filed the organizational documents and listed himself as an officer of the Debtors and an "authorized person."  *See, e.g.*, Dkt. Nos. 52-2 thru 52-6.  However, it appears that Mr. Bernardino entered into an side agreement with Mr. Francis pursuant to which he confirmed that, at Mr. Francis's request, he would resign all roles and official

---

[6]    Docket No. 52-2 is Exhibit C to the Declaration of Mitchell J Langberg, which was filed on April 3, 2013.  Mr. Langberg testified that Exhibit C is a true copy of the "Second Supplemental Declaration of Chris Dale in Support of Opposition to Appointment of Limited Receiver" dated January 28, 2013, which was filed on behalf of the Debtors in Los Angeles Superior Court in the case captioned as *Wynn Las Vegas, LLC dba Wynn Las Vegas v. Joseph Francis*, Case No. BS123009.  It includes the Debtors' operating agreements, which do not list Mr. Francis's ownership interest.  The exhibit has been excerpted to reduce bulk.

positions he held with the Debtors and relinquish and assign to Mr. Francis any and
all rights, title, and interest he has in the Debtors.  Heyn Decl. ¶6 & Exhibit O.

- The Debtors entered into resolutions naming Mr. Francis a "key executive" and
giving him check-signing authority.  Heyn Decl. ¶ 9(a) & Exhibit F.  Mr. Francis
has exercised this check-signing authority.  *See, e.g.*, *id.*, Exhibit G.

- The business records and testimony from the Debtors' employees reflect that all of
the Debtors' employees directly or indirectly reported to Mr. Francis.  Heyn Decl.
¶ 9(c) & Ex. H; Isaac Decl. ¶ 3.

Robert Klueger, an attorney specializing in asset protection, has testified in his Rule 2004
examination that the Debtors and Mr. Francis hired him in October 2011.  Heyn Decl. ¶ 7 & Ex. I.
Klueger's retention agreement specified he would:

[F]orm one or more offshore entities.  One of the offshore entities will be formed
for the purpose of acting as the holder of your IP ….  The other offshore entity or
entities will act as holding companies for the purpose of *insulating* your
ownership.  …  In everything we do, we will assure that any and all corporate
reorganizations that we undertake is *explainable* by you as legitimate corporate
planning and legal tax planning.

Heyn Decl. ¶ 8 & Exhibit I (emphasis added).  Notwithstanding the fact that the Debtors' corporate
reorganization was "explainable" as corporate planning and legal tax planning, Mr. Klueger
testified that the real reason for the transfers was because "it's just basic prudence that if an
operating company is sued for whatever, you don't want to have a creditor of the operating
company be able to seize the asset of the operating company."  Klueger Depo. at 7:5-8:9
(Exhibit J).  Notwithstanding these transfers, the ownership of the Debtors remained the same.  Mr.
Klueger testified that, both before and after the transfers, "there's no doubt at the end of the day
the ultimate owner of the assets is Joe Francis."  *Id.* at 19:6-19.

**B.    The Wynn Claims Threaten to Dilute All Other General Unsecured Claims.**

Mr. Wynn and Wynn LV collectively have judgments of more than $31 million against
Mr. Francis.  Those judgments are as follows:

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    •    <u>Nevada Marker Judgment.</u>  On August 18, 2009, Wynn LV obtained a judgment

2    against Mr. Francis in Clark County District Court, in Case No. A566286, arising

3    from unpaid gambling debts (the "Nevada Marker Judgment").  A copy of the

4    Nevada Marker Judgment is attached to the Settlement Agreement as Exhibit 1.

5    RJN ¶ 1.  As set forth in the Nevada Marker Judgment, the Clark County District

6    Court awarded Wynn LV $2,000,000 plus prejudgment interest of $838,356 for the

7    period from February 17, 2007, to August 18, 2009, plus post-judgment interest

8    from and after August 18, 2009, at the rate of $986.30 per day.  As of the Petition

9    Date, Wynn LV is owed $3,937,124.36 on account of the Nevada Marker

10   Judgment.  Heyn Decl. ¶ 11(a).  The Nevada Marker Judgment is final and

11   nonappealable.  *Id.*

12   •    <u>Nevada Defamation Judgment.</u>  On April 9, 2012, Mr. Wynn and Wynn LV

13   obtained a judgment against Mr. Francis in the Clark County District Court, Case

14   No. A577548, on account of claims of defamation (the "Nevada Defamation

15   Judgment").  A copy of the Nevada Defamation Judgment is attached to the

16   Settlement Agreement as Exhibit 2.  RJN ¶ 2.  The Nevada Defamation Judgment

17   found clear and convincing evidence that Mr. Francis made knowing and false

18   defamatory statements including that "Wynn deceives his high-end customers" and

19   that Wynn breached its agreements with Mr. Francis.  As set forth in the Nevada

20   Defamation Judgment, the Clark County District Court awarded Wynn LV

21   $2,500,000 in compensatory damages and $1,250,000 in punitive damages and also

22   awarded Mr. Wynn $2,500,000 in compensatory damages and $1,250,000 in

23   punitive damages.  The Clark County District Court denied Mr. Francis's motion to

24   set aside the Nevada Defamation Judgment, and Mr. Francis has filed an appeal of

25   the court's denial of such motion, which remains pending.  Heyn Decl. ¶ 11(b).  As

26   of the Petition Date, Mr. Wynn and Wynn LV are each owed $3,924,760.74 on

27   account of the Nevada Defamation Judgment.  *Id.*

28

145125.5                                        5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

- <u>California Slander Judgment.</u>  On December 12, 2012, Mr. Wynn obtained a judgment against Mr. Francis in the Superior Court of California, County of Los Angeles ("LASC"), Case No. BC438884, on account of claims for slander (the "California Slander Judgment").  A copy of the California Slander Judgment is attached to the Settlement Agreement as Exhibit 7.  RJN ¶ 7.  As set forth in the California Slander Judgment, the LASC awarded Mr. Wynn $19,000,000 in compensatory damages (after reducing such amount from $20,000,000).  The California Slander Judgment is based on Mr. Francis' repeated accusations – including in a televised interview on "Good Morning America" – that Mr. Wynn said in an email, "I'm going to hit him [Mr. Francis] in the back of the head with a shovel and have him buried in the desert…."[7]  Although the LASC struck all of Mr. Wynn's claims for punitive damages, it otherwise denied Mr. Francis's post-trial motions.  Mr. Francis has filed an appeal that remains pending.  Heyn Decl. ¶ 11(c).  As of the Petition Date, Mr. Wynn is owed $19,411,232.92 on account of the California Slander Judgment.  *Id.*

Each of the aforementioned judgments is against Mr. Francis only and not against the Debtors.  However, as described below, Wynn LV has initiated litigation for declaratory judgment that certain of the Debtors are liable for Mr. Francis's debts as his alter egos.  Based on the Debtors' schedules and the proofs of claims filed to date, if the Debtors are liable for the judgments against Mr. Francis, the claims of Mr. Wynn and Wynn LV would dwarf and significantly dilute all other claims against the estates.

Mr. Francis lives a life of luxury.  He resides in multi-million dollar homes in Bel Air and Mexico and drives several luxury cars.  Heyn Decl. ¶¶ 12(a)-(d), Isaac Decl. ¶¶ 4-5; Exhibits E, N, T & U.  Yet, when Mr. Wynn, Wynn LV and other creditors have sought to collect their debts from him, Mr. Francis has testified in debtor's exams (under oath) that he is living "hand to

---

[7]  The "Good Morning America" interview is available online at http://www.youtube.com/watch?v=pHZt2NCHBxg.

1  mouth. *See, e.g.*, Ex N at 56:14; see also Ex. E at 17:17-20; 19:13-21; 27:1-3; 32:8-20; 33:16-18.

2  The Trustee's review of the Debtors' accounting records and billing invoices explains this

3  paradox:  Mr. Francis has used his ownership and control of the Debtors to fund his lifestyle.  The

4  Debtors owned and insured the cars he drives, paid the mortgages for the homes in which he lives,

5  funded many of Mr. Francis's day-to-day personal expenses, and paid for his attorneys.  Isaac

6  Decl. ¶ 4, Ex. T.

7  **C.      The Alter Ego Litigation.**

8         On April 18, 2012, Wynn LV commenced an action in the Clark County District Court,

9  Case No. A-12-660288-B  (the "Alter Ego Litigation") against GGW Brands, GGW Direct, GGW

10 Events, (collectively, the "Debtor Defendants"), Mr. Francis, and other individuals and entities.  A

11 copy of the complaint in the Alter Ego Litigation is attached to the Settlement Agreement as

12 Exhibit 3.  RJN ¶ 3.   In the complaint, Wynn LV alleged, among other things, that Wynn LV has

13 been largely unable to collect on its judgments against Mr. Francis because Mr. Francis used the

14 Debtor Defendants to hide his assets and income, and that the Debtor Defendants are "influenced

15 and governed by Francis, and Francis acts as the ultimate authority for their business and financial

16 transactions."  Settlement Agreement, Exhibit 3 ¶ 23.

