# EXHIBIT V

Filed 7/11/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TOHO-TOWA CO., LTD., | B242095 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS131357) |
| v. | |
| MORGAN CREEK PRODUCTIONS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Debre Katz Weintraub, Judge.  Affirmed.

Glaser Weil Fink Jacobs Howard Avchen & Shapiro, Patricia L. Glaser, Joel N. Klevens for Defendant and Appellant.

Greenberg Glusker Fields Claman & Machtinger, Charles N. Shephard for Plaintiff and Respondent.

_____

1

Morgan Creek Productions, Inc. ("MCP"), a Delaware corporation with its principal place of business in Los Angeles, appeals the trial court's order adding it to a judgment for more than $5.7 million which Toho-Towa Co., Ltd., a Japanese company ("Toho-Towa") was awarded against two MCP-affiliated companies, Morgan Creek International B.V., a Netherlands company ("B.V.") and Morgan Creek International Ltd., a Bermuda corporation ("Ltd."). MCP maintains that the trial court erred in ruling that the three business entities constituted a single business enterprise for purposes of imposing alter ego liability on MCP for the debts of B.V. and Ltd. We conclude that the ruling is supported by substantial evidence. MCP also contends that the trial court abused its discretion in failing to set aside its ruling pursuant to Code of Civil Procedure,[1] section 473, subdivision (b). We see no abuse of discretion. Consequently, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2005, Toho-Towa negotiated with MCP to acquire Japanese distribution rights to the MCP-produced motion picture *The Good Shepherd* (the "Picture"). After the parties had reached agreement as to the terms of the distribution deal, Howard Kaplan, MCP's then general counsel, told Toho-Towa that B.V., rather than MCP, would grant Toho-Towa the distribution rights under the agreement, and that a third entity, Ltd., would guarantee B.V.'s contractual obligations to Toho-Towa. Mr. Kaplan indicated to Toho-Towa that this was the structure MCP used for its international distribution deals. Mr. Kaplan assured Toho-Towa that B.V. and Ltd. would have sufficient assets to meet any financial obligations Toho-Towa might be owed with respect to the Picture. As a consequence of these assurances, Toho-Towa entered into a written agreement with B.V. to distribute the Picture in Japan. The obligations of B.V. under the agreement were guaranteed by Ltd.

---

[1] Further statutory references are to the Code of Civil Procedure.

[2] These facts are taken from Toho-Towa's motion to add MCP as a judgment debtor and the supporting documents filed therewith.

2

Pursuant to the terms of the distribution agreement, by the end of October 2008, B.V. owed Toho-Towa approximately $4.5 million in connection with expenses it had advanced to distribute the Picture. On October 31, 2008, Toho-Towa submitted its invoice to B.V. requesting payment of this amount. On November 13, 2008, Toho-Towa's invoice to B.V. was forwarded to MCP's chief financial officer, Gary Stutman. On December 3, 2008, Mr. Stutman advised Toho-Towa by email that he was "speaking with our owner, Mr. Jim Robinson, re the payment date." The invoice was never paid.

On April 22, 2009, Toho-Towa initiated a JAMS arbitration against B.V. and Ltd., based on B.V.'s failure to pay the reimbursable costs represented in the October 31, 2008 invoice. MCP's in-house counsel, Don Hardison, retained attorney Alan Gutman to represent B.V. and Ltd. in the arbitration. Mr. Hardison reviewed the pleadings, consulted with Mr. Gutman on strategy, reviewed and approved Mr. Gutman's bills, and forwarded them to MCP's chief financial officer for payment.

The arbitrator entered a final arbitration award in favor of Toho-Towa against B.V. and Ltd. in the amount of $5,233,386. A three-judge JAMS appellate panel unanimously affirmed the arbitration award. On Toho-Towa's motion, the award was confirmed as a judgment on June 23, 2011. With interest and attorneys' fees, the amount of the judgment was $5,741,536.

Neither B.V. nor Ltd. satisfied the judgment entered against them.

