# EXHIBIT B

1    Michael D. Kolodzi, Esq. (SBN 255772)
     The Kolodzi Law Firm
2    5981 Topanga Canyon Blvd.
     Woodland Hills, CA  91367
3    Telephone:     (818) 287-7173
     Facsimile: (818) 571-6094
4

5    Attorney for GGW GLOBAL BRANDS, INC.

6              UNITED STATES BANKRUPTCY COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8                 LOS ANGELES DIVISION

| 9  | In re | Jointly Administered |
|----|-------|----------------------|
|    |       | Under Case No. 2:13-bk-15130-SK |
| 10 | GGW BRANDS, LLC, | |
|    | GGW DIRECT, LLC, | Chapter 11 |
| 11 | GGW EVENTS, LLC, | |
|    | GGW MAGAZINE, LLC, and | **OPPOSITION TO MOTION FOR** |
| 12 | GGW MARKETING, LLC | **APPROVAL OF SETTLEMENT WITH** |
|    |       | **WYNN LAS VEGAS, LLC AND STEPHEN** |
| 13 | Debtors. | **WYNN** |

This pleading affects:
All Debtors                      ☒
GGW Brands, LLC                  ☐
GGW Direct, LLC                  ☐
GGW Events, LLC                  ☐
GGW Magazine, LLC                ☐
GGW Marketing, LLC               ☐

Judge: Hon. Sandra R. Klein
Ctrm:  1575
Date: August 7, 2013
Time: 9:30 a.m.

**TO THE HONORABLE SANDRA KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, R. TODD NEILSON, CREDITORS, PARTIES IN INTEREST AND ALL OTHERS ENTITLED TO NOTICE:**

GGW GLOBAL BRANDS, INC., sole member of GGW Marketing, LLC, hereby files its Opposition to the Chapter 11 Trustee's Motion for Approval of Settlement with Wynn Las Vegas, LLC and Stephen Wynn as follows:

# TABLE OF CONTENTS

## Table of Contents

I.     INTRODUCTION ................................................................................ 1

II.    REVERSE PIERCING; CHOICE OF LAW ...................................... 1

    A.     Background .............................................................................. 1

    B.     Proper Conflict of Laws Analysis ........................................... 2

        1.     Diversity Jurisdiction Approach ................................... 3

        2.     Uniform Federal Common Law Approach ..................... 4

        3.     Hybrid Approach ........................................................... 7

        4.     Conclusion of Analysis of Conflicts of Laws Approaches ......................... 8

    C.     The Conflict of Laws Analysis Was Never Raised in the Nevada State Court Injunction Proceedings. .................................................. 8

III.   ALLEGED FACTS REGARDING WHETHER DEBTORS ARE ALTER EGOS OF FRANCIS HAVE NO IMPACT ON INVALIDITY OF WYNN'S CLAIMS. .................................................................................. 9

IV.    NOMINEE THEORY .................................................................... 10

V.     ECONOMIC ANALYSIS OF PROPOSED SETTLEMENT ......... 10

VI.    ANALYZING THE SETTLEMENT USING NINTH CIRCUIT FACTORS ................. 12

    A.     Probability of Success of the Litigation .............................. 13

    B.     The Difficulties, if Any, to be Encountered in the Matter of Collection ............. 13

    C.     The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessary to Attending It .......................... 13

    D.     The Paramount Interest of the Creditors and a Proper Deference to Their Reasonable Views in the Premises .................................. 13

    E.     Question of Whether the Proposed Settlement was Negotiated in Good Faith .................................................................. 14

VII.   STANDING OF GGW GLOBAL BRANDS, INC. ........................ 14

VIII.  DEBTORS AND WYNN ARE NOT THE ONLY PARTIES TO NEVADA ALTER EGO LITIGATION AND THEREFORE THEY DO NOT HAVE POWER TO AGREE TO SPLIT MONEY AT ISSUE .......................... 15

IX.    CONCLUSION .............................................................................. 15

1

## TABLE OF AUTHORITIES

2

### Statutes

3

Cal. Corp. Code §17101................................................................................................. 2

4

Delaware Code, Title 6, Chapter 18 .............................................................................. 5

### Rules

5

Delaware Sup. Ct Rule Rule 14(b)(vi)(B)(2)................................................................. 6

6

Delaware Sup. Ct. Rule 17(a) Commentary .................................................................. 6

7

### Cases

8

Atherton v. FDIC, 519 U.S. 213, 218, 117 S.Ct. 666, 136 L.Ed.656 (1997)................................ 8

9

Bianco v. Erkins (In re Gaston & Snow), 243 F.3d 599, 606...................................................... 7, 8

10

CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 91, 107 S.Ct. 1637, 95
    L.Ed.2d 67 (1987)........................................................................................................ 5

11

Facchina v. Malley, 2006 WL 2328228, *3 (Del. Ch.., August 1, 2006)...................................... 6

12

Horwitz v. Southwest Forest Industries, Inc., 612 F.Supp. 179, 182-183 (D.
    Nevada 1985)................................................................................................................ 3

13

14

In re Alt Hotel, 479 B.R. 781 (Bankr. N.D, Ill.  2012)......................................................... 4, 6, 9

15

In re Eagle Enters, Inc., 223 B.R. 290, 292 (Bankr. E.D. Pa. 1998) ........................................... 3

16

In re Friedlander Capital Management Corp., 411 B.R. 434 (Bankr. S.D. Florida
    2009)(".......................................................................................................................... 3

17

In re Segre's Iron Works, Inc. 258 B.R. 547, 551 (Bankr. D. Conn. 2001) ................................. 4

18

19

Lindsay v. Beneficial Reinsurance Co (In re Lindsay), 59 F.3d 942, 948 (9th Cir.
    1995). ........................................................................................................................... 4

20

Marine Midland Bank v. Portnoy (In re Portnoy), 201 B.R. 685, 697 (Bankr. S.D.
    N.Y. 1996) ................................................................................................................... 3

21

Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir.  1986)....................... 12

22

Olympic Capital Corp. v. Newman, 276 F.Supp. 646, 658 (C.D.Cal. 1967) .............................. 9

23

Postal Instant Press, Inc. v. Kaswa Corp., 162 Cal.App.4th 1510, 1518 (CA App
    Ct., 2008) ............................................................................................................. 1, 2, 5

24

25

Vanston Bondholders Protect. Comm. V. Green, 329 U.S. 156, 162, 67 S.Ct. 237,
    91 L.ed. 162 (1946)). .................................................................................................. 4

26

VantagePoint Venture Partners 1996 v. Examen, 871 A.2d 1108 (Del. 2005), ...................... 5, 6

27

28

**MEMORANDUM IN OPPOSITION TO MOTION FOR APPROVAL OF SETTLEMENT**

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

R. Todd Neilson, as Chapter 11 Trustee for certain Debtors, and supposedly also on behalf of GGW Marketing, LLC, asks this court to approve a settlement that allows approximately $28 million in claims that are, **as a matter of law**, invalid in exchange for the Chapter 11 Trustee receiving $800,000 of cash that the Chapter 11 Trustee is already entitled to receive.