17        Among the defendants sued by Wynn LV in the Alter Ego Litigation are a lawyer, David

18 R. Houston, and his law firm, David R. Houston, Ltd. (collectively "Houston"), who hold

19 $1,846,578.28 (the "Trust Funds") in a client trust account.  Wynn LV seeks to use the Trust

20 Funds to partially pay the Nevada Marker Judgment.  According to the complaint, "Wynn is

21 entitled to an accounting of any and all assets held by Houston in the name of the GGW Entities

22 because the GGW Entities' assets are the true property of Mr. Francis and such accounting is

23 necessary to determine the amounts and locations of funds that are subject to any ultimate

24 judgment, as well as any preliminary relief that may be granted by the Court." *Id.* ¶ 41.  Pre-

25 bankruptcy, the parties to the Alter Ego Litigation entered into a stipulation, a copy of which is

26 attached as Exhibit 5 to the Settlement Agreement, to maintain the Trust Funds in Mr. Houston's

27 client trust account pending further order of the Clark County District Court.  RJN ¶ 5.  The order

28 of the Clark County District Court approving the stipulation for maintenance of the Trust Funds is

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   attached as Exhibit 6 to the Settlement Agreement.  *Id.* ¶ 6.  Although Mr. Houston stated that the

2   Trust Funds came from GGW Direct, other evidence (described below) suggests that only a

3   portion of such funds originated from GGW Direct and that those amounts were paid first to Mr.

4   Francis's accountant, Boulevard Management, before being transferred to Mr. Houston, and that

5   other amounts may have come from multiple other sources.

6          On August 17, 2012, the Clark County District Court granted preliminary injunctive relief

7   (the "Preliminary Injunction") in the Alter Ego Litigation.  A copy of the Preliminary Injunction is

8   attached to the Settlement Agreement as Exhibit 4.  *Id.* ¶ 4.  In granting the Preliminary Injunction,

9   the court found that Wynn LV "has a substantial likelihood of success on the merits of its claim

10  for declaratory relief related to alter ego … and has presented evidence that . . . (d) As the person

11  most knowledgeable of the day to day operations of GGW Direct and the sole signatory on checks

12  issued by GGW Direct, Francis likely controls GGW Direct's operations; [and] (e) There is such

13  unity of interest between GGW Direct[, LLC] and Francis such that GGW Direct[, LLC] is the

14  alter ego of Francis…."  *Id.*; Settlement Agreement Exhibit 4 ¶ 2.

15         The Clark County District Court's finding that Wynn LV had a substantial likelihood of

16  success in having the Debtors determined to be alter egos of Mr. Francis (and therefore liable for

17  the judgments against him) is consistent with other courts' rulings.  On March 12, 2012, Brian

18  Rayment (former counsel to Mr. Francis and some or all of the Debtors), filed an action in the

19  District Court for Tulsa County, Oklahoma against GGW Brands, GGW Direct, and GGW

20  Marketing, and several other entities indirectly owned and/or controlled by Mr. Francis.  On

21  January 25, 2013, the Tulsa County court issued its *Order Granting Summary Judgment*, which

22  decrees that "GGW Brands, LLC … GGW Direct, LLC, GGW Marketing, LLC … [several other

23  entities] and Joseph R. Francis are each the alter egos of each other and that each of the

24  Defendants is liable for the debts of the other Defendants."  RJN ¶ 8, Ex. P.

25         A ruling of the U.S. District Court for the Central District of California with respect to a

26  different entity controlled by Mr. Francis is also instructive.  On June 30, 2011, that court found,

27  following a bench trial, that over $20 million held in an account for "Rothwell, Ltd.," a Cayman

28  Islands entity, was really beneficially owned by Mr. Francis and could be seized by the IRS.  It

1 held that, "despite Francis's lack of formal ownership over Rothwell, he exercised control over the

2 entity and use of its assets. … Due to Francis's apparent influence over Rothwell and its assets…

3 Rothwell held its assets as nominee for Francis." *Rothwell, Ltd. v. United States*, Case No. SA CV

4 10-00479-RGK (FFMx), Dkt. No. 77 (C.D. Cal. June 30, 2011).  RJN ¶ 9, Ex. M.  The Ninth

5 Circuit recently affirmed that judgment.  *Rothwell, Ltd. v. United States*, 11-56430, 2013 WL

6 2997188 at *2 (9th Cir. June 18, 2013).

7           After they filed for bankruptcy, the Defendant Debtors removed the Alter Ego Litigation to

8 the Nevada Bankruptcy Court and filed a motion to transfer venue of the Alter Ego Litigation to

9 this Court.  Wynn LV has filed a motion to remand the Alter Ego Litigation to the Clark County

10 District Court.  Mr. Wynn, Wynn LV, and the Movants stipulated to continue the hearings on the

11 motion to transfer venue and the motion to remand while they discussed and negotiated the claims

12 of Mr. Wynn and Wynn LV.  However, Mr. Wynn and Wynn LV have indicated that excessive

13 delay is prejudicial and are reluctant to grant further continuances.  As elaborated upon below, the

14 Settlement Agreement will resolve, *inter alia*, the pending motions in the Alter Ego Litigation.

15 **D.      The Settlement Agreement Proposes to Resolve the Wynn Claims.**

16           The Trustee and his professionals have investigated the factual basis for the allegations that

17 the Debtors are Mr. Francis's alter egos, including interviewing or deposing over a dozen persons

18 with relevant knowledge and reviewing thousands of pages of exhibits, emails, business records,

19 and transcripts.  They have consulted with the Debtors' and Mr. Francis's attorneys and former

20 attorneys, reviewed the lengthy pleading file in the alter ego litigation, and conducted independent

21 legal research on the relevant standards for imposing alter ego liability on the Debtors.  Heyn

22 Decl. ¶¶ 3-4.

23           In order to avoid costly, multi-jurisdictional litigation, the Trustee has sought a

24 compromise with Mr. Wynn and Wynn LV.  Over the past several weeks, the Trustee and his

25 professionals have had several meetings and teleconferences with the representatives and attorneys

26 of Mr. Wynn and Wynn LV to resolve their claims and disputes.  Trustee Decl. ¶ 7.  They have

27 exchanged information and engaged in several arm's-length negotiations both as to the substance

28 of the Settlement Agreement and as to its specific terms.  *Id.*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

The most relevant provisions of the Settlement Agreement are as follows:

1. Based on the Nevada Marker Judgment, Nevada Defamation Judgment and California Slander Judgment, Wynn LV and Mr. Wynn shall have allowed general unsecured claims against each of the Debtors equal to 90% of the amount Mr. Francis owes on those judgments (i.e., the face amount of those judgments, minus any minimal collections by Wynn LV to date, plus interest accrued on the judgments at the legal rate until the Petition Date), subject to certain adjustments that are described below. *See* Settlement Agreement §§ 2(a), 2(b), 2(d), & 2(f).[8]

2. Because one third of the amount Mr. Francis owes on the Nevada Defamation Judgment ($3,924,760 for each of Mr. Wynn **and** Wynn LV) is based on punitive damages, under the Settlement Agreement and the order approving it, Mr. Wynn and Wynn LV receive general unsecured claims of $2,354,856 (i.e., 90% of ⅔ of $3,924,760) and subordinated claims of $1,177,428 (i.e., 90% of ⅓ of $3,924,760). Settlement Agreement §§ 2(b)-2(e).

3. Under the Settlement Agreement and the order approving it, any distribution that would otherwise be made to Mr. Wynn and Wynn LV on the first $400,000 distributed to all general unsecured claims of all the Debtors (i.e., not $400,000 per Debtor) shall instead be made to the other holders of allowed general unsecured claims against all of the Debtors; provided, however, that this subordination shall not apply to any insiders of the Debtors or persons and entities listed in Exhibit 8 to the Settlement Agreement. Settlement Agreement §§ 2(a)(i), 2(b)(ii), 2(d)(ii),

---

[8] For example, as of the Petition Date, Mr. Francis owed Wynn LV $3,937,124.36 on account of the Nevada Marker Judgment. The Settlement Agreement and the proposed order approving it provide that, subject to certain conditions and provisions, Wynn LV shall have a general unsecured claim (the "Marker Claim") against each Debtor in the amount of $3,543,412 (i.e., 90% of $3,937,124). Settlement Agreement § 2(a). As of the Petition Date, Mr. Francis owed Mr. Wynn $19,411,232 on account of the California Slander Judgment. The Settlement Agreement and the proposed order approving it provide that, subject to certain conditions and provisions, Mr. Wynn shall have a general unsecured claim of $17,470,110 (i.e., 90% of $19,411,232). *Id.* § 2(f).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

2(d)(ii) & 2(f)(ii).  The specified persons and entities are Mr. Francis, entities that appear to be beneficially owned or controlled by Mr. Francis, and law firms, lawyers, and other persons that represented and assisted Mr. Francis in his efforts to resist Wynn LV's claims and collection efforts.  Heyn Decl. ¶ 18.

4.    Under the Settlement Agreement and the order approving it, the general unsecured claims of Mr. Wynn and Wynn LV are further reduced to the extent that they collect their claims from any source or party other than the Debtors; provided, however, that Mr. Wynn and Wynn LV are entitled to apply the funds from the non-Debtor source first to the 10% portion of their judgments for which they have no claim against the Debtors.  Settlement Agreement §§ 2(a)(ii), 2(b)(iii), 2(d)(iii) & 2(f)(iii).