In the fall of 2011, Toho-Towa took examinations under oath, pursuant to section 708.110 et seq., of various MCP representatives, including MCP's former chief financial officer Gary Stutman, its vice president Brian Robinson, and its general counsel Don Hardison, to ascertain the relationship between the three Morgan Creek entities. Through these examinations, Toho-Towa learned that the three Morgan Creek entities were owned by a single individual, James Robinson; that the work of B.V. and Ltd. was performed by employees of MCP; and that the companies were operated in such a way that no money flowed to the foreign Morgan Creek entities. Based on this information, Toho-Towa moved, pursuant to section 187, to add MCP to its judgment against B.V. and Ltd., on the theory that MCP was the alter ego of the other two entities ("the section 187 motion").

3

Toho-Towa's motion, filed on December 30, 2011, was supported by a memorandum of points and authorities, the declarations of its California counsel Charles Shephard, its Dutch counsel Frederic Verhoeven, its president Hiroyasu Matsuoka, and its employee Yusuke Horiuchi. These declarations form the basis of the evidence presented in support of the motion, the contents of which are discussed below.

MCP filed its opposition to the motion, together with its memorandum of points and authorities, objections to the declarations of Messrs. Shephard, Verhoeven, Matsuoka and Horiuchi, and a request that the court take judicial notice of the fact that MCP is a Delaware corporation, on January 20, 2012. MCP submitted no declarations to counter the evidence provided by Toho-Towa.

On February 3, 2012, the court began the hearing on the motion by announcing its tentative decision to add MCP to the judgment. The court found the following factors relevant to its conclusion that MCP was the alter ego of B.V. and Ltd., based on the declarations Toho-Towa submitted with its motion:[3]

(1) The entities were all owned by the same person, James Robinson.

(2) Mr. Robinson was the only person with authority to resolve the dispute with Toho-Towa.

(3) Ltd. had no employees and no bank account.

(4) B.V.'s financial arrangements were structured so that it never received any money. Rather, all of B.V.'s licensing income went directly to Ltd.'s lender.

(5) Employees of MCP negotiated the foreign licensing deals on behalf of the other Morgan Creek entities.

(6) Brian Robinson, the owner's son, sold television rights for the international film library owned by Ltd., even though he was not employed by Ltd. or B.V.

(7) Don Hardison, MCP's general counsel, handled the legal affairs of Ltd. and B.V., including drafting contracts and providing legal consultation, though he was not employed by either of these companies.

---

[3] Of course, all of these facts were undisputed, as MCP submitted no evidence to controvert Toho-Towa's evidence.

4

(8) Gary Stutman, MCP's chief financial officer, who was not employed by Ltd., provided financial services to Ltd. at least once a month, while MCP's in-house accountants routinely prepared Ltd.'s financial statements.

(9) MCP had control over the underlying arbitration, by selecting counsel, receiving legal bills, reviewing pleadings, consulting on strategy decisions, and designating one of its own officers as the person most knowledgeable as to why B.V. and Ltd. did not pay the money they owed to Toho-Towa.

In response to the court's tentative decision, MCP's counsel complained that Toho-Towa did not raise the "single enterprise" theory as a basis for imposing liability on MCP for the debts of B.V. and Ltd. until its reply papers. Consequently, the trial court granted MCP the opportunity to address the sole issue of the single enterprise theory as a basis for alter ego liability. The hearing on the section 187 motion was continued until March 16, 2012.

MCP filed its supplemental brief addressing the single enterprise form of alter ego liability on February 15, 2012. Again, no evidence was submitted in support of MCP's position.

On March 13, 2012, Mr. Gutman substituted out as MCP's counsel, and its current counsel, Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP, substituted in. The next day, MCP applied ex parte to continue the hearing on Toho-Towa's motion to add a judgment debtor, and to introduce additional evidence. The declaration of Charles L. Bauermann, MCP's outside accountant, was submitted in support of the ex parte application. Among the matters to which Mr. Bauermann attested were the capitalization, assets, and financial status of Ltd. at the time the distribution agreement was executed; that the three companies had separate board meetings, different directors and officers, performed different businesses and filed separate tax forms, and observed the corporate formalities; and that the entities did not commingle funds. The trial court denied the ex parte application.