The Memorandum in support of the Neilson's Motion evidences a misunderstanding by counsel to the Chapter 11 Trustee of which law would apply to the Wynn claims and this has given rise to a gross miscalculation by such counsel and the Chapter 11 Trustee of the chances and difficulty of prevailing against such claims.

Given the likelihood that such claims, if contested, would be found to be invalid, the size of the proposed allowed claims in comparison to the value of the estates, and the minimal cost of any litigation contesting the claims, the proposed settlement is not reasonable and should not be approved by this court.

## II.    REVERSE PIERCING; CHOICE OF LAW

### A.    Background

As stated in the Motion, Wynn Las Vegas, LLC and Stephen Wynn[1] have judgments against Joseph Francis, an individual, totaling more than $31 million in connection with an unpaid gambling debt judgment in Nevada, and defamation judgments in Nevada and California.

Debtors are all limited liability companies formed under the laws of the State of Delaware. In attempting to make the estates of the Debtors liable for the personal obligations of Mr. Francis, Wynn is seeking "outside reverse piercing" of the veil of protection that insulates limited liability companies from liability for the personal obligations of members, managers and officers.

As explained by the California appellate court in *Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal.App.4th 1510, 1518 (Ct. App. 2008):

---

[1] For ease of reference, Wynn Las Vegas, LLC and Stephen Wynn are herein collectively referred to as "Wynn."

> "A variant of the reverse piercing theory, sometimes called 'outside' or 'third party' reverse piercing, occurs when a third party outsider seeks to reach corporate assets to satisfy claims against an individual shareholder."

The principles governing when, or whether, veil piercing occurs apply equally to corporations, limited liability companies and limited liability partnerships. *See*, e.g., Cal. Corp. Code §17101; *See, also,* Fredric J. Bendremer, "Delaware LLCs and Corporate Veil Piercing; Limited Liability has Its Limitations", 10 Fordham Journal of Corporate & Financial Law, Article 4 (2005)

Many states refuse to allow **reverse** veil piercing, including California. *Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal.App.4th 1510, 1518 (CA App Ct., 2008) ("In this case of first impression in California, we analyze authorities nationwide and hold a third party creditor may not pierce the corporate veil to reach corporate assets to satisfy personal liability.")

In his Motion, Mr. Neilson's counsel comes to conclusions as to the supposed viability of Wynn's reverse piercing claims against the Debtors through the following syllogism: (1) the Nevada bankruptcy court and this court (if Wynn's Nevada case were transferred here) would have to apply Nevada state conflict of law rules, (2) Nevada state conflict of law rules supposedly dictate that unless there is an actual conflict between the laws of one state and the laws of the State of Nevada, the laws of the State of Nevada are applied, (3) since Delaware courts themselves (under whose laws the Debtors were formed) supposedly have not ruled on the reverse veil piercing, Nevada law would be applied, and (4) Wynn would likely prevail since Nevada law recognizes reverse piercing. (See Motion, Doc. 228, pg. 17).

This conflict of laws analysis is both simplistic and erroneous. Since the conflict of laws analysis is clearly wrong so are Mr. Neilson's conclusions as to the viability of Wynn's reverse piercing claims against the Debtors.

**B.**    **Proper Conflict of Laws Analysis**

The interests of three different states are involved in Wynn's claims. The State of Delaware has an interest since the Debtors were each formed under the laws of that State. The State of Nevada has an interest since Wynn originally chose to bring his reverse piercing claims

1  in the Nevada state court system and Wynn is a Nevada resident. The State of California has an

2  interest because the principal place of business of each of the Debtors is the State of California.

3       There are three potential approaches to the choice of law issues:

4            1.     <u>Diversity Jurisdiction Approach</u>

5       Under the diversity jurisdiction approach, bankruptcy courts borrow from the "law

6  applicable in diversity cases to hold that the forum state's choice of law rules are imposed on

7  bankruptcy adjudications where the underlying rights and obligations are defined by state law."

8  *Marine Midland Bank v. Portnoy (In re Portnoy),* 201 B.R. 685, 697 (Bankr. S.D. N.Y. 1996); *In*

9  *re Eagle Enters, Inc.,* 223 B.R. 290, 292 (Bankr. E.D. Pa. 1998).

10      In this case, the underlying rights and obligations are defined by state law because state

11  law dictates when veil piercing can occur.

12      Under Nevada's choice of law rules, the "internal affairs doctrine" applies. *Horwitz v.*

13  *Southwest Forest Industries, Inc.,* 612 F.Supp. 179, 182-183 (D. Nevada 1985). The internal

14  affairs doctrine holds that the laws of the state where an entity was formed are applied to matters

15  peculiar to the relationship between that entity and its officers, shareholders (in the case of

16  corporations), members (in the case of limited liability companies) or partners. *Id at* 182.

17      The types of internal affairs that are governed by the laws of the state of formation of an

18  entity include the circumstances, if any, under which there will be reverse veil piercing. *In re*

19  *Friedlander Capital Management Corp.,* 411 B.R. 434 (Bankr. S.D. Florida  2009)("Reverse veil

20  piercing involves the internal affairs of the Debtor, mainly the rights and liability of the Debtor."

21  *Id*  at 442.)

22      Because each of the Debtors were formed under the laws of the State of Delaware, the

23  laws of the State of Delaware will determine whether reverse veil piercing will be permitted.

24      In an analysis of whether reverse veil piercing of an entity is permitted where Delaware

25  law is to be applied, another Bankruptcy Court concluded that reverse veil piercing would not be

26  permitted. The court stated:

27           "Delaware itself has never recognized any form of reverse
             piercing…Not only has Delaware never accepted reverse
28           piercing, but the general tenor of Delaware law suggests its

1
2
3
4
5
6

acceptance would be doubtful…The piercing claim here requires this court to predict how the Delaware Supreme Court would rule….When prediction is difficult or impossible, however, a federal court should hesitate before venturing beyond the frontiers of established state law [citations omitted], and in the absence of guidance should generally adopt an interpretation that restricts rather than expands it. *In re Alt Hotel,* 479 B.R. 781 (Bankr. N.D, Ill. 2012).

7
8

Based upon the above analysis, the Bankruptcy Court refused to allow reverse veil piercing where Delaware law was the law to be applied under the internal affairs doctrine.

9
10
11
12

Therefore, in the present case, under the diversity jurisdiction approach, the internal affairs doctrine would apply Delaware law. Pursuant to the analysis set forth above, under Delaware law reverse piercing would not be allowed and Wynn's claims would fail, as a matter of law.