5.    The Nevada Defamation Judgment and the California Slander Judgment are the subjects of appeals.  To the extent the appeals are successful, Mr. Wynn and Wynn LV's claims will be reduced to 90% of the ultimate final judgments.  *Id.* §§ 2(b)(i), 2(c)(i), 2(d)(i), 2(e)(i), & 2(f)(i).

6.    Upon approval of the Settlement Agreement, the Trustee, GGW Marketing, and Wynn LV will enter into a stipulation, which will be filed in the Nevada Bankruptcy Court, to resolve the Debtors' interest in the Trust Funds.  Settlement Agreement § 3.  Pursuant to the stipulation, $800,000 of the Trust Funds shall be paid to the Trustee on behalf of all of the Debtors and the balance shall go to Wynn LV.  Settlement Agreement Exhibit 9 § 1.  The Debtor Defendants will withdraw their motion to change venue and consent to Wynn LV's motion to remand.  *Id.* ¶¶ 4 & 5.  The Debtor Defendants will be dismissed from the Alter Ego Litigation and Mr. Wynn and Wynn LV agree not to attempt to add any of the Debtors to the Alter Ego Litigation unless the Debtors' bankruptcy cases are dismissed.  Settlement Agreement § 3(c).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

7.    The Settlement Agreement shall become null and void unless consummated on or before August 30, 2013 unless all the parties voluntarily extend that date.

Settlement Agreement § 3(f).

Following consultation with his attorneys and consideration of the evidence, the Trustee believes that entering into the Settlement Agreement is in the best interests of the Debtors and their estates.  Trustee Decl. ¶ 8.

## IV.  THE SETTLEMENT AGREEMENT SHOULD BE APPROVED.

### A.    The Applicable Standard.

Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n motion by the Trustee and after a hearing on notice to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).

"The purpose of a compromise agreement is to allow the Trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986).  "The bankruptcy court has great latitude in approving compromise agreements."  *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  Accordingly, in approving a settlement agreement, the Court need conduct neither an exhaustive investigation into the validity, nor a mini-trial on the merits, of the claims sought to be compromised.  *United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) (affirming approval of compromise of a claims against a debtor).  Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable.  *In re A & C Properties*, 784 F.2d at 1381.

The Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   *In re A & C Properties*, 784 F.2d at 1381.

2       Consideration of these factors does not require the Court to decide the questions of law and

3   fact raised in the settled controversies, or to determine whether a proposed settlement is the best

4   that could possibly have been achieved.  *In re Walsh Constr., Inc.*, 669 F.2d at 1328-29.  Rather,

5   the Court need only "canvas the issues and see whether the settlement falls below the lowest point

6   in the range of reasonableness."  *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal.

7   2004); *accord Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re*

8   *JMS Auto. Rebuilders, Inc.*, 2002 WL 32817517, at *4-5 (C.D. Cal. Jan. 15, 2002).

9       Finally, although the Court should give deference to the reasonable views of creditors,

10  "objections do not rule.  It is well established that compromises are favored in bankruptcy."  *In re*

11  *Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

12      **1.    The compromise of the Wynn claims is fair, reasonable and equitable.**[9]

13      Mr. Wynn and Wynn LV collectively have judgments of more than \$31 million against

14  Mr. Francis.  Mr. Wynn and Wynn LV contend that each of the Debtors is fully liable for Mr.

15  Francis's debts because they are his alter egos.  Based on the Trustee's investigation, if these

16  claims were allowed against the Debtors' estates, they would be the largest claims and would

17  materially dilute the claims of all other creditors.  The Settlement Agreement favorably resolves

18  Mr. Wynn's and Wynn LV's claims against the Debtors, ensuring that substantial amounts will be

19  distributed to general unsecured creditors (other than insiders and the Specified Persons and

20  Entities).  First, in exchange for allowing their claims against the Debtors, Mr. Wynn and Wynn

21  LV have agreed that their claims will be discounted to 90% of the amount owed on the judgments

22  as of the Petition Date – even less if those judgments are modified or reversed on appeal or re-

23  trial.  Second, Mr. Wynn and Wynn LV agree to subordinate all their claims to \$400,000 of

---

24  [9]   This memorandum of points and authorities separately analyzes the reasonableness of the two

25  aspects of the Settlement Agreement:  (i) the compromise of the claims of Mr. Wynn and
    Wynn LV, and (ii) the division of the Trust Funds.  Although, as described below, each aspect

26  of the Settlement Agreement is reasonable independently, the aspects are not independent of
    each other.  Mr. Wynn and Wynn LV will only agree to the division of the Trust Funds in the

27  context of a settlement of its claims and the Trustee believes that it is more advantageous to

28  seek a global settlement with Wynn LV and Mr. Wynn than a partial settlement.

general unsecured creditors (except insiders and Specified Persons and Entities). Third, Mr. Wynn and Wynn LV agree to reduce their claims against the Debtors to the extent they are successful in collecting their judgments. Fourth, Mr. Wynn and Wynn LV have agreed that over $2.3 million of their claims will be subordinated to *all* non-subordinated creditors (even the insiders unless those insider claims are subsequently subordinated, e.g., pursuant to Bankruptcy Code § 510(c)). This settlement is fair, reasonable, and equitable under *In re A&C Properties*.

### a.    The probability of success in the litigation.

After considerable investigation, the Trustee has determined that there is a substantial risk that he will lose the Alter Ego Litigation and each of the Debtors eventually will be determined to be Mr. Francis's alter egos. The Trustee had come to this view not just because the Clark County District Court has found a "substantial likelihood" of Wynn LV prevailing on the merits in that litigation or because two other courts have made similar findings (one with regard to several of the Debtors and one with respect to another Francis-controlled entity). The law and facts support the claims.

Courts have long recognized that piercing the corporation veil is appropriate where it appears that a business entity is acting as the alter ego of a controlling individual. *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 904 (Nev. 2000); *Irewin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 987 (Del. Ch. 1987). Piercing the corporate veil applies to limited liability companies just as much as it does to regular corporations. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (holding that, under Delaware law, the alter ego doctrine applies to LLCs); *In re Giampietro*, 317 B.R. 841, 845-46 (Bankr. D. Nev. 2004) (holding that, under Nevada law, alter ego doctrine applied to LLCs).

While it is not clear whether the Clark County District Court or the Nevada Bankruptcy Court will apply Delaware or Nevada law to Wynn LV's alter ego claim, the standards are very similar: Under Delaware law, a court will pierce the corporate veil when two entities "operated as a single economic entity such that it would be inequitable for th[e] Court to uphold a legal distinction between them." *Mabon, Nugent & Co. v. Texas American Energy Corp.*, 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990); *accord Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    1995) ("Our Court has stated this as a two-pronged test focusing on (1) whether the entities in

2    question operated as a single economic entity, and (2) whether there was an overall element of

3    injustice or unfairness."); *Trevubi v. Mescorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (to

4    prevail under an alter ego theory, a plaintiff must show (1) that the corporation and its

5    shareholders operated as a single economic unit and (2) that an overall element of injustice or

6    unfairness is present).  Under Nevada law, an individual is the alter ego of a corporate entity if: (1)

7    the corporation is influenced and governed by the person asserted to be the alter ego; (2) there is

8    such unity of interest and ownership that one is inseparable from the other; and (3) the facts are

9    such that adherence to the corporate fiction of the separate entity would, under the circumstances,

10   section fraud or promote injustice.  Nev. Rev. Stat. § 78.747.

11          There is evidence to support imposing alter ego liability on each of the Debtors.  Prior to

12   the appointment of the Trustee, each of the Debtors were wholly owned and controlled by Mr.

13   Francis.  Mr. Francis and the Debtors appear to have operated as a single economic unit, such that

14   one is inseparable from the other.  The Debtors paid Mr. Francis's personal expenses and attorneys

15   as though they were the Debtors' business expenses.  Isaac Decl. ¶ 4.   Mr. Francis caused the

16   Debtors to make payment to his personal accountant, who then used the money to pay for

17   everything from Mr. Francis's landscaping to his mortgage.  Mr. Francis used the Debtors' cars

18   for his own personal purposes and used the Debtors' credit card for ordinary personal expenses.

19   Mr. Francis managed the Debtors without taking any meaningful salary.  The Debtors' primary

20   intellectual property and several of their assets were transferred from and to Mr. Francis or entities

21   that he controlled.  The Debtors' only space was subleased from a different Francis-related entity.

22          Adherence to the corporate fiction of the separate entity would, under the present

23   circumstances, sanction fraud or promote injustice.  Mr. Francis has been able to live a luxurious

24   lifestyle and avoid debt collection by claiming that he has no assets and that his homes, his cars,

25   and his lifestyle are owned and/or funded by the Debtors.  For example, GGW Events held title to

26   the cars he drove and paid for the insurance on those cars.  Isaac Decl. ¶ 5.  GGW Direct paid Mr.

27   Francis's mortgage for his Bel Air mansion and his ordinary business expenses for his property in

28   Mexico.  Id. ¶ 4.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

145125.5                                    15

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    Initially, Mr. Francis disguised his ownership interest in the Debtors.  Then, he transferred

2  his ownership interest in the Debtors and the intellectual property that they use to offshore entities

3  that are owned by a trust that he settled and of which he is the beneficiary, with the intent of

4  preventing creditors from using or accessing those assets.