At the continued hearing on the section 187 motion, held on March 16, 2012, the court summarized the procedural history of this matter, including the ex parte application,

5

and indicated that it had "considered all the papers and supplemental briefs." The court quoted from Toho-Towa's original papers filed with its motion: "'The evidence is overwhelming that the three Morgan Creek entities are the alter egos of each other and function as a single, unified enterprise under the ownership and control of a single individual, James G. Robinson.'" The court continued, "Also in the papers on page 7, and I quote, 'Here, the evidence is overwhelming that the various Morgan Creek entities were part of a single enterprise.' Thus Morgan Creek's claim is not persuasive that it did not know that Toho-Towa's alter ego claim was based on a single enterprise theory." In short, the court concluded that the supplemental briefing was unwarranted, and did not cause the court to change its tentative decision.

From the evidence before it, the trial court concluded that B.V. and Ltd. were corporate shells which existed solely for contracting and asset-holding purposes to shield MCP from liability. Consequently, the court made final "without change" its tentative ruling of February 3 granting Toho-Towa's motion to add MCP to its judgment against B.V. and Ltd.

After the trial court granted the section 187 motion, MCP's counsel asked for clarification regarding the evidence the court considered in coming to its decision: "Do I correctly understand from the court's ruling that the court has declined to review the declaration of Mr. Bauermann that was filed with the ex parte application?" The court responded, "The court's reviewed everything, counsel." The court then reminded counsel that the hearing was not continued in order to allow MCP to reargue the motion, but solely for the purpose of addressing the supplemental matter of the single enterprise theory. MCP's counsel inquired, "And by the 'supplemental matter,' you mean Mr. Bauermann's declaration," to which the court replied: "No. The supplemental matter was the hearing that the court allowed on the single enterprise because counsel had indicated, and the court allowed supplemental briefing with respect to the issue dealing with the single enterprise."

On April 16, 2012, MCP filed its motion to be relieved from judgment pursuant to section 473, subdivision (b) ("the section 473 motion") on the grounds of its prior

6

counsel's mistake of law and excusable neglect in failing to introduce evidence in opposition to Toho-Towa's motion to add MCP as a judgment debtor. In support of this motion, MCP submitted the declarations of Messrs. Bauermann, Robinson, and Gutman.

The trial court denied the motion. It determined that the mandatory provisions of section 473, subdivision (b) did not apply, as there was no default or default judgment entered against MCP, and the discretionary provisions of the statute did not apply, since "counsel's failure to discharge routine professional duties is not excusable, nor is counsel's failure to properly prepare for the hearing the conduct of a reasonably prudent person."

MCP timely appealed both the order adding it as a judgment debtor, and the order denying its section 473 motion.

DISCUSSION

Preliminarily, we must resolve the parties' disagreement about what evidence is properly before us on this appeal. MCP relies on the declarations of Mr. Bauermann, submitted with its ex parte application, and Messrs. Bauermann and Robinson, submitted in support of the section 473 motion, in its "Statement of Facts" in its opening brief. Toho-Towa contends that, while this evidence was filed in the trial court and considered by that court in ruling on the ex parte application and the section 473 motion, because the trial court denied MCP's request to present additional evidence, and the section 473 motion was not heard until after MCP was added to the judgment, MCP may rely on the evidence contained in those declarations only in connection with the appeal of the rulings for which they were submitted. And, according to Toho-Towa, because MCP does not appeal the ruling on the ex parte application, the contents of the Bauermann declaration submitted in support of that application provides no evidence which MCP may use in its arguments on appeal. We agree.