13

### 2.      Uniform Federal Common Law Approach

14
15
16

Under the uniform federal common law approach, a bankruptcy court applies federal, not forum state, choice of law rules. *Lindsay v. Beneficial Reinsurance Co (In re Lindsay),* 59 F.3d 942, 948 (9th Cir. 1995).

17
18
19
20
21
22

"In general, a bankruptcy court's choice of applicable law 'requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states.'" *In re Segre's Iron Works, Inc.* 258 B.R. 547, 551 (Bankr. D. Conn. 2001) (*quoting Vanston Bondholders Protect. Comm. V. Green,* 329 U.S. 156, 162, 67 S.Ct. 237, 91 L.ed. 162 (1946)).

23
24
25
26
27
28

As previously discussed, in the present case there are three states with arguable interests. The State of Delaware has an interest since the Debtors were each formed under the laws of that State. The State of Nevada has an interest since Wynn originally chose to bring his reverse piercing claims in the Nevada state court system and Wynn is a Nevada resident. The State of California has an interest because the principal place of business of each of the Debtors is the State of California.

MEMORANDUM IN OPPOSITION TO MOTION FOR APPROVAL OF SETTLEMENT

a.    Interests of the State of California

The State of California's interest is undoubtedly the strongest. Reverse piercing of an entity with a principal place of business in California would adversely affect California residents who are employees, especially where the reverse piercing, as is the case here, jeopardizes the very existence of the entity and therefore the continued employment of California residents. In addition, with companies principally operating in California, one could expect the trade creditors to be largely California companies as well and they extended credit to the entities without taking into account the possibility of an astronomically large creditor of an individual making a claim against the companies based solely upon the obligations of the individual. California governmental entities would also be adversely affected by the loss of tax revenues were a company operating principally in California to be destroyed by reverse piercing.

If the laws of the State of California were applied, Wynn's reverse piercing claims would fail since California does not allow reverse piercing. *Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal.App.4th 1510, 1513 (CA App Ct., 2008)("The reasoning of the cases adopting outside reverse piercing is flawed, and we join other courts in refusing to accept it.")

b.    Interests of the State of Delaware

The State of Delaware has a strong interest in the case because each of the Debtors was formed under the Limited Liability Company Act of the State of Delaware, Delaware Code, Title 6, Chapter 18. In 2005, the Delaware Supreme Court affirmed the primacy of the interests of the State of Delaware in cases involving the internal affairs of entities formed under that state's laws. In *VantagePoint Venture Partners 1996 v. Examen,* 871 A.2d 1108 (Del. 2005), the Delaware Supreme Court dealt with a case involving a corporation formed under the laws of the State of Delaware but operating in California. The Delaware Supreme Court, in determining that Delaware law should apply, quoted from a United States Supreme Court case, as follows:

> "In *CTS Corp. v. Dynamics Corp of Am.*,[2] the United States Supreme Court stated that it is 'an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the

---

[2] *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 91, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).

rights that are acquired by purchasing their shares.' In *CTS*, it was also recognized that '[a] State has an interest in promoting stable relationships among parties involved in the corporations it charters, as well as ensuring that investors in such corporations have an effective voice in corporate internal affairs.' The internal affairs doctrine developed on the premise that, in order to prevent corporations from being subjected to inconsistent standards, the authority to regulate a corporation's internal affairs should not rest with multiple jurisdictions. It is now well established that only the law of the state of incorporation governs and determines issues relating to a state's internal affairs. By providing certainty and predictability, the internal affairs doctrine protects the justified expectations of the parties with interests in the corporation." *VantagePoint Venture Partners 1996 v. Examen,* 871 A.2d 1108, 1112-1113 (Del. 2005).

The State of Delaware has similar interests in governing the relationships between limited liability companies formed under its laws on the one hand and members and creditors of such entities on the other. *Facchina v. Malley[3],* 2006 WL 2328228, *3 (Del. Ch.., August 1, 2006)("Delaware law, however, governs the internal affairs of a Delaware limited liability company regardless of its place of operations.").

If Delaware law were the applicable law, again the analysis of Delaware law on the point of reverse piercing contained in *In re Alt Hotel,* 479 B.R. 781 (Bankr. N.D, Ill. 2012), is persuasive:

"Delaware itself has never recognized any form of reverse piercing…Not only has Delaware never accepted reverse piercing, but the general tenor of Delaware law suggests its acceptance would be doubtful…The piercing claim here requires this court to predict how the Delaware Supreme Court would rule….When prediction is difficult or impossible, however, a federal court should hesitate before venturing beyond the frontiers of established state law [citations omitted], and in the absence of guidance should generally adopt an interpretation that restricts rather than expands it. *In re Alt Hotel,* 479 B.R. 781 (Bankr. N.D, Ill. 2012).

---

[3] The case is unpublished but in Delaware unpublished opinions can still be cited as precedent. Delaware Sup. Ct. Rule 17(a) Commentary, Delaware Sup. Ct Rule Rule 14(b)(vi)(B)(2).

**MEMORANDUM IN OPPOSITION TO MOTION FOR APPROVAL OF SETTLEMENT**

1

2      Therefore, if Delaware law were applied to Wynn's claims, the claims would fail, as a

3  matter of law, since Delaware has yet to recognize reverse piercing.

                          c.      Interests of the State of Nevada

4

5      In the present case, the interests of the State of Nevada are limited to the fact that Wynn

6  and his casino are a powerful force in Nevada and Nevada politics. Other than that, since the

7  Debtors are formed under the laws of the State of Delaware and their principal operations are in

8  California, Nevada has no other interest in the claims of Wynn against the Debtors.

9      Therefore, under the uniform federal common law approach where the choice of

10  applicable law "requires the exercise of an informed judgment in the balancing of all the interests

11  of the states with the most significant contacts in order best to accommodate the equities among

12  the parties to the policies of those states,"[4] since Nevada has the least interest in this case among

13  the three competing states, Nevada law would not be applied.

14                        d.      Results of Federal Uniform Common Law Approach

15      As discussed above, if either the laws of the State of California or the laws of the State of

16  Delaware were applied under the federal uniform common law approach, Wynn's claims would

17  fail as a matter of law since neither state has recognized reverse piercing.

18      The application of Nevada law would be improper under the federal uniform common law

19  approach since the interests and contacts of the States of California and Delaware outweigh any

20  interest of the State of Nevada in protecting one of its politically powerful citizens.

21                        3.      Hybrid Approach

22      Besides the diversity jurisdiction approach and the federal uniform common law approach

23  to conflict of law issues, the third approach is the "hybrid approach."

24      Under a hybrid approach, courts first assess whether creation of federal common law,

25  rather than application of the applicable state's law, is appropriate because "[t]he ability of the

26  federal courts to create federal common law and displace state created rules is severely limited."