5    The Debtors have previously focused their arguments against being liable under the alter

6  ego doctrine by arguing that, generally under the alter ego doctrine, a shareholder is held liable for

7  the debts of a business entity he owns and/or controls and that the opposite (the corporation being

8  liable for the shareholder's debts is either totally impermissible or rare).  To impose liability on the

9  Debtors, as Mr. Wynn and Wynn LV seek to do here, would be to hold the entities (i.e., the

10  Debtors) liable for the shareholder's debt.  Several courts have rejected such "reverse veil

11  piercing."  *See, e.g., Postal Instant Press, Inc. v. Kaswa Corp.*, 77 Cal. Rptr. 3d 96, 102-03 (2008);

12  *Cascade Energy & Metals Corp. v. Banks*, 896 F. 2d 1557, 1576-77 (10th Cir. 1990); *In re ALT*

13  *Hotel LLC*, 479 B.R. 781, 802 (Bankr. N.D. Ill. 2012).

14    While the Trustee does think there is a ***possibility*** that these arguments will be successful

15  in avoiding alter ego liability, the majority of courts (including the Nevada Supreme Court) have

16  recognized reverse veil piercing as viable theory.[10]  *See, e.g.*, *ASARCO LLC v. Americas Min.*

17  *Corp.*, 382 B.R. 49, 66 (S.D. Tex. 2007) (applying Delaware law); *In re Turner (Kendall v.*

18  *Turner)*, 335 B.R. 140 (Bankr. N.D. Cal. 2005); *In re Schwab*, 378 B.R. 854 (Bankr. D. Minn.

19  2007); *LFC Marketing*, 8 P.3d at 904 (applying Nevada law); *accord Spinnell v. JP Morgan*

20  *Chase Bank, N.A.,* 59 A.D.3d 361, 362 (N.Y. App. Div. 2009) ("The court properly applied New

21  York law because there is no conflict with Delaware law with respect to 'reverse veil-piercing'");

22  *Litchfield Asset Mgmt. Corp. v. Howell*, 799 A.2d 298, 313 (Conn. App. 2002); *Great Neck Plaza,*

23  *L.P. v. Le Peep Restaurant, LLC*, 37 P.3d 485 (Colo. App. 2001); *Spinnell v. JP Morgan Chase*

24  *Bank, N.A.*, 59 A.D.3d 361, 362 (N.Y. App. Div. 2009) ("The court properly applied New York

25

26  _____

[10]  The best possibility for success against Mr. Wynn and Wynn LV would be on the basis that
27  reverse veil piercing is not a viable theory, as the facts are such that, if a court accepts a
reverse veil piercing theory, it would very likely award judgment in favor of Mr. Wynn and
28  Wynn LV.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    law because there is no conflict with Delaware law with respect to 'reverse veil-piercing'").

2    Delaware courts have repeatedly declined to rule on whether reverse piercing of the corporate veil

3    is appropriate.  *See, e.g.*, *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *12

4    n. 90 (Del. Ch. Dec. 30, 2010); *Case Fin., Inc. v. Alden*, 2009 WL 2581873, at *4 (Del. Ch. Aug.

5    21, 2009).

6         The Nevada Bankruptcy Court, the Clark County District Court, and this Court would each

7    have to apply Nevada choice-of-law rules to determine whether to apply Nevada substantive law

8    (under which reverse veil piercing is clearly permissible) or Delaware substantive law (which

9    offers no controlling authority).[11]  "Nevada choice-of-law rules dictate that unless there is an

10   actual conflict between two potential sets of laws, the law of the forum state is applied."  *Goff v.*

11   *Harrah's*, 392 F. Supp. 2d 1244, 1244 n.1 (D. Nev. 2005).  Because Delaware courts have not

12   spoken, it may be challenging for the Trustee to argue that Delaware law should override Nevada

13   law.

14        In order to defeat Mr. Wynn's and Wynn LV's alter ego claim, Movants will have to

15   convince a court that, (i) under Nevada's choice-of-law rules, Delaware law applies (not Nevada

16   law); and  (ii) although there are no Delaware cases so holding, reverse piercing of the corporate

17   veil is not allowed under Delaware law or is not appropriate here (even though another court has

18   already granted a different creditor a judgment that several of the Debtors are alter egos of Mr.

19   Francis).

20        Even if the Trustee were successful in persuading the deciding court that the Debtors

21   should not be liable as alter egos of Mr. Francis, Mr. Wynn and Wynn LV have indicated that they

22   may pursue alternate theories to establish claims against the Debtors' estates for their judgment

23   against Mr. Francis, including the theory recently endorsed by the Ninth Circuit Court of Appeals:

24   _____

25   [11]  The Nevada Bankruptcy Court would apply Nevada choice of law rules because a federal court
     ordinarily must apply the choice-of-law rules of the state in which it sits.  *Klaxon v. Stentor*

26   *Electric Mfg. Co.*, 313 U.S. 487, 492 (1941).  If the Alter Ego Litigation were transferred to
     this Court, it would apply Nevada choice of law rules because a transferee court applies the

27   choice-of-law rules of the transferor court.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 244 n.8
     (1981).

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

that the Debtors hold Mr. Francis's assets as nominees. *Rothwell, Ltd. v. United States*, 11-56430, 2013 WL 2997188 at *2 (9th Cir. June 18, 2013); *accord Fourth Inv. LP v. United States*, __ F.3d __, 2013 WL 2631514 (9th Cir. June 13, 2013). Such a theory does not require proving that the Debtors are Mr. Francis's alter egos (or vice versa). Instead, the court would apply a six-factor test:

> (1) whether inadequate or no consideration was paid by the nominees [for the property seized];
>
> (2) whether the properties were placed in the nominees' names in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
>
> (3) whether there is a close relationship between the nominees and the transferor;
>
> (4) failure to record the conveyances;
>
> (5) whether the transferor retained possession; and
>
> (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Fourth Inv.*, 2013 WL 2631514 at *4. Mr. Wynn and Wynn LV believe that a case can be made that they have claims against the estates based on the application of these factors. The Trustee would, most assuredly, resist this theory if the present motion were not approved, but recognizes that it presents challenges.

Under the Settlement Agreement, Mr. Wynn and Wynn LV have claims against each of the Debtors not just the Debtor Defendants (i.e., the Debtors who are parties to Wynn LV's Alter Ego Litigation). This is because the alter ego facts that Wynn LV has alleged against GGW Direct, GGW Brands and GGW Events (and that Mr. Rayment has proven against GGW Direct, GGW Marketing and GGW Brands), are true of all of the Debtors not just the Debtor Defendants. Each of the Debtors was formed by Mr. Francis and (until at least the Petition Date) controlled by Mr. Francis. The equity interests in each of the Debtors is indirectly owned by a trust settled by Mr. Francis, whose beneficiary is Mr. Francis. While GGW Direct and GGW Events conferred most

of the direct benefits to Mr. Francis, the other entities were formed and were operated as a single

business enterprise[12] to assist the other Debtors and depended on the other Debtors:

- Until the trademarks were transferred to Path Media Holdings, LLC, GGW
  Marketing owned the trademarks that the other Debtors used.  Heyn Decl. ¶ 13.  It
  appears to have no other purpose.  *Id.*  GGW Marketing allowed the other Debtors
  to use the trademarks for free.  Isaac Decl. ¶ 6.  GGW Direct paid for the attorneys
  who represented GGW Marketing without recording an intercompany receivable.
  *Id.* ¶ 6.  Nearly all of the scheduled or asserted claims against GGW Marketing's
  estate (in dollar amount and number) are also scheduled or asserted against one or
  more of the other Debtors' estates (generally because, allegedly, GGW Marketing
  and one or more of the other Debtors are alter egos of Mr. Francis or an entity he
  controlled).  Heyn Decl. ¶ 14.

- GGW Brands operated as a holding company for the other Debtors.  GGW Direct
  paid for the attorneys who represented GGW Brands without recording an
  intercompany receivable.  Isaac Decl. ¶ 6.  Nearly all of the scheduled or asserted
  claims against GGW Brands' estate (in dollar amount and number) are also
  scheduled or asserted against one or more of the other Debtors' estates (generally
  because, allegedly, GGW Brands and one or more of the other Debtors are alter
  egos of Mr. Francis or an entity he controlled).  Heyn Decl. ¶ 14.

- GGW Magazine produced a magazine that was, in the months before the Petition
  Date, offered exclusively online through the website that was owned by GGW
  Direct.  GGW Direct paid the attorneys who represented GGW Magazine without
  recording an intercompany account receivable.  *Id.* ¶ 6.  Nearly all of the scheduled

---

[12]    *See Toho-Towa Co. v. Morgan Creek Productions, Inc.*, Case No. B242095 (July 11, 2013
Cal. Ct. App. July 11, 2013) ("A court may also disregard the corporate form in order to hold
one corporation liable for the debts of another affiliated corporation when the latter is so
organized and controlled, and its affairs are so conducted, as to make it merely an
instrumentality, agency, conduit, or adjunct of another corporation.").  This case is attached
hereto as Exhibit V.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

or asserted claims against GGW Magazine's estate (in dollar amount and number)

are also scheduled or asserted against one or more of the other Debtors' estates

(generally because, allegedly, GGW Magazines and one or more of the other

Debtors are alter egos of Mr. Francis or an entity he controlled).  Heyn Decl. ¶ 14.