The trial court unequivocally denied MCP's request to present additional evidence in connection with Toho-Towa's section 187 motion. Thus, Mr. Bauermann's declaration was not before the trial court and could not provide a basis for that court's ruling. MCP

7

nevertheless argues that, because the Bauermann declaration was filed with the court and is included in the Appellant's Appendix, and the court stated that it had read and considered all papers filed in support of MCP's application, it was part of the record below, and may properly be cited by MCP. We reject this argument.

When a trial court rules that a party may not present certain evidence, the party may, of course, cite the evidence to challenge that ruling. In the absence of a challenge to the ruling, however, it should go without saying that the excluded evidence, though part of the "record on appeal" (Cal. Rules of Court, rule 8.832) may not be used by this court to reverse the order of the trial court. In short, MCP may not rely on the contents of a declaration the trial court specifically ruled it would not permit MCP to introduce, without first successfully arguing that the court erred in denying the ex parte application by which MCP sought to introduce the declaration into evidence.

MCP's argument with respect to the Bauermann and Robinson declarations submitted in support of its section 473 motion is similarly unavailing. MCP contends that it is entitled to cite to the section 473 declarations not only in connection with the order denying its section 473 motion but also the order adding it as a judgment debtor under section 187 because, as a matter of hornbook law, "'reviewing courts will now, in determining the existence of substantial evidence, *look to the entire record of the appeal*.' *Bowers v. Bernard[s],* 150 Cal.App.3d 870, 873 (1984) (italics in original); *see also In re Marriage of Schmir,* 134 Cal.App.4th 43, 50, n.11 (2005) ('In determining the sufficiency of the evidence an appellate court cannot confine itself to isolated bits of evidence but must view the whole record.')" MCP misreads the hornbook.

Perhaps the first rule of appellate practice is that a ruling of the trial court may be reversed on appeal only if the trial court erred. A trial court's failure to consider evidence not before it (such as Mr. Robinson's May 22, 2012 declaration when the court issued its March 16, 2012 order) is not, and cannot be, error.

8

1. *Alter ego liability*

The authority of a court to amend a judgment to add a nonparty alter ego as a judgment debtor has long been recognized. (See *Mirabito v. San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 60.) "The ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." (*Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1421, original italics.) MCP maintains that the record is devoid of evidence to support these required findings.

We begin with the alter ego doctrine. "'Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors. Under the alter ego doctrine, however, where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation. . . .' [Citation.]" (*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 892.) When a court does so, it is said to have "pierced the corporate veil." "Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution." (*Las Palmas Associates v. Las Palmas Center Associates* (1992) 235 Cal.App.3d 1220, 1249 (hereafter "*Las Palmas*").) Indeed, "the corporate form will be disregarded only in narrowly defined circumstances." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301; accord *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737 ["Corporate entities are presumed to have a separate existence, and the corporate form will be disregarded only when the ends of justice require this result."], disagreed with on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524.)

9

"'Usually, a disregard of the corporate entity is sought in order to fasten liability upon individual stockholders. . . .'" (*Las Palmas, supra,* 235 Cal.App.3d at p. 1249, quoting *McLoughlin v. L. Bloom Sons Co., Inc.* (1962) 206 Cal.App.2d 848, 851.) One such scenario might be where an individual incorporated her business, thereby immunizing herself from the business's debts, but failed to treat the corporation as a separate entity and instead continued to operate the business as a sole proprietorship. Such liability will be found to exist where there is such a unity of interest between a corporation and its shareholder that separateness has ceased, yielding an inequitable result. (9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, §§ 9-15, pp. 785-794 (Witkin); *Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.* (1981) 116 Cal.App.3d 111, 119.) Undercapitalization of the business, commingling of corporate and personal funds, and failure to observe the corporate formalities are examples of business practices that would leave individual shareholders vulnerable to a finding of alter ego liability. (See generally, Witkin, *supra*.)