27

28      [4] *In re Segre's Iron Works, Inc.* 258 B.R. 547, 551 (Bankr. D. Conn. 2001) (*quoting Vanston Bondholders Protect. Comm. V. Green,* 329 U.S. 156, 162, 67 S.Ct. 237, 91 L.ed. 162 (1946)).

**MEMORANDUM IN OPPOSITION TO MOTION FOR APPROVAL OF SETTLEMENT**

1  *Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599, 606 (2d Cir. 2001).

2  Before a bankruptcy court can create federal common law " 'a significant conflict between

3  some federal policy or interest and the use of state law must first be specifically shown.'" *Bianco*

4  *v. Erkins (In re Gaston & Snow),* 243 F.3d 599, 606 (2n Cir. 2001)(quoting *Atherton v. FDIC,*

5  519 U.S. 213, 218, 117 S.Ct. 666, 136 L.Ed.656 (1997)).

6  There is no significant conflict between any federal policy or interest, and the use of state

7  law in the present case. Therefore, state law should be applied.

8                    4.    Conclusion of Analysis of Conflicts of Laws Approaches

9  As discussed above, under the diversity jurisdiction approach, the laws of the State of

10  Delaware would apply due to the internal affairs doctrine. If the laws of the State of Delaware

11  were applied, Wynn's claims against the Debtors would fail because Delaware has never

12  recognized reverse piercing.

13  Under the uniform federal common law approach, either the laws of the State of Delaware

14  or the laws of the State of California would apply since those two States have the greater interests

15  and contacts. If the laws of the State of California were applied, Wynn's claims against the

16  Debtors would fail because California has refused to recognize reverse piercing. As previously

17  discussed, if the laws of the State of Delaware were applied, Wynn's claims would fail because

18  Delaware has never recognized reverse piercing.

19  Under the hybrid approach, there is no justification for the creation of federal common

20  law in the area of reverse piercing and therefore state law would apply. That would then bring to

21  bear the prior two approaches in order to determine which state's laws should be applied. As

22  previously discussed, either Delaware or California's laws should be applied and in either

23  instance Wynn's claims would fail, as a matter of law.

24  **C.    The Conflict of Laws Analysis Was Never Raised in the Nevada State Court
           Injunction Proceedings.**

25

26  In his analysis of the risks of continuing to contest Wynn's claims, counsel to Mr. Neilson

27  raises as a concern in his Motion that the Nevada Clark County District Court has found a

28  "substantial likelihood" of Wynn prevailing on the merits in the "Alter Ego Litigation" (as

-8-

1   defined in the Motion) when it granted a Preliminary Injunction on the release of funds held in an

2   attorney trust account on behalf of the Debtors.

3        However, in making such determination, the Court was never presented with the Conflicts

4   of Laws analysis and the fact that neither California nor Delaware recognize reverse piercing. The

5   Court just assumed that Nevada law would apply. Declaration of Ronald Tym ("Tym Decl."), ¶3.

6   Therefore, that court's conclusion as to the likelihood of Wynn prevailing has no import to a

7   determination of whether the Chapter 11 Trustee would prevail against Wynn on Wynn reverse

8   piercing claims.

9   **III.**    **ALLEGED FACTS REGARDING WHETHER DEBTORS ARE ALTER**

10          **EGOS OF FRANCIS HAVE NO IMPACT ON INVALIDITY OF WYNN'S
CLAIMS.**

11       In his Motion, counsel for Mr. Neilson devotes a lot of discussion to the evidence

12  supposedly supporting that the Debtors may be alter egos of Mr. Francis. Because of the

13  evidence, Mr. Neilson concludes that it would be difficult and expensive to contest the issues and

14  rebut the evidence. However, even if the Debtors were alter egos of Mr. Francis, Wynn's claims

15  would still, as a matter of law, fail.

16       Whether an entity meets the tests of being an alter ego of another is just the first step in

17  determining whether a certain person or entity is actually liable for the obligations of another. In

18  other words, alter ego status is a pre-requisite for the application of veil piercing of any kind

19  (whether standard piercing or reverse piercing), but the applicable law must still recognize

20  reverse veil piercing before liability can be found on that basis even in the presence of facts

21  supporting alter ego status.

22       The court in *Olympic Capital Corp. v. Newman,* 276 F.Supp. 646, 658 (C.D.Cal. 1967)

23  described outside reverse piercing as a "complete distortion of the alter ego doctrine."

24       The court in *In re Alt Hotel,* 479 B.R. 781, 801 (Bankr. N.D, Ill.  2012) described it as

25  follows:

26          "Outside reverse piercing claims are claims in which a third

27          party—a creditor or bankruptcy trustee—is making the
            alter ego claim, either to hold the corporation liable for the

28          acts of its shareholder or subsidiary, or to bring an action in

-9-

the name of the corporation against the shareholder or subsidiary."

Therefore, the strength of any facts supposedly supporting that the Debtors are alter egos of Mr. Francis has no impact on the fact that Wynn's claims will still fail, as a matter of law, because neither California nor Delaware recognize reverse piercing.[5]

Thus, successfully defending against Wynn's claims does not require Mr. Neilson to incur the time, expense or complexity of challenging facts alleged by Wynn that supposedly support that the Debtors are alter egos of Mr. Francis. Mr. Neilson can prevail by bringing a Summary Judgment Motion or a Motion for Judgment on the Pleadings, basically arguing that even if the facts alleged by Wynn are true, the Debtors are not liable for the obligations of Mr. Francis because under applicable law (California or Delaware) there is no reverse piercing.

### IV.    NOMINEE THEORY

In his Motion, counsel for Mr. Neilson raises a concern that even if he could prevail against Wynn's reverse piercing arguments, that Wynn may, according to Neilson's counsel, still prevail by arguing that the Debtors hold Mr. Francis' assets as nominees. (Motion, pg. 18)

This concern ignores the fact that the "nominee theory" of liability is solely a federal tax lien theory and has never been used in a non-tax setting by state or federal courts to circumvent normal alter-ego/veil piercing requirements to hold an entity and its assets generally liable for the obligations of another. Indeed, the two cases cited by Mr. Neilson in his Motion as standing for the "nominee theory" are both federal tax lien cases. (Motion, pg. 18).

### V.    ECONOMIC ANALYSIS OF PROPOSED SETTLEMENT

In the proposed settlement, Mr. Neilson proposes accepting $800,000 of $1.9 million of disputed funds on deposit in an attorney trust account in exchange for: (1) allowing 90% (or approximately $28 million) of Wynn's reverse piercing claims; (2) allowing Wynn to keep the

---

[5] Although not directly relevant to the discussion, it should also be noted that in the case in Oklahoma where Mr. Neilson asserts that alter ego status of GGW Direct, GGW Marketing and GGW Brands was supposedly "proven" by the Plaintiff Rayment (Motion, pg. 18, Line 21), the finding of alter ego status was based solely on "deemed admissions" because of the failure of such entities to timely respond to requests for admission. (Tym Decl., ¶4). There has been no judicial determination of alter ego status of any GGW entity by any court based upon full and fair litigation of the issues.