In light of these facts, Movants believe that Mr. Wynn and Wynn LV have a reasonable

argument that all of the Debtors are liable as Mr. Francis's alter egos.

**b.  The difficulties, if any, to be encountered in the matter of collection.**

Because the settlement relates to Mr. Wynn's and Wynn LV's claims against the Debtors'

estates, not collection of amounts from Mr. Wynn or Wynn LV, this factor is not relevant.

**c.  The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.**

The complexity and expense of the Alter Ego Litigation weighs in favor of approving the

Settlement Agreement.  Wynn LV has informed the Trustee that the Alter Ego Litigation is nearly

trial ready and that, in the absence of entering into the Settlement Agreement, Wynn LV will seek

relief from the automatic stay to have the Alter Ego Litigation go forward in the Clark County

District Court.  Wynn LV has argued that the Clark County District Court is the best forum to

determine the Alter Ego Litigation because it has already become familiar with the facts in ruling,

among other things, on Wynn LV's motions for temporary restraining order and preliminary

injunction.  As noted above, Wynn LV has filed a motion to remand the Alter Ego Litigation to

the Clark County District Court, arguing:

> [The Alter Ego Litigation] must be remanded because it involves claims and causes of actions against non-debtor defendants against whom the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"), … does not have jurisdiction to enter final orders against them or Wynn absent their consent.  Absent their consent, the California Bankruptcy Court cannot efficiently and effectively administer the relief against the non-debtor defendants that Wynn is entitled to[,] which could result in inconsistent rulings by the California Bankruptcy Court and other courts with competent jurisdiction over Francis and the non-debtor defendants. In addition, the failure to remand this case back to the Nevada State Court would fully eviscerate over a year's work in the Nevada State Court, require the California Bankruptcy Court to start over and rehash and adjudicate the same proceedings that have already been decided in the Nevada State Court and have been scheduled for trial in three (3) short months.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    RJN ¶ 11, Exhibit R at 2.

2

3        While the Movants would oppose the remand of the Alter Ego Litigation and would

4    prosecute the motion to transfer venue that the Debtors have filed, there can be no assurance that

5    they would be successful.  If the Movants were unsuccessful, they would be forced to hire Nevada

6    trial counsel and litigate a challenging case in the Clark County District Court.  Such litigation

7    would unnecessarily and dramatically increase the administrative costs of the estate.

        **d.    The paramount interest of the creditors and a proper deference to their
8               reasonable views in the premises.**

9

10        The paramount interest of creditors also weighs in favor of approving the Settlement

11   Agreement.  The Settlement Agreement provides for a limited subordination of Mr. Wynn's and

12   Wynn LV's claims to all general unsecured claims except insider claims and claims held by

13   persons and entities listed on Exhibit 8 to the Settlement Agreement.  Exhibit 8 to the Settlement

14   Agreement consists of Mr. Francis, entities that he controls, and lawyers and other persons that

15   have assisted him.  Heyn Decl. ¶ 19.

16        By virtue of the subordination, $400,000 of general unsecured claims of creditors who are

17   not insiders or Specified Persons or Entities will be paid ahead of the general unsecured claims of

18   Mr. Wynn and Wynn LV.  In the absence of this subordination, if Wynn LV were successful in

19   having the Debtors declared alter egos of Mr. Francis, Wynn LV's and Mr. Wynn's judgment

20   could substantially dilute any distributions to unsecured creditors.  By entering into the Settlement

21   Agreement, the Trustee not only reduces administrative expenses (by avoiding out-of-state

22   litigation of the alter-ego allegations), thereby lowering the threshold at which distributions to

23   creditors begin, he substantially reduces the risk that there will be no meaningful distributions to

24   non-Wynn general unsecured creditors.[13]

25   _____

26   [13]   The risk of no meaningful distributions to unsecured creditors is not totally eliminated.  Mr.
     Francis's other unsecured creditors may attempt to assert large alter ego claims against the
27   Debtors.  Moreover, the Internal Revenue Service has filed proofs of claims in each of the
     Debtors' estates, asserting claims that aggregate to over $13 million.  The Trustee's initial
28   assessment of the IRS's claims is that they will not be allowed.  Each of the Debtor is a single-
     *(FOOTNOTE CONTINUED)*

## 2.    The division of the Trust Funds is fair, reasonable and equitable.

As noted above, the Settlement Agreement also provides for a split of the Trust Funds at issue in the Alter Ego Litigation, with $800,000 of the Trust Funds immediately to be distributed to the Trustee for the benefit of the Debtors' estates and the remaining cash (approximately $1 million) to go to Wynn LV.  In exchange for allowing the Debtors to have $800,000, Wynn LV would be entitled to a $250,000 Priority Claim.  Payment of the Trust Funds and the Priority Claim will reduce the Marker Claim.  Stipulation §§ 3(a) & 3(b).

The split of the Trust Funds under the Settlement Agreement is fair, reasonable and equitable.  Notwithstanding the initial indications in pleadings filed in the Alter Ego Litigation, the Trustee's tracing analysis shows that GGW Direct directly transferred $710,967.99 to Boulevard Management, who served as accountants for Mr. Francis (not the Debtors).  The balance of the funds that were transferred to Boulevard Management, $2,337,383.16, came directly from Mr. Francis or non-Debtor entities.  The funds transferred to Boulevard Management were used for a variety of Mr. Francis's personal activities and the balance, $1,946,578.28, was paid to Houston to be held in his trust account.  Houston apparently used some of the funds and is currently holding $1,846,578.28 in his trust account.  Under these facts and circumstances, the Movants' arguments for obtaining a significantly larger portion of the Trust Funds than is allocated to the estate under the Settlement Agreement are unlikely to succeed and it is possible that the estates could receive much less of the Trust Funds – or no Trust Funds at all.

### a.    The probability of success in the litigation.

Movants believe that they have a strong chance of prevailing on a significant portion of the Trust Funds.  As noted above, GGW Direct transferred $710,967.99 to Boulevard Management,

---

member LLC.  Unless it elects to be treated otherwise (the Trustee believes that the Debtors have not), a single-member LLC is disregarded as an entity separate from the owner for federal tax purposes.  Treas. Reg. § 301.7701-3(b)(1)(ii).  If a single-member LLC is disregarded as an entity for federal tax purposes, "its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner." Treas. Reg. § 301.7701-2(a).  This means that the owner is the employer for purposes of payroll taxes.  *Kandi v. United States*, 2006 WL 83463 (W.D. Wash. Jan. 11, 2006) *aff'd*, 295 F. App'x 873 (9th Cir. 2008) (citing I.R.S. Notice 99-6, 1999-3 I.R.B. 12 and I.R.S. Chief Couns. Off. Mem. 199930013 (July 30, 1999)).

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone: 310-407-4000

1   which used this money (and $2,337,383.16 that came from Mr. Francis or Francis-controlled

2   entities) to pay Mr. Francis's personal expenses and then transferred the balance to Houston.

3   Wynn LV has contended that the Debtors are not entitled to any of the Trust Funds because

4   (i) when the Debtors transferred the $710,967.99 to Boulevard Management, which was Mr.

5   Francis's accountant, they ceased to have an ownership interest in the funds and – at best – had a

6   fraudulent transfer claim against Boulevard Management or Mr. Francis and (ii) when the Clark

7   County District Court ordered that Houston hold the money in response to Wynn LV's motion for

8   preliminary injunction, it gave Wynn LV a pre-judgment lien on the property.  Movants do not

9   believe that these arguments will be successful, although they are entitled to some weight.

10      Movants believe that the Debtors' estates are unlikely to receive significantly more than

11  the amount of Trust Funds that would be distributed to them under the Settlement Agreement.  As

12  noted above, most of the money that went to Houston did not directly come from the Debtors, but

13  from non-Debtor entities or Mr. Francis.  Movants have attempted to trace this additional money

14  back to the Debtors with limited success.  Heyn Decl. ¶ 17.  Wynn LV has argued that, because

15  GGW Direct only directly transferred approximately 23% of the amounts to Boulevard

16  Management, which became the Trust Funds, the Debtors should at most be entitled to 23% of the

17  Trust Funds (*i.e.*, $430,678.09).  Movants do not believe that this argument will be successful, but

18  it is entitled to some weight.

19          **b.       The difficulties, if any, to be encountered in the matter of collection.**

20      Because the Trust Funds are being held by Houston and will be distributed to whoever is

21  determined to be the owner, there are no anticipated difficulties to be encountered collecting the

22  Trust Funds.

23          **c.       The complexity of the litigation involved, and the expense,
                        inconvenience and delay necessarily attending it.**

24

25      The complexity of the litigation weighs heavily in favor of approving the split of the Trust

26  Funds contemplated by the Settlement Agreement.  Because the ownership of the Trust Funds will

27  be decided as part of the Alter Ego Litigation, litigating the ownership of the Trust Funds will be

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   expensive and would require Movants to obtain Nevada counsel.[14]  While Movants would oppose

2   the remand of the Alter Ego Litigation and would prosecute the motion to transfer venue to this

3   Court, there can be no assurance that they would be successful.  If the Movants were unsuccessful,

4   the Movants would be forced to litigate a challenging case in the Clark County District Court.