A court may also disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter "'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation. '" (*Las Palmas*, *supra*, 235 Cal.App.3d at p. 1249, quoting *McLoughlin v. L. Bloom Sons Co., Inc.*, *supra*, 206 Cal.App.2d at p. 851.) Thus, where there is "such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal" (1 *Fletcher Cyc. Corp.* § 43), the affiliated corporations may be deemed to be a single business enterprise, and the corporate veil pierced. "Under the 'single business enterprise' doctrine, separate corporations may operate with integrated resources in pursuit of a single business purpose." (*Ibid*.) "The 'single-business-enterprise' theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose." (*Ibid*; see *Leek v. Cooper* (2011)

194 Cal.App.4th 399, 411; *Tran v. Farmers Group, Inc.* (2002) 104 Cal.App.4th 1202; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 512-513.)

In California, common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise.[4] In both cases, "[t]he law as to whether courts will pierce the corporate veil is easy to state but difficult to apply." (*Talbot v. Fresno-Pacific Corp.* (1960) 181 Cal.App.2d 425, 432.) Because it is founded on equitable principles, application of the alter ego "is not made to depend upon prior decisions involving factual situations which appear to be similar. . . . 'It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case.'" (*McLoughlin v. L. Bloom Sons Co., Inc.*, *supra*, 206 Cal.App.2d at p. 853; see *Stark v. Coker* (1942) 20 Cal.2d 839, 846; *Jack Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1033.) Whether the evidence has established that the corporate veil should be ignored is primarily a question of fact which should not be disturbed when supported by substantial evidence. (*Jack*

---

[4] There has been some criticism of and confusion concerning the relationship between the single business enterprise and alter ego. (See Presser, *The Bogalusa Explosion, "Single Business Enterprise," "Alter-Ego," and Other Errors: Academics, Economics, Democracy, and Shareholder Limited Liability: Back Towards a Unitary "Abuse" Theory of Piercing the Corporate Veil* (2006) 100 Nw. U. L. Rev. 405.) The relationship has been described as "muddled." (West and Bodauer, *Annual Survey of Texas Law* (2006) 59 SMU L. Rev. 1143, 1145.) One authority has warned that the "'integrated enterprise' and 'agency' tests may offer some opportunity to avoid the strict 'injustice' requirement of the standard 'alter ego' test for piercing the corporate veil.… [G]iven the possibility for manipulation of these doctrines, this is an area that will have to be closely watched by the friends of limited liability in California." (Stephen B. Presser, *Piercing the Corporate Veil* at § 2:5 (2013).) But it is acknowledged that California has accepted the single enterprise theory, including the abuse or injustice requirement. The disregard of the corporate form is employed to prevent abuse. (*Ibid*; see also comments in Witkin, *supra,* § 9, p. 786; Presser, *supra,* 100 Nw. L. Rev. at p. 435.)

*Farenbaugh & Son v. Belmont Construction, Inc., supra,* at p. 1032.)" (*Las Palmas, supra,* 235 Cal.App.3d at p. 1248.)

"Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other. [Citation.] 'No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied. [Citation.]' [Citation.]" (*Troyk v. Farmers Group, Inc*. (2009) 171 Cal.App.4th 1305, 1341-1342; accord *Wehlage v. EmPress Healthcare, Inc.* (N.D. Cal. 2011) 791 F.Supp.2d 774, 782.)

Appellant maintains that "almost none" of the factors relevant to the single enterprise theory of alter ego analysis are present in this case. There is substantial evidence for the trial court's finding that MCP, B.V. and Ltd. were part of a single business enterprise: The entities were all owned by the same person, who was the sole decision maker for all of the Morgan Creek entities; the three entities exploited the same assets; the "work" of B.V. and Ltd. was performed by the employees of MCP, so that Brian Robinson negotiated distribution deals on behalf of, Don Hardison provided legal services to, and Gary Stutman provided financial services, to B.V. and Ltd., though not employed by them; and although B.V. entered into contracts which required that monetary payments be made to them, no money was remitted, but rather was transferred directly to Ltd.'s lender. This evidence supports the trial court's conclusion that the Morgan Creek entities, though formed as separate corporations, were operated with integrated resources in pursuit of a single business purpose, and that MCP so dominated the finances, policies and practices of B.V. and Ltd. that the latter had no separate "mind, will or existence" of their own, but were merely conduits through which MCP conducted its business.