1  majority (or about $1,100,000) of the disputed funds; and (3) granting Wynn a priority claim of

2  $250,000.

3      If one looks at the assets of the Debtors as set forth on their Schedules, the $28 million of

4  claims by Wynn, if allowed, would be about 14 times the assets of the Debtors (after deducting

5  $1,100,000 of the $1.9 million in cash that would be gone as a result of the Wynn settlement).

6  The $28 million will also be about 4 times gross annual earnings of the GGW entities as reflected

7  in the Statements of Financial Affairs (without even taking into account the atrophying of the

8  businesses of the Debtors during the period of time that the Chapter 11 Trustee has operated the

9  businesses). Thus, the $28 million in allowed claims will overly burden the Debtors' businesses

10  for years to come, if the Debtors' businesses can survive at all under such a strain. In addition, the

11  settlement will place Wynn in virtual charge of the bankruptcy at the expense of the other

12  unsecured creditors.

13      As part of the settlement, the Chapter 11 Trustee attempts to mollify other unsecured

14  creditors by having Wynn agree to subordinate his claims to $400,000 of claims of such other

15  general unsecured creditors. However, according to the Schedules of the Debtors, and

16  descriptions of other pending litigation in the Statements of Financial Affairs of the Debtors, one

17  can expect that the other unsecured creditors, especially those with disputed litigation claims, will

18  have claims aggregating many multiples of that $400,000.  Therefore, allowing Wynn's claims

19  assures that such other creditors will only receive pennies on the dollar for their claims since the

20  estates have to take care of Wynn's very large claims pro rata with the other unsecured creditors'

21  claims in excess of $400,000.

22      As previously discussed, the $28 million in claims that the Chapter 11 Trustee is

23  proposing to allow are clearly invalid under applicable law. He is doing this in exchange for the

24  certainty of $800,000 in immediate cash.  Presumably this cash will be going almost solely

25  towards administrative expenses such as the legal fees of counsel to the Chapter 11 Trustee, fees

26  of the Chapter 11 Trustee himself, and fees of the Chapter 11 Trustee's company. If any money

27  happens to be left over, it will go back to Wynn as part of the proposed agreement to allow Wynn

28  to have $250,000 of administrative claims.

The cost of challenging, and with almost certainty prevailing against, Wynn's claims, will be very modest since such claims are invalid as a matter of California and Delaware law and therefore such claims can be disposed of with a Motion for Judgment on the Pleadings or Motion for Summary Judgment.

While the aspect of the proposed settlement dealing with the division of the $1.9 million of cash in the attorney trust account may seem reasonable given that it appears that about $1.2 million of the cash came from sources other than the Debtors, the $800,000 that the Chapter 11 Trustee will receive pales in comparison to the $28 million of invalid claims that the Chapter 11 Trustee is agreeing to allow in exchange for receipt of such $800,000. Given that it can be expected that the majority if not all of the $800,000 will be eaten up in fees to counsel to the Chapter 11 Trustee, fees to the Chapter 11 Trustee's company, and fees to counsel to the Chapter 11 Trustee, and given the gross amount of invalid claims that are being allowed in exchange, a question of whether the settlement was negotiated in good faith is raised.

Therefore, as a whole, the proposed settlement is not fair and reasonable.

## VI. ANALYZING THE SETTLEMENT USING NINTH CIRCUIT FACTORS

As pointed out by the Chapter 11 Trustee in his Motion, it is the rule in the Ninth Circuit that a bankruptcy court should not approve a proposed settlement unless the proposed settlement was negotiated in good faith and is reasonable, fair and equitable. *Martin v. Kane (In re A & C Properties),* 784 F.2d 1377, 1381 (9th Cir. 1986).

The following factors are to be taken into account when determining whether a proposed settlement is reasonable, fair and equitable:

> "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id* at 1381.

The trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved. *Id* at 1381.

Looking at the above factors in the context of the previous discussions in this Opposition, the conclusion must be reached that the proposed settlement is not reasonable, fair or equitable.

### A. **Probability of Success of the Litigation**

As previously discussed, Wynn's claims against the Debtors fail, as a matter of law. Wynn is seeking to hold the Debtors, which are each Delaware limited liability companies operating in California, liable for the debts of the individual, Joseph Francis. Thus, Wynn is seeking reverse veil piercing. Reverse veil piercing is not recognized in either California or Delaware, and under conflict of law principles, the laws of one of those states would apply.

Therefore, the probability of the Chapter 11 Trustee's success in the Wynn litigation cases is almost a certainty.

### B. **The Difficulties, if Any, to be Encountered in the Matter of Collection**

The Wynn cases involve claims against the Debtors, not claims by the Debtors, therefore when the Debtors prevail, there will be no issue of the viability of collection.

### C. **The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessary to Attending It**

As previously discussed, in the Wynn litigation the Chapter 11 Trustee will prevail, as a matter of law, and therefore the Chapter 11 Trustee need not incur the cost of protracted litigation. As a matter of law, Wynn's claims are invalid since they are based upon reverse piercing, and therefore such claims can be disposed of in a Motion for Judgment on the Pleadings or a Motion for Summary Judgment. Because the litigation can be disposed of in this manner, the litigation loses its complexity since the Chapter 11 Trustee need not get into factual allegations relating to whether or not the Debtors are alter egos of Mr. Francis.

### D. **The Paramount Interest of the Creditors and a Proper Deference to Their Reasonable Views in the Premises**

In the present case, the proposed settlement is unfair to both the creditors and to the Debtors.

The proposed settlement is unfair to creditors because it allows $28 million of otherwise invalid claims against estates with an aggregate value of only about $2 million and annual gross revenues (before the bankruptcy) of only about $6.6 million. The subordination of $400,000 of

-13-

1   Wynn's claims to other unsecured creditors does not do nearly enough to ameliorate the adverse

2   effects of the settlement on such creditors. The claims of such other creditors, especially litigation

3   creditors with disputed claims, is expected to be many multiples of the $400,000. Therefore, such

4   unsecured creditors, which will share pro rata with Wynn to the extent of claims in excess of

5   $400,000, will receive only pennies on the dollar when, without allowing Wynn's claims, such

6   creditors would likely receive almost 100 cents on the dollar. In exchange for allowing $28

7   million of otherwise invalid claims, all that the other creditors are receiving is a subordination of

8   $400,000 of such claims. That is hardly a fair bargain. The creditors would be infinitely better off

9   if the Chapter 11 Trustee would just litigate and prevail against Wynn's invalid claims.