5   Such litigation would increase the administrative costs of the estates.  Litigation in this Court

6   would also be expensive, although marginally less costly than having to hire Nevada counsel and

7   litigate there.

8           **d.        The paramount interest of the creditors and a proper deference to their
                       reasonable views in the premises.**

9

10          Creditors' interests weigh in favor of the Settlement Agreement.  Immediately obtaining

11  $800,000 of the Trust Funds without having to spend administrative costs fighting Mr. Wynn,

12  Wynn LV, Mr. Francis, or any Francis-related entities is in the creditors' best interest, particularly

13  because it is unlikely that Movants will be able to obtain a greater share of the Trust Funds

14  through continued litigation.  While the estates must give Wynn LV a $250,000 administrative

15  claim that shall be entitled to be paid ahead of all claims and administrative expenses of the

16  Debtors and their estates except for amounts allowed under 11 U.S.C. § 503(b)(2) to get its share

17  of the Trust Funds, this administrative cost is justified given the large amount of Trust Funds that

18  the estates will receive (relative to what the Movants might obtain in litigation), and the fact that

19  the estates will be able to immediately obtain the funds without having to file a turn-over action

20  against Houston.  Moreover, structuring the split of the Trust Funds as a payment to the estates of

21  $800,000 with Wynn LV receiving the $250,000 Priority Claim (rather than the estates receiving

22  only $550,000) gives the Debtors' estates more cash to operate and pay administrative costs.

23

24

25

---

26  [14]  As noted in the Notice of Motion and Motion, while it is possible that the currently pending
         motion to remand would be denied and the motion to change venue would be granted, at the
27       very least, these motions would have to be briefed and litigated in the Nevada Bankruptcy
         Court, which would require that Movants retain Nevada counsel.
28

1

# V.  CONCLUSION.

The Settlement Agreement was negotiated in good faith and it is fair, reasonable and equitable with respect to both the treatment of Wynn LV's and Mr. Wynn's claims and the division of the Trust Funds. The Court should approve the Settlement Agreement and enter the proposed order attached as Exhibit 10 to the Settlement Agreement.

DATED: July 15, 2013                     Respectfully submitted,

KLEE, TUCHIN, BOGDANOFF & STERN LLP

By:  _Matthew Heyn_____
         Matthew C. Heyn
Attorneys for R. Todd Neilson and
GGW Marketing, LLC

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

## DECLARATION OF MATHEW C. HEYN

I, Matthew C. Heyn, declare as follows:

1.     I am over the age of 18.  All statements made in this declaration are based on my personal knowledge.  If called to testify as a witness in this matter, I could and would testify under oath to the truth of the statements set forth herein.

2.     I am a partner in Klee, Tuchin, Bogdanoff & Stern, LLP, which is counsel to GGW Marketing, LLC ("GGW Marketing") and R. Todd Neilson, the chapter 11 trustee (the "Trustee") in the jointly administered bankruptcy cases of GGW Brands, LLC, GGW Direct, LLC, GGW Magazine, LLC and GGW Events, LLC.  In this declaration, I refer to GGW Brands, LLC, GGW Direct, LLC, GGW Magazine, LLC and GGW Events, LLC and GGW Marketing as the "Debtors."

3.     I have been directly involved in the Trustee's investigation of the Debtors' financial affairs.  After the Court entered orders authorizing the Trustee to conduct Rule 2004 examinations, I interviewed, took sworn testimony from, or reviewed deposition transcripts of more than two dozen witnesses.  I helped the Trustee to investigate, among other things, Joseph Francis's relationship to the Debtors and the judgments in favor of Stephen A. Wynn and Wynn Las Vegas, LLC against Mr. Francis.

4.     The Trustee, his other professionals, and I have investigated the factual basis for the allegation that the Debtors are Mr. Francis's alter egos.  We interviewed or deposed over a dozen witnesses and reviewed thousands of pages of exhibits, emails, business records, and transcripts.   The Trustee's other professionals and I have consulted with the attorneys and former attorneys for the Debtors and Mr. Francis, reviewed the lengthy pleading file in the civil action captioned *Wynn Las Vegas, LLC d/b/a Wynn Las Vegas v. GGW Direct, LLC*, Case No. A-12-660288-B (the "Alter Ego Litigation"), and conducted independent legal research on the relevant standards for imposing alter ego liability on the Debtors.

5.     Although the Trustee's other professionals and I have uncovered a significant amount of information, we have been hampered by what appear to be deliberate efforts by Mr.

145125.5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   Francis and his co-conspirators to destroy evidence prior to the appointment of the Trustee.  Our

2   investigation on behalf of the Trustee continues.

3         6.      Attached hereto as Exhibit O is a letter agreement between Rafael Bernardino and

4   Mr. Francis, in which Mr. Bernadino agrees to resign all roles and official positions he held with

5   the Debtors and relinquish and assign to Mr. Francis any and all rights, title, and interest he has in

6   the Debtors.  This agreement was produced by a former attorney for the Debtors in connection

7   with the Debtors' 2004 examination.

8         7.      As part of the investigation of the Debtors' financial affairs, the my colleague took

9   sworn testimony from Robert Klueger, an attorney specializing in asset protection, whom the

10  Debtors and Mr. Francis hired in October 2011.  True and correct excerpts of the transcript of the

11  2004 examination of Mr. Klueger are attached hereto as Exhibit J.

12        8.      In his 2004 examination, Mr. Klueger described his services for the Debtors.  *See*

13  Exhibit J at 6:5-8:9.  A true and correct copy of Mr. Klueger's retention agreement is attached

14  hereto as Exhibit I.  It provides that Mr. Klueger was hired to:

15      [F]orm one or more offshore entities.  One of the offshore entities will be formed

16      for the purpose of acting as the holder of your IP ….  The other offshore entity or

17      entities will act as holding companies for the purpose of ***insulating*** your

18      ownership.  …  In everything we do, we will assure that any and all corporate

19      reorganizations that we undertake is ***explainable*** by you as legitimate corporate

20      planning and legal tax planning.

21  Exhibit I ¶¶ 2 & 7 (emphasis added).

22        9.      The Trustee's investigation of the Debtors' financial affairs has uncovered

23  significant evidence that Mr. Francis beneficially owns the Debtors and (until the February 27

24  2013) controlled them.

25        (a)      The Debtors entered into resolutions naming Mr. Francis as a "key

26  executive" and giving him check signing authority.  A true and correct copy of two such resolution

27  naming Mr. Francis a "key executive" are attached hereto as Exhibit F.  In his 2004 examination,

28

1  Robert Klueger, former counsel to the Debtors, authenticates these resolution and others like it.

2  *See* Exhibit F at 60:9-61:1.

3           (b)     Mr. Francis signed checks on behalf of the Debtors.  True and correct

4  copies of checks that Mr. Francis signed on behalf of the Debtors are attached hereto as Exhibit G.

5           (c)     The business records from the Debtors' employees reflect that all of the

6  Debtors' employees directly or indirectly reported to Mr. Francis.  Attached hereto H is an

7  organization chart provided by the Debtors' former attorneys showing that all of the Debtors'

8  employees reported to Mr. Francis.

9           (d)     In his 2004 examination, Mr. Klueger testified "there's no doubt at the end

10  of the day the ultimate owner of the assets is Joe Francis."  Exhibit J at 19:6-19.

11     10.     Contrary to the above described evidence, when asked in debtor's examinations

12  what his relationship to the Debtors is, Mr. Francis denies understanding the corporate structure.

13  Attached hereto as Exhibit N are excerpts of the transcript of an August 22, 2011 debtor's

14  examination of Joseph Francis, during which Mr. Francis testified that he is operating "hand to

15  mount" (*see* page 56:14), does not know how he gets his spending money (*see* pages 16:18 –

16  17:8).

17     11.     In connection with my firm's representation of the Trustee, I reviewed the

18  judgments that Mr. Wynn and Wynn Las Vegas have against Mr. Francis and researched the status

19  of the litigation from publically available resources.

20          (a)     I reviewed the calculation of the amount owed on the judgment against Mr.

21  Francis in Clark County District Court Case No. A566286 (the "Nevada Marker Judgment").  As

22  of February 27, 2013, Wynn LV was owed at least $3,937,124.36 on account of the Nevada

23  Marker Judgment.  The Nevada Marker Judgment is final and nonappealable.

24          (b)     I reviewed the calculation of the amount owed on the judgment against Mr.

25  Francis in Clark County District Court Case No. A566286 (the "Nevada Defamation Judgment").

26  As of February 27, 2013, Mr. Wynn and Wynn LV were each owed at least $3,924,760.74 on

27  account of the Nevada Defamation Judgment.  The Clark County District Court denied Mr.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   Francis's motion to set aside the Nevada Defamation Judgment, and Mr. Francis has filed an

2   appeal of the court's denial of such motion, which remains pending.

3          (c)     I reviewed the calculation of the amount owed on the judgment against Mr.