There is also substantial evidence for the court's conclusion that it would be inequitable to uphold B.V.'s separate existence under the circumstances of this case. Toho-Towa negotiated the distribution rights to the Picture with MCP. When that

12

negotiation was concluded, MCP told Toho-Towa that the contract would actually be with B.V., not MCP, because this was how MCP conducted its distribution business. MCP assured Toho-Towa that there would be sufficient assets to pay Toho-Towa any monies due under the agreement. Toho-Towa was not told and did not know that B.V.'s financial operations were structured by MCP in such a way that it never received any money from its licensees, and thus would not have funds to meet its payment obligations under the agreement. In sum, it would be inequitable to permit MCP, the alter ego of B.V., to shift liability to B.V. after ensuring that B.V. would have no funds to pay its debts.[5] These factors combined fulfill the requirements for the use of the single enterprise doctrine to disregard the corporate form in this case.

Finally, MCP maintains that it did not control the underlying arbitration in this matter, and thus cannot be added as a judgment debtor to Toho-Towa's judgment against B.V. and Ltd. Specifically, MCP relies on *NEC Electronics, Inc. v. Hurt* (1989) 208 Cal.App.3d 772 and *Katzir's Floor & Home Design, Inc. v. M-MLS.com* (9th Cir. 2004) 394 F.3d 1143 to argue that, where the original defendants (here B.V. and Ltd.) mounted a lackluster defense and failed to contest the lawsuit effectively, due process prohibits adding the alter ego to the judgment.

The cited cases do not support MCP's position. In *NEC Electronics Inc. v. Hurt*, *supra*, 208 Cal.App.3d 772, after answering the complaint, the defendant "let the matter proceed uncontested." (*Id.* at p. 780.) The defendant "did not appear at trial and did not make any attempt to defend the NEC lawsuit." (*Ibid*.) In effect, the matter proceeded as if it were a default. Similarly, in *Katzir's Floor & Home Design, Inc. v. M-MLS.com,*

---

[5] In this regard, we note that "'Application of the alter ego doctrine does not depend upon pleading or proof of fraud.'" (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1074, quoting *Engineering etc. Corp. v. Longridge* (1957) 153 Cal.App.2d 404, 415.) It is enough that "adherence to the fiction of the separate existence of the corporation would promote injustice or bring about inequitable results." (*Misik v. D'Arco, supra,* at p. 1074, internal citations omitted.)

13

*supra,* 394 F.3d 1143, the matter did proceed as a default, with no defense being provided in the underlying case. (*Id.* at p. 1147.)

Such was not the situation here. Toho-Towa's arbitration claims were contested: B.V. and Ltd. filed a responsive pleading, participated in discovery, opposed summary judgment, and pursued a JAMS appeal. Not only was a defense provided, but it was provided courtesy of MCP, which retained counsel, consulted with counsel on strategy, supervised the arbitration, and paid the legal fees. These facts amount to substantial evidence that MCP controlled the underlying litigation. As Toho-Towa observes, quoting from a similar case: "There was no showing below, and there is not the slightest suggestion in the briefs of appellants, that anyone, other than [the alter ego], had control of the litigation. Who else had authority to employ attorneys and provide the expense? Who else was interested in the fate of the corporation? If not [the alter ego], who else? Appellants do not say. Manifestly, [the alter ego] had control of the defense of the action by the [primary defendant]." (*Schoenberg v. Romike Properties* (1967) 251 Cal.App.2d 154, 168.)

In sum, substantial evidence supports the trial court's order adding MCP to Toho-Towa's judgment against B.V. and Ltd.

    2.    *Denial of motion to set aside the judgment*

MCP contends that the trial court abused its discretion in denying its section 473 motion.