10   The proposed settlement is also unfair to the Debtors because by allowing otherwise

11   invalid claims that are many multiples times the assets and revenues of the Debtors, the continued

12   existence of such Debtors is called into extreme question.

13   **E.    Question of Whether the Proposed Settlement was Negotiated in Good Faith**

14   As previously discussed, the Chapter 11 Trustee and his counsel have negotiated for the

15   release of $800,000 in disputed funds in exchange for them agreeing to allow $28 million of

16   otherwise invalid claims against the estates. It is highly likely that the vast majority, if not all, of

17   the recovered $800,000 of funds will go to pay the fees of the Chapter 11 Trustee, the Chapter 11

18   Trustee's company, and counsel for the Chapter 11 Trustee. Any remainder of such funds would

19   likely go back to Wynn since the proposed settlement also gives Wynn $250,000 of

20   administrative priority claims.

21   These facts call into question whether the proposed settlement was negotiated in good

22   faith.

23   **VII.    STANDING OF GGW GLOBAL BRANDS, INC.**

24   GGW Global Brands, Inc. has standing to raise this Opposition to the Proposed Settlement

25   because GGW Global Brands, Inc. is the sole member of one of the Debtors, GGW Marketing,

26   LLC. Indeed, GGW Global brands, Inc. has filed a Motion to have the bankruptcy of GGW

27   Marketing, LLC dismissed because it was filed by Mr. Neilson without the requisite prior written

28   consent of GGW Global Brands, Inc. (See Docket No. 222).

1      The proposed settlement is that all of the Debtors, including GGW Marketing, LLC, be

2  bound by the settlement and that Wynn's allowed claims be claims against each of the Debtors.[6]

3  **VIII.  DEBTORS AND WYNN ARE NOT THE ONLY PARTIES TO NEVADA
          ALTER EGO LITIGATION AND THEREFORE THEY DO NOT HAVE**

4          **POWER TO AGREE TO SPLIT MONEY AT ISSUE**

5      As part of the proposed Settlement, the Debtors and Wynn are agreeing that the Debtors

6  will receive $800,000 of the $1.9 million in on deposit in an attorney trust account that is at issue

7  in that litigation, and that Wynn will receive the remaining $800,000. However, the Debtors and

8  Wynn are not the only parties to that litigation. Pepe Bus, LLC is also a party to that litigation and

9  was never served with a Summons or Complaint. The $1.1 million that the Settlement Agreement

10  agrees to give to Wynn actually belonged to Pepe Bus, LLC. Pepe Bus, LLC assigned the right to

11  such monies to GGW Global Brands, Inc., and GGW Global Brands, Inc. will be making an

12  appearance in the Nevada alter ego litigation asserting its claims before the hearing on the

13  proposed Settlement. This precludes this court from approving the Settlement since the property

14  of parties other than those who will be signatories to the Settlement Agreement are being dealt

15  with by the proposed Settlement.

16  **IX.  CONCLUSION**

17      Based on the foregoing, GGW Global Brands, Inc. requests that this court not approve the

18  proposed settlement.

19

20  DATED: July 22, 2013

21          By:  _____

22               MICHAEL D. KOLODZI
               Attorney for GGW Global Brands, Inc.

23

24

25

26

_____

27  [6] Based upon written statements of counsel to Mr. Neilson in other pleadings in the Debtors bankruptcy cases, it is expected that Mr. Neilson will ultimately ask that the bankruptcy cases of all of the Debtors be consolidated.

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

    5981 Topnaga Canyon Blvd., Woodland Hills, CA  91357

A true and correct copy of the foregoing document entitled (specify): _____
 Opposition to Motion for Approval of Settlement with Wynn Las Vegas, LLC and Stephen Wynn _____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (date) 07/22/2013         , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
 See Attached

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date)    07/22/2013     , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/22/2013 | Michael D. Kolodzi | | /s/ Michael D. Kolodzi |
|---|---|---|---|
| Date | Printed Name | | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# Mailing Information for Case 2:13-bk-15130-SK

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Martin R Barash**    mbarash@ktbslaw.com, lbogdanoff@ktbslaw.com
- **Brendt C Butler**    brendt.butler@gmail.com
- **Richard K Diamond**    rdiamond@dgdk.com, DanningGill@gmail.com
- **Matthew Heyn**    mheyn@ktbslaw.com
- **Lance N Jurich**    ljurich@loeb.com, kpresson@loeb.com
- **Samuel M Kidder**    skidder@ktbslaw.com
- **Michael D Kolodzi**    mdk@mdklawfirm.com
- **Dare Law**    dare.law@usdoj.gov
- **Dare Law**    dare.law@usdoj.gov
- **John F Medler**    JOHN@MEDLERLAWFIRM.COM, JMEDLER@MEDLERROITHER.COM
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **R. Todd Neilson (TR)**    tneilson@brg-expert.com, sgreenan@brg-expert.com;tneilson@ecf.epiqsystems.com;ntroszak@brg-expert.com
- **Malhar S Pagay**    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- **Robert J Pfister**    rpfister@ktbslaw.com
- **Ronald N Richards**    ron@ronaldrichards.com, nick@ronaldrichards.com
- **Ronald N Richards**    ron@ronaldrichards.com, nick@ronaldrichards.com
- **Steven J Schwartz**    sschwartz@dgdk.com, DanningGill@gmail.com
- **David M Stern**    dstern@ktbslaw.com
- **Ronald D Tym**    RTym@Tymfirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Andy C Warshaw**    awarshaw@lawcenter.com, mstevens@lawcenter.com
- **Jonathan M Weiss**    jweiss@ktbslaw.com
- **Jonathan M Weiss**    jweiss@ktbslaw.com
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David M Stern**
1999 Avenue of the Stars 39th Fl
Los Angeles, CA 90067

**Ronald Tym**
The Tym Firm
501 Rio Grande Ave E-1
Santa Fe, NM 87501

## Creditor List

**2:13-bk-15130-SK** GGW Brands, LLC and GGW Marketing, LLC
**Case type:** bk **Chapter:** 11 **Asset:** Yes **Vol:** v **Judge:** Sandra R. Klein
**Date filed:** 02/27/2013 **Date of last filing:** 07/22/2013

# Creditors

**Allen Michael Wade**
c/o Law Office of Shane M. Mallett
Board of Trade Building
80 Twelfth Street, Suite 100
Wheeling,

(33472494)
(cr)

**Allen Michael Wade**
c/o Law Office of Shane M. Mallett
Board of Trade Building
80 Twelfth Street, Suite 100
Wheeling,

(33482726)
(cr)

**Brian J Rayment**
c/o Dana L. Kurtz, Esq.
32 Blaine St.
Hinsdale, IL 60521

(33472495)
(cr)