4   Francis in in the Superior Court of California, County of Los Angeles Case No. BC438884 (the

5   "California Slander Judgment").  As of the Petition Date, Mr. Wynn was owed at least

6   $19,411,232.92 on account of the California Slander Judgment.  Although the LASC struck all of

7   Mr. Wynn's claims for punitive damages, it otherwise denied Mr. Francis's post-trial motions.

8   Mr. Francis has filed an appeal that remains pending.

9          12.     In connection with my firm's representation of the Trustee, I have reviewed records

10  that reflect that Mr. Francis resides in multi-million dollar homes in Bel Air and Mexico and

11  drives several luxury cars.

12         (a)     Attached hereto as Exhibit K is a mortgage application, which shows Mr.

13  Francis seeking a $5,000,000 based on the value of his residence in Bel Air.  On the application,

14  Mr. Francis says the present value of his home $10,500,000.

15         (b)     Attached hereto as Exhibit L are trust deeds showing that, at approximately

16  the time Mr. Francis was seeking the mortgage, he transferred ownership of his home back and

17  forth between himself and Blue Horse Trading, LLC.

18         (c)     Attached as hereto Exhibit M hereto are the findings of fact and conclusions

19  of law in the case captioned *Rothwell, Ltd. v. United States*, Case No. CV 10-00479-RGK in

20  which the district court found that Mr. Francis used several non-Debtor entities to purchase (for

21  $1.03 million) real property located in the "Ranchos Punta Mita development" in the Municipality

22  of Bahia de Banderas, State of Nayarit, Mexico.  *Id.* ¶¶ 22-24 & 29.  The court also found that,

23  during 2002 and 2003, Mr. Francis, through entities that he controlled, paid over $5 million to

24  construct a residence on the lot.  *Id.* ¶ 24.

25         (d)     In his debtor's exam dated August 22, 2011, Mr. Francis admits that he

26  drives a Ferrari and had access to a Bentley.  Exhibit N at 70:1-16; *see also* Exhibit E at 42:24-

27  43:1 ("Sometimes I drive a Bentley").

28

145125.5                                   29

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

13.     I reviewed the publically available records of the U.S. Patent and Trademark Office (the "USPTO").  Those records reflect that, until the trademarks were transferred to Path Media Holdings, LLC, GGW Marketing, LLC owned the trademarks that the other Debtors used.  A true and correct copy of the USPTO records reflecting that GGW Marketing, LLC owned the trademarks is attached hereto as Exhibit Q.  Based on my investigation, GGW Marketing, LLC appears to have had no other purpose other than ownership of the trademarks.

14.     I reviewed the schedules and proof of claim docket for each of the Debtors.  Nearly all of the scheduled or asserted claims against GGW Marketing's estate (in dollar amount and number) are also scheduled or asserted against one or more of the other Debtors' estates (generally because, allegedly, GGW Marketing and one or more of the other Debtors are alter egos of Mr. Francis or an entity he controlled).  Nearly all of the scheduled or asserted claims against GGW Brands' estate (in dollar amount and number) are also scheduled or asserted against one or more of the other Debtors' estates (generally because, allegedly, GGW Brands and one or more of the other Debtors are alter egos of Mr. Francis or an entity he controlled).  Nearly all of the scheduled or asserted claims against GGW Magazine's estate (in dollar amount and number) are also scheduled or asserted against one or more of the other Debtors' estates (generally because, allegedly, GGW Magazines and one or more of the other Debtors are alter egos of Mr. Francis or an entity he controlled).

15.     To assist the Trustee in evaluating the merits of the Alter Ego Litigation, I reviewed business records reflecting the source of $1,846,578.28 (the "Trust Funds") held in a client trust account by David R. Houston, and his law firm, David R. Houston, Ltd. (collectively "Houston").

16.     Attached hereto as Exhibit S is a true and correct copy of an email and business record attachments from Regina Jones, a bookkeeper at Boulevard Management.  The email attachments show all of the funds received by Boulevard Management from or for the benefit of Mr. Francis as well as how that money was used.  The email attachments show that GGW Direct directly transferred $710,967.99 to Boulevard Management.  The balance of the funds that were transferred to Boulevard Management, $2,337,383.16, came directly from Mr. Francis or non-Debtor entities.  I have attempted to trace the balance of the funds transferred to Boulevard

1  Management to show that other funds it transferred to Houston originated from the Debtors.  For

2  this, I consulted with the Debtors' employees and their former attorneys.  However, to date, I have

3  had limited success in finding additional amounts that the Debtors indirectly transferred to

4  Boulevard Management.

5        17.     The email attachments in Exhibit S show that the funds transferred to Boulevard

6  Management were used for a variety of Mr. Francis's personal activities and the balance,

7  $1,946,578.28, was paid to Houston to be held in his trust account.

8        18.     Exhibit 8 to the Settlement Agreement attached as Exhibit A hereto sets forth a list

9  of persons and entities who will not receive the benefit of limited subordination of the general

10  unsecured claims of Wynn Las Vegas, LLC and Mr. Wynn to $400,000 of general unsecured

11  claims.  I assisted in the negotiation of that list.  Based on my investigation of the Debtors, I

12  believe that persons and entities listed on Exhibit 8 are only (i) Mr. Francis, (ii) entities

13  beneficially owned or controlled by Mr. Francis, and (iii) law firms, lawyers, and other persons

14  that represented and/or assisted Mr. Francis in his efforts to resist Wynn LV's claims and

15  collection efforts.

16        I declare under penalty of perjury under the laws of the United States that the foregoing is

17  true and correct and that this was executed this 15th day of July 2013, at Los Angeles, California.

18

19  _____

20  Matthew C. Heyn

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

145125.5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

## **DECLARATION OF R. TODD NEILSON**

I, R. Todd Neilson, declare as follows:

1.      I am over the age of 18.  All statements made herein are based on my personal knowledge.  If called to testify as a witness in this matter, I could and would testify under oath to the truth of the statements set forth herein.

2.      I am the chapter 11 trustee appointed in the jointly administered bankruptcy cases of GGW Brands, LLC, GGW Direct, LLC, GGW Magazine, LLC and GGW Events, LLC.  In this declaration, I refer to GGW Brands, LLC, GGW Direct, LLC, GGW Magazine, LLC and GGW Events, LLC and GGW Marketing as the "Debtors."

3.      Since my appointment as chapter 11 Trustee, my professionals and I have investigated the financial affairs of the Debtors.

4.      The Debtors are in the business of producing and distributing adult entertainment through various media, including pay-per-view, internet, and DVDs.  They currently employ approximately 30 employees and sub-lease office space at 10940 Wilshire Blvd, Los Angeles, California from Perfect Science Labs, LLC, an entity that appears to be controlled by Joseph Francis.

5.      Stephen A. Wynn and Wynn Las Vegas, LLC have asserted that each of the Debtors is liable for over $31 million in judgments against Mr. Francis because each are his alter egos.  Since my appointment as Trustee, my professionals and I have investigated the financial affairs of the Debtors, including Mr. Francis's relationship to the Debtors and the judgments in favor of Mr. Wynn and Wynn Las Vegas, LLC against Mr. Francis.

6.      I reviewed the significant and persuasive evidence, including the evidence attached hereto, that Mr. Francis is the settlor and beneficiary of a trust that indirectly owns all the Debtors and that (until I was appointed) controlled the Debtors.  I also reviewed evidence that has persuaded me that Mr. Francis used his ownership and control of the Debtors to undermine the debt collection efforts of Mr. Wynn, Wynn Las Vegas, LLC and, perhaps, others.

7.      In order to avoid costly, out-of-state litigation, I have sought a compromise with Mr. Wynn and Wynn Las Vegas, LLC regarding their large claims asserted against the Debtors.

145125.5

1   Over the past several weeks, my professionals and I have had several meetings and

2   teleconferences with the representatives and attorneys of Mr. Wynn and Wynn Las Vegas, LLC to

3   resolve their claims and disputes.  We have exchanged information and engaged in several arm's-

4   length negotiations both as to the substance of the settlement agreement and as to its specific

5   terms.

6          8.      Following consultation with my attorneys employed in this case and consideration

7   of the evidence, I have determined that entering into the settlement agreement attached as

8   Exhibit A is in the best interests of each of the Debtors and their estates.

9          I declare under penalty of perjury under the laws of the United States that the foregoing is

10  true and correct and that this was executed this 12th day of July 2013, at

11  ~~DRAPER, UTAH~~ .

13  _____

14                              R. Todd Neilson

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

### DECLARATION OF MANDY ISAAC

I, Mandy Isaac, declare as follows:

1.    I am over the age of 18.  All statements made herein are based on my personal knowledge.  If called to testify as a witness in this matter, I could and would testify under oath to the truth of the statements set forth herein.

2.    I am the Controller for GGW Brands, LLC, GGW Direct, LLC, GGW Events, LLC, GGW Magazine, LLC, and GGW Marketing, LLC, which I collectively refer to in this declaration as the "Debtors."  As Controller for the Debtors, I am familiar with their books and records.

3.    Until on or about April 10, 2013 (the date that the Court appointed R. Todd Neilson as chapter 11 trustee), each of the employees of the Debtors directly or indirectly reported to Joseph Francis.  Until roughly April 20, 2013 (just prior to the Court issuing the TRO against him) Mr. Francis continued to issue directives to me and other employees as relates to the Debtors' business operations.