Section 473, subdivision (b) provides in pertinent part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." The court has "wide discretion" to grant relief under this statute. (*Berman v. Klassman* (1971) 17 Cal.App.3d 900, 909.) Indeed, "[A] trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980.)

14

MCP based its section 473 motion on two separate grounds: Its attorney's mistake of law, and its attorney's excusable neglect.

With respect to the former ground for relief: "It is well settled that relief may be granted for mistake of law by a party's attorney. (See 8 Witkin, *supra*, § 150, p. 551.) An honest mistake of law is a valid ground for relief where a problem is complex and debatable. (*A & S Air Conditioning v. John J. Moore Co.* [(1960)] 184 Cal.App.2d [617,] 620.) The issue of which mistake of law constitutes excusable neglect presents a question of fact. The determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law. (*Fidelity Fed. Sav. & Loan Assn. v. Long* (1959) 175 Cal.App.2d 149, 154.)" (*Brochtrup v. Intep* (1987) 190 Cal.App.3d 323, 329.)

MCP described the mistake of law as follows: "MCP's prior counsel, Alan Gutman, found no authority that expressly stated that MCP's Opposition to Petitioner's Motion to add MCP as a judgment debtor as an alter ego of [Ltd.] and [B.V.] required admission of evidence by MCP.[6] Mr. Gutman's mistaken understanding of this complex and debatable issue of law . . . caused Mr. Gutman to neglect to investigate facts to support MCP's Opposition. . . . [¶] Instead, Mr. Gutman incorrectly presumed that, because Petitioner bore the burden of proving alter ego liability, MCP did not need to introduce evidence of its own to rebut Petitioner's evidence. Mr. Gutman also mistakenly failed to appreciate that MCP's failure to introduce evidence of its own could lead the Court to infer that no helpful evidence existed. As a result of Mr. Gutman's good faith belief that MCP did not bear the burden of rebutting Petitioner's evidence, MCP did not introduce evidence in support of its Opposition."[7] In sum, the motion argued that MCP's counsel did not know that the trial court would decide the case based on the evidence presented to it. This was not a winning argument, given the fact that Mr. Gutman had

---

[6] It is not surprising that Mr. Gutman found no such authority, as there is no such requirement.

[7] Again, Mr. Gutman's "good faith belief" was correct; MCP did not bear the burden of rebutting Toho-Towa's evidence *if*, as Mr. Gutman concluded, that evidence did not support a finding that MCP was the alter ego of B.V. and Ltd.

been practicing law for 28 years, had experience representing entertainment clients, including MCP, in litigation, had conducted over 50 jury trials, and had obtained several multi-million dollar verdicts and settlements. The trial court did not abuse its discretion in concluding that there was no mistake of law subject to relief pursuant to section 473, subdivision (b).

Alternatively, MCP argued that its failure to introduce "compelling evidence to show that it is not the alter ego of [Ltd.] or [B.V.], . . . [e]vidence, which was available to MCP, but which Mr. Gutman mistakenly failed to obtain and offer into evidence . . ." constituted excusable neglect under section 473, subdivision (b).

"'A party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief.' (*Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1399.) In determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent *person* under the same or similar circumstances" might have made the same error.'" (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276, italics added.) In other words, the discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made.' (*Garcia* [*v. Hejmadi* (1997)] 58 Cal.App.4th [674,] 682.) 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.' (*Ibid.*)." (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258; see also, *Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at p. 683.) The failure to introduce readily available, compelling evidence which supports the client's position that it is not the alter ego of a sister corporation with a $5.7 million outstanding judgment is not a mistake that a reasonably prudent person in the same circumstances might have made but rather conduct falling below the professional

16

standard of care.  Consequently, the trial court acted within its discretion in denying MCP's section 473 motion based on its attorney's excusable neglect.

DISPOSITION

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**


O'NEILL, J.[*]

We concur:


MOSK, Acting P. J.


KRIEGLER, J.

---

[*] Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17