**Brian J Rayment**
c/o Dana L. Kurtz, Esq.
32 Blaine St.
Hinsdale, IL 60521

(33482727)
(cr)

**Chelsea Heath**
Brian D Hefelfinger, ESQ
121 N Fir Street, Ste F
Ventura CA 93001

(33510499)
(cr)

**Ecoff Blut, LLP**
300 S. Fourth Street, Suite 701
Las Vegas, NV 89101

(33472496)
(cr)

**Ecoff Blut, LLP**
300 S. Fourth Street, Suite 701
Las Vegas, NV 89101

(33482728)
(cr)

**Etagz, Inc.**
Pia Anderson Dorius Reynard & Moss
222 So. Main St, Suite 1830
Salt Lake City, UT 84101

(33482729)
(cr)

**Etagz, Inc.**
Pia Anderson Dorius Reynard & Moss

(33472497)
(cr)

222 So. Main St, Suite 1830
Salt Lake City, UT 84101

**GGW Brands LLC**
Brian D Hefelfinger, Esq.                    (33510467)
121 N Fir Street, Suite F                    (cr)
Ventura CA 93001

**Google Inc.**
Google Inc./Blake Reese, ESQ                 (33966351)
76 Ninth Ave                                 (cr)
New York NY 10075

**Internal Revenue Service**
300 N. Los Angeles ST STOP 5117              (34031317)
Los Angeles, CA 90012                        (cr)

**John F. Medler, Jr.**
7700 Bonhomme Ave., Ste 360                  (33692536)
St. Louis, MO 63105                          (cr)

**Larry Hancock**
8711 1/2 West Knoll Drive                    (34024232)
W Hollywood CA 90069                         (cr)

**Mitchell J. Langberg**
Brownstein Hyatt et. al.                      (33482730)
2029 Century Park East, Suite 2100           (cr)
Los Angeles, CA 90067

**Mitchell J. Langberg**
Brownstein Hyatt et. al.                      (33472498)
2029 Century Park East, Suite 2100           (cr)
Los Angeles, CA 90067

**Tamara Favazza**
c/o Jerry P. Medler
Medler and Roither, PC                        (33472499)
8000 Maryland Ave., Suite 640                 (cr)
Clayton,

**Tamara Favazza**
c/o Jerry P. Medler
Medler and Roither, PC                        (33482731)
8000 Maryland Ave., Suite 640                 (cr)
Clayton,

**Transcontinental Interweb Montreal**       (34055402)
400 Avenue Ste-Crox, Suite 300 East          (cr)
St-Laurent, Quebec, H4N 3L4, CANADA

**Wynn Las Vegas, LLC**
Attn: Kevin Tourek, Agent                    (33482732)
3131 Las Vegas Blvd., So.                     (cr)
Las Vegas, NV 89109

**Wynn Las Vegas, LLC**
Attn: Kevin Tourek, Agent                    (33472500)
3131 Las Vegas Blvd., So.                     (cr)
Las Vegas, NV 89109

**Yahoo! Inc.**
c/o Lawrence Schwab/Thomas Gaa
Bialson, Bergen & Schwab, P.C.                (33990409)
2600 El Camino Real, Suite 300                (cr)
Palo Alto, CA 94306

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/22/2013 14:25:37 | | | |
| **PACER Login:** | th9708 | **Client Code:** | |
| **Description:** | Creditor List | **Search Criteria:** | 2:13-bk-15130-SK Creditor Type: All |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

1 │ Michael D. Kolodzi, Esq. (SBN 255772)
   │ The Kolodzi Law Firm
2 │ 5981 Topanga Canyon Blvd.
   │ Woodland Hills, CA  91367
3 │ Telephone:    (818) 287-7173
   │ Facsimile: (818) 571-6094
4 │
5 │ Attorney for GGW GLOBAL BRANDS, INC.

6 │             UNITED STATES BANKRUPTCY COURT

7 │             CENTRAL DISTRICT OF CALIFORNIA

8 │                 LOS ANGELES DIVISION

| 9 | In re | Jointly Administered |
|---|---|---|
| 10 | GGW BRANDS, LLC, | Under Case No. 2:13-bk-15130-SK |
| | GGW DIRECT, LLC, | |
| 11 | GGW EVENTS, LLC, | Chapter 11 |
| | GGW MAGAZINE, LLC, and | |
| 12 | GGW MARKETING, LLC | **DECLARATION OF RONALD D. TYM IN SUPPORT OF OPPOSITION TO MOTION FOR APPROVAL OF SETTLEMENT WITH WYNN LAS VEGAS, LLC AND STEPHEN WYNN** |
| 13 | Debtors. | |
| 14 | | |
| 15 | This pleading affects: | Judge: Hon. Sandra R. Klein |
| | All Debtors                ☒ | Ctrm: 1575 |
| 16 | GGW Brands, LLC        ☐ | Date: August 7, 2013 |
| | GGW Direct, LLC        ☐ | Time: 9:30 a.m. |
| 17 | GGW Events, LLC        ☐ | |
| | GGW Magazine, LLC    ☐ | |
| | GGW Marketing, LLC   ☐ | |

18 │
19 │      I, Ronald D. Tym, declare as follows:
20 │
        1.    I am an individual over the age of 18 years of age. I am a member in good standing
21 │ of the State Bar of California and the bar of this court.
22 │      2.    I have personal knowledge of the facts set forth herein. If called as a witness, I
23 │ could and would competently testify to the matters stated herein.
24 │      3.    I have reviewed the filings in Case No. A-12-660288-B in the Clark County
25 │ District Court (the "Alter Ego Litigation") in connection with the request for injunctive relief by
26 │ Wynn Las Vegas and none of the filings raise for the court the issues of conflict of laws, the issue
27 │ of Delaware or California law applying, or the issue of Delaware and California not having
28 │ recognized reverse piercing.

1       4.     I have reviewed the docket and filings in connection with the case of Rayment v.