4.    Prior to the appointment of the Trustee, the Debtors paid expenses (including attorney's fees) on behalf of and for the benefit of Mr. Francis, and most often at his direction, in the normal course of business.  The majority of the expenses were paid by GGW Direct, LLC or GGW Events, LLC.  Attached hereto as Exhibit T is a non-exhaustive but demonstrative list compiled from the Debtors' accounting records, which reflects the expenses paid for or on behalf of Mr. Francis by the Debtors.  As reflected in the list  attached as Exhibit T, GGW Direct, LLC and GGW Events, LLC funded many of these expenses for Mr. Francis indirectly through distributions to affiliated non-Debtor entities that he appeared to control.  In addition, GGW Direct, LLC has paid American Express charges on behalf of or for the benefit of Mr. Francis that were largely incurred for what I believe to be Mr. Francis's home in Mexico.  Attached hereto as Exhibit U, are true and correct copies of invoices from American Express that reflect charges to GGW Direct, LLC's American Express credit card.

5.    I have seen Mr. Francis drive a Bentley automobile that is owned by GGW Events, LLC and for which GGW Events, LLC pays the insurance premiums.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

145125.5

6.      I have seen Mr. Francis drive a Bentley automobile that is owned by GGW Events, LLC and for which GGW Events, LLC pays the insurance premiums.

7.      Based on my understanding of the Debtors' accounting records, it appears that the Debtors were operated as a single enterprise. For example, although GGW Direct, LLC, GGW Events, LLC and GGW Magazine, LLC sold "Girls Gone Wild" products,   the accounting records do not reflect any payment to, or money owed to, GGW Marketing, LLC for use of the "Girls Gone Wild" trademarks. In addition, GGW Direct, LLC, as a matter of course, paid the attorneys that represented GGW Brands, LLC, GGW Magazine, LLC, GGW Events, LLC and GGW Marketing, LLC rarely recording an intercompany account receivable for these payments.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this was executed this 12th day of July 2013, at Los Angeles, California.

_____
Mandy Isaac

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067.

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT WITH WYNN LAS VEGAS, LLC AND STEPHEN A. WYNN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF R. TODD NEILSON, MATTHEW C. HEYN, AND MANDY ISAAC** was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 15, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

SEE ATTACHED SERVICE LIST

☒   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On July 15, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SEE ATTACHED SERVICE LIST

☒   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 15, 2013, I arranged for service on the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 1 business day after the document is filed.

TO BE SERVED VIA PERSONAL DELIVERY
Hon. Sandra R. Klein
United States Bankruptcy Court
255 E. Temple Street, Suite 1575
Los Angeles, CA 90012

TO BE SERVED VIA FEDERAL EXPRESS
Joseph R. Francis
1111 Bel Air Place
Los Angeles, CA 90077

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 15, 2013 | Jonathan M. Weiss | /s/ Jonathan M. Weiss |
| --- | --- | --- |
| Date | Printed Name | Signature |

<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):</u>

- Martin R Barash        mbarash@ktbslaw.com, lbogdanoff@ktbslaw.com

- Brendt C Butler        brendt.butler@gmail.com

- Richard K Diamond        rdiamond@dgdk.com, DanningGill@gmail.com

- Matthew Heyn        mheyn@ktbslaw.com

- Lance N Jurich        ljurich@loeb.com, kpresson@loeb.com

- Samuel M Kidder        skidder@ktbslaw.com

- Dare Law        dare.law@usdoj.gov, hatty.yip@usdoj.gov

- John F Medler        john@medlerlawfirm.com, jmedler@medlerroither.com

- Kelly L Morrison        kelly.l.morrison@usdoj.gov

- R. Todd Neilson (TR)        tneilson@brg-expert.com, sgreenan@brg-expert.com; tneilson@ecf.epiqsystems.com; ntroszak@brg-expert.com

- Malhar S Pagay        mpagay@pszjlaw.com, mpagay@pszjlaw.com

- Robert J Pfister        rpfister@ktbslaw.com

- Ronald N Richards        ron@ronaldrichards.com, nick@ronaldrichards.com

- Steven J Schwartz        sschwartz@dgdk.com, DanningGill@gmail.com

- David M Stern        dstern@ktbslaw.com

- Ronald D Tym        RTym@Tymfirm.com

- United States Trustee (LA)        ustpregion16.la.ecf@usdoj.gov

- Andy C Warshaw        awarshaw@lawcenter.com, mstevens@lawcenter.com

- Jonathan M Weiss        jweiss@ktbslaw.com

- Robert M Yaspan        court@yaspanlaw.com, tmenachian@yaspanlaw.com

<u>TO BE SERVED BY U.S. FIRST-CLASS MAIL:</u>

Path Media Holdings, LLC
Hunkins Plaza Main Street
P.O. Box 556
Charlestown
Saint Kitts and Nevis

Transcontinental Interweb Montreal
1603 Montarville Boulevard
Boucherville, QC J4B 5Y2

The Medler Law Firm, LLC
John F. Medler, Jr.
7700 Bonhomme Avenue, Ste 360
St. Louis, MO 63105

Debtors
GGW Brands, LLC, et al.
Attn: R. Todd Neilson, Trustee
10940 Wilshire Blvd., Ste 1000
Los Angeles, CA 90024

Ecoff Blut, LLP
300 S. Fourth Street, Suite 701
Las Vegas, NV 89101

R. Todd Neilson, Trustee
BRG, LLP
2049 Century Park East, Ste 2525
Los Angeles, CA 90067

U.S. Trustee
United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

Ecoff Blut, LLP
280 South Beverly Drive, #504
Beverly Hills, CA 90212

Cogent Communications
PO Box 791087
Baltimore, MD 21279

Robert M Yaspan
Law Offices of Robert M Yaspan
21700 Oxnard St Suite 1750
Woodland Hills, CA 91367

Etagz, Inc.
Attn: Joseph G. Pia and Tyson B.
Snow
Pia Anderson Dorius Reynard &
Moss
222 So. Main St. Suite 1830

Dorsey & Whitney, LLP
PO Box 1680
Minneapolis, MN 55480

Allen Michael Wade
c/o Law Office of Shane M. Mallett
Board of Trade Building
80 Twelfth Street, Suite 100
Wheeling, WV 26003

Mitchell J. Langberg
Brownstein Hyatt et al.
2029 Century Park East, Suite 2100
Los Angeles, CA 90067

Hochman, Salkin, Rettig, Toscher &
Perez
9150 Wilshire Boulevard, Ste 300
Beverly Hills, CA 90212

Brian J Rayment
c/o Dana L. Kurtz, Esq.
32 Blaine St.
Hinsdale, IL 60521

Mitchell J. Langberg
Brownstein Hyatt et al.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

Wargo Wrench LLP
999 Peachtree St. NE
26th Floor
Atlanta, GA 30309

Flying Crocodile, Inc.
2019 Third Avenue, #200
Seattle, WA 98121

Tamara Favazza
c/o Jerry P. Medler
Medler and Roither, PC
8000 Maryland Ave., Suite 640
Clayton, MO 63105

Workbridge Associates
PO Box 311
Brattleboro, VT 05302

Advanced Web Marketing Group
34 Borzotta Blvd.
Wayne, NJ 07470

Wynn Las Vegas, LLC
Attn: Kevin Tourek, Agent
3131 Las Vegas Blvd., So.
Las Vegas, NV 89109

Winston & Strawn, LLP
Attn: Peter J. Chassman
1111 Louisiana, 25th Floor
Houston, TX 77002

Computer 1
11135 Rush Street, Unit "A"
South El Monte, CA 91733

Chelsea Heath
Brian D. Hefelfinger, Esq.
121 N. Fir Street, Suite F
Ventura, CA 93001

David R. Houston
432 Court Street
Reno, NV 89501

GGW Brands, LLC
Brian D. Hefelfinger, Esq.
121 N. Fir St., Suite F
Ventura, CA 93001

West Legal
PO Box 6292
Carol Stream, IL 60197

Ronald Tym
7120 Carlson Circle, #263
Canoga Park, CA 91303-1814

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Los Angeles Division
255 E. Temple St.
Los Angeles, CA 90012-3332

Industrial Relations
Division of Labor Standards
Enforcement
6150 Van Nuys Blvd., Rm. 206
Van Nuys, CA 91401

Robison, Belaustegui, Sharp & Low
71 Washington Street
Reno, NV 89503

Dorsey & Whitney
Attn: Kimberly Neville, Esq.
Attn: Byron Benevuto, Esq.
136 S. Main St., Ste. 1000
Salt Lake City, UT 08101-1685

Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA 95812-2952

Argyle Online, LLC
7120 Carlson Circle, #263
Canoga Park, CA 91303-1814

Phil Anagnos
c/o Alireza Alivandivafi, Esq.
Morris Nazarian
1925 Century Park East, Suite 2120
Los Angeles, CA 90067

Aaron D. Aftergood
The Aftergood Law Firm
319 S. Robertson Blvd.
Beverly Hills, California  90211

Berry and Maxson LLC
Attn: Jessica W. Kenney, Esq.
Attn: Kelly Field Farrell, Esq.
Attn: Robert P. Berry, Esq.
16150 Main Circle Dr., Ste. 120
St. Louis, MO 63017

Zillah A. Framton Bankr. Admin
Div of Revenue Bankr Services
Carvel State Office Bldg, 8th Floor
Wilmington, DE 19801