2 GGW Brands, LLC et al, Case No. CJ-2012-01321, in the District Court for Tulsa County, State

3 of Oklahoma, and the summary judgment finding the defendants therein to be alter egos of Joseph

4 Francis was based upon deemed admissions by the defendants as a result of their failure to timely

5 file responses to requests for admission. There was never full litigation of the issue of alter ego

6 status

7       I declare under penalty of perjury that the foregoing is true and correct.

8       Executed July 22, 2013

9

                                   Ronald D. Tym

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

   5981 Topnaga Canyon Blvd., Woodland Hills, CA  91357

A true and correct copy of the foregoing document entitled (*specify*): _Declaration of Ronald D. Tym in Support of_
_Opposition to Motion for Approval of Settlement with Wynn Las Vegas, LLC and Stephen Wynn_

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _07/22/2013_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
   See Attached

[✓] Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*) _07/22/2013_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[✓] Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

[ ] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/22/2013 | Michael D. Kolodzi | /s/ Michael D. Kolodzi |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                             **F 9013-3.1.PROOF.SERVICE**

# Mailing Information for Case 2:13-bk-15130-SK

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Martin R Barash**  mbarash@ktbslaw.com, lbogdanoff@ktbslaw.com
- **Brendt C Butler**  brendt.butler@gmail.com
- **Richard K Diamond**  rdiamond@dgdk.com, DanningGill@gmail.com
- **Matthew Heyn**  mheyn@ktbslaw.com
- **Lance N Jurich**  ljurich@loeb.com, kpresson@loeb.com
- **Samuel M Kidder**  skidder@ktbslaw.com
- **Michael D Kolodzi**  mdk@mdklawfirm.com
- **Dare Law**  dare.law@usdoj.gov
- **Dare Law**  dare.law@usdoj.gov
- **John F Medler**  JOHN@MEDLERLAWFIRM.COM, JMEDLER@MEDLERROITHER.COM
- **Kelly L Morrison**  kelly.l.morrison@usdoj.gov
- **R. Todd Neilson (TR)**  tneilson@brg-expert.com, sgreenan@brg-expert.com;tneilson@ecf.epiqsystems.com;ntroszak@brg-expert.com
- **Malhar S Pagay**  mpagay@pszjlaw.com, mpagay@pszjlaw.com
- **Robert J Pfister**  rpfister@ktbslaw.com
- **Ronald N Richards**  ron@ronaldrichards.com, nick@ronaldrichards.com
- **Ronald N Richards**  ron@ronaldrichards.com, nick@ronaldrichards.com
- **Steven J Schwartz**  sschwartz@dgdk.com, DanningGill@gmail.com
- **David M Stern**  dstern@ktbslaw.com
- **Ronald D Tym**  RTym@Tymfirm.com
- **United States Trustee (LA)**  ustpregion16.la.ecf@usdoj.gov
- **Andy C Warshaw**  awarshaw@lawcenter.com, mstevens@lawcenter.com
- **Jonathan M Weiss**  jweiss@ktbslaw.com
- **Jonathan M Weiss**  jweiss@ktbslaw.com
- **Robert M Yaspan**  court@yaspanlaw.com, tmenachian@yaspanlaw.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David M Stern**
1999 Avenue of the Stars 39th Fl
Los Angeles, CA 90067

**Ronald Tym**
The Tym Firm
501 Rio Grande Ave E-1
Santa Fe, NM 87501

## Creditor List

**2:13-bk-15130-SK** GGW Brands, LLC and GGW Marketing, LLC
**Case type:** bk **Chapter:** 11 **Asset:** Yes **Vol:** v **Judge:** Sandra R. Klein
**Date filed:** 02/27/2013 **Date of last filing:** 07/22/2013

# Creditors

**Allen Michael Wade**
c/o Law Office of Shane M. Mallett
Board of Trade Building
80 Twelfth Street, Suite 100
Wheeling,

(33472494)
(cr)

**Allen Michael Wade**
c/o Law Office of Shane M. Mallett
Board of Trade Building
80 Twelfth Street, Suite 100
Wheeling,

(33482726)
(cr)

**Brian J Rayment**
c/o Dana L. Kurtz, Esq.
32 Blaine St.
Hinsdale, IL 60521

(33472495)
(cr)

**Brian J Rayment**
c/o Dana L. Kurtz, Esq.
32 Blaine St.
Hinsdale, IL 60521

(33482727)
(cr)

**Chelsea Heath**
Brian D Hefelfinger, ESQ
121 N Fir Street, Ste F
Ventura CA 93001

(33510499)
(cr)

**Ecoff Blut, LLP**
300 S. Fourth Street, Suite 701
Las Vegas, NV 89101

(33472496)
(cr)

**Ecoff Blut, LLP**
300 S. Fourth Street, Suite 701
Las Vegas, NV 89101

(33482728)
(cr)

**Etagz, Inc.**
Pia Anderson Dorius Reynard & Moss
222 So. Main St, Suite 1830
Salt Lake City, UT 84101

(33482729)
(cr)

**Etagz, Inc.**
Pia Anderson Dorius Reynard & Moss

(33472497)
(cr)

222 So. Main St, Suite 1830
Salt Lake City, UT 84101

**GGW Brands LLC**
Brian D Hefelfinger, Esq.                  (33510467)
121 N Fir Street, Suite F                   (cr)
Ventura CA 93001

**Google Inc.**
Google Inc./Blake Reese, ESQ              (33966351)
76 Ninth Ave                               (cr)
New York NY 10075

**Internal Revenue Service**
300 N. Los Angeles ST STOP 5117           (34031317)
Los Angeles, CA 90012                       (cr)

**John F. Medler, Jr.**
7700 Bonhomme Ave., Ste 360               (33692536)
St. Louis, MO 63105                         (cr)

**Larry Hancock**
8711 1/2 West Knoll Drive                 (34024232)
W Hollywood CA 90069                        (cr)

**Mitchell J. Langberg**
Brownstein Hyatt et. al.                   (33482730)
2029 Century Park East, Suite 2100         (cr)
Los Angeles, CA 90067

**Mitchell J. Langberg**
Brownstein Hyatt et. al.                   (33472498)
2029 Century Park East, Suite 2100         (cr)
Los Angeles, CA 90067

**Tamara Favazza**
c/o Jerry P. Medler                        (33472499)
Medler and Roither, PC                      (cr)
8000 Maryland Ave., Suite 640
Clayton,

**Tamara Favazza**
c/o Jerry P. Medler                        (33482731)
Medler and Roither, PC                      (cr)
8000 Maryland Ave., Suite 640
Clayton,

**Transcontinental Interweb Montreal**
400 Avenue Ste-Crox, Suite 300 East       (34055402)
St-Laurent, Quebec, H4N 3L4, CANADA        (cr)

**Wynn Las Vegas, LLC**
Attn: Kevin Tourek, Agent
3131 Las Vegas Blvd., So.
Las Vegas, NV 89109

(33482732)
(cr)

**Wynn Las Vegas, LLC**
Attn: Kevin Tourek, Agent
3131 Las Vegas Blvd., So.
Las Vegas, NV 89109

(33472500)
(cr)

**Yahoo! Inc.**
c/o Lawrence Schwab/Thomas Gaa
Bialson, Bergen & Schwab, P.C.
2600 El Camino Real, Suite 300
Palo Alto, CA 94306

(33990409)
(cr)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/22/2013 14:25:37 | | | |
| PACER Login: | th9708 | Client Code: | |
| Description: | Creditor List | Search Criteria: | 2:13-bk-15130-SK Creditor Type: All |
| Billable Pages: | 1 | Cost: | 0.10 |