# EXHIBIT D

# ORIGINAL

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>GGW Brands, LLC<br>GGW Marketing, LLC<br>et. al.<br><br>　　　　　　　　Debtors. | Case No.: 2:13-bk-15130-SK<br><br>CHAPTER 11<br><br>**COURT'S TENTATIVE RULING ON THE TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT WITH WYNN LAS VEGAS, LLC AND STEPHEN WYNN WHICH WAS ADOPTED AS THE COURT'S FINAL RULING AT THE HEARING**<br><br>Date:　　August 7, 2013<br>Time:　　9:30 a.m.<br>Courtroom: 1575 |

　　　The Court's tentative ruling issued on August 6, 2013 was adopted as the Court's final ruling at the August 7, 2013 hearing on this matter. A copy of the tentative ruling is attached hereto.

-1-

Before the Court is the "Motion for Approval of Settlement With Wynn Las Vegas, LLC and Stephen A. Wynn" filed by GGW Marketing, LLC and R. Todd Neilson (Trustee) in his capacity as the chapter 11 trustee of the estates of GGW Brands, LLC, GGW Direct, LLC, GGW Magazine, LLC, and GGW Events, LLC[1] (Motion).  Docket #228.  On 7/23/13, GGW Global Brands, Inc. (GGW Global) filed an opposition to the Motion (GGW Global Oppo.).  Docket # 258.  Tamara Favazza (Favazza) also filed an opposition to the Motion on 7/23/13 (Favazza Oppo.).  Docket #259.  On 7/26/13, the judgment creditors in *In re Girls Gone Wild Class Action Litigation*, case number BC 296675, Los Angeles Superior Court (Class Action Creditors) filed an opposition to the Motion (Class Action Creditors Oppo.).  Docket #276.  On 7/31/13, the Trustee filed a "Reply in Support of Motion to Approve Proposed Settlement With Wynn Las Vegas, LLC and Stephen A. Wynn" (Trustee Reply) on 7/31/13.  Docket #283.  Wynn Las Vegas, LLC (Wynn LV) filed a "Reply in Support of Trustee's Motion for Approval of Settlement with Wynn Las Vegas, LLC and Stephen A. Wynn" (Wynn Reply) on 7/31/13.  Docket #286.

## I. Background

### A. Factual Background

All of the Debtors, with the exception of GGW Marketing, LLC, filed voluntary chapter 11 bankruptcy petitions on 2/27/13.  On 4/11/13, the Court authorized the appointment of a chapter 11 trustee for the Debtors' estates, and the Court entered an order approving the appointment of the Trustee on 4/12/13.  With the authorization of the Court, the Trustee caused GGW Marketing, LLC to file a chapter 11 bankruptcy on 5/22/13.

Since 2009, Wynn LV and Stephen A. Wynn (Wynn) have obtained three judgments (Judgments) against Joseph R. Francis (Francis).  Declaration of Matthew C. Heyn in Support of the Motion (Heyn Decl.) ¶ 11.  The Judgments are summarized in the following chart:

---

[1] Collectively, all the GGW entities are referred to as "the Debtors," or "the GGW Entities" and GGW Marketing, LLC and the Trustee are referred to collectively as "the Trustee."

1

Case 2:13-bk-15105-sk  Doc 28-6  Filed 08/07/13  Entered 08/07/13 12:02:14  Desc
Case 13-51305-btb  Doc 293  Filed 09/07/21  Entered 09/07/13 13:48:07  Page 42 of 314
Main Document    Page 3 of 26

| Date of Judg. | Court | Case Name | Judgment Amount | Title | Appeal? |
|---|---|---|---|---|---|
| 8/18/09 | Nevada Clark County District Court | Case No: A566286 | Award to Wynn LV: $2,000,000 plus prejudgment interest of $838,356 (for the period from 2/17/07-8/18/09) plus post-judgment interest from and after 8/18/09 at the rate of $986.30 per day.<br><br>As of the petition date, Wynn LV is owed $3,937,124.36.<br><br>Heyn Declaration, ¶11(a) | Nevada Marker Judgment | Judgment is final and non-appealable. |
| 4/9/12 | Nevada Clark County District Court | Case No: A577548 | Award to Wynn LV: $2,500,000 in compensatory damages. $1,250,000 in punitive damages.<br>&<br>Award to Wynn: $2,500,000 in compensatory damages. $1,250,000 in punitive damages.<br><br>As of the petition date, Wynn LV and Wynn are each owed $3,924,760.74.<br><br>Heyn Declaration, ¶11(b) | Nevada Defamation Judgment | Francis has appealed the court's denial of his motion to set aside the Nevada Defamation Judgment. This appeal is pending. |
| 12/12/12 | Los Angeles Superior Court of California (LASC) | Case No: BC438884 | Wynn awarded: $19,000,000 in compensatory damages.<br><br>As of the petition date, Wynn is owed $19,411,232.92.<br><br>Heyn Declaration, ¶11(c) | California Slander Judgment | Francis filed an appeal, which is pending. |

On 4/18/12, Wynn LV filed a lawsuit in Clark County District Court in Nevada (Nevada State Court), against the Debtors and other individuals and entities (Alter Ego Litigation). Motion, Ex. A (Settlement Agreement), Ex. 3. In the Alter Ego Litigation, Wynn LV is seeking a declaratory judgment that the Debtors are Francis's alter egos and that they are liable for the Nevada Market Judgment that Wynn LV obtained against Francis. Motion at 9; Settlement Agreement, Ex. 3.[2]

On 3/26/13, the Debtors (who at that time were acting as debtors-in-possession) removed the Alter Ego Litigation to the United States Bankruptcy Court for the District of Nevada. Settlement Agreement, Ex. 1, ¶ E. The Debtors filed a motion to transfer the Alter Ego Litigation to this Court on 4/1/13, and on 4/10/13 Wynn LV filed a motion to remand the Alter Ego Litigation to Nevada State Court. Id. ¶¶ F, G and Ex. 9. Wynn LV and the Trustee have agreed to continue these motions pending approval of the Settlement Agreement, which is currently before this Court. Id. ¶ H.

## B. Terms of the Settlement[3]

The Trustee, Wynn, and Wynn LV negotiated for several weeks in an attempt to resolve Wynn and Wynn LV's claims against the Debtors. Neilson Decl. ¶ 7. The Trustee, Wynn and, Wynn LV exchanged information and engaged in several arm's-length negotiations regarding the substance and specific terms of the Settlement Agreement. Id. The Settlement Agreement has two components: 1) Wynn and Wynn LV will have general unsecured claims in the amount of 90 percent of the Judgments, subject to certain offsets, exceptions, and subordination; and 2) Wynn LV, Wynn, and the Debtors will divide disputed funds currently held in an attorney's client trust account. A summary of those provisions is as follows:

   1. Judgments

Wynn LV and Wynn will have unsecured claims (Wynn Claims) equal to 90 percent of the value of their respective Judgments. If any of the Judgments is reduced on appeal, the Wynn Claims will be reduced to 90 percent of the final amount of the Judgments as modified by those appeals. The Wynn Claims will also be reduced to the extent that Wynn LV and Wynn collect from sources other than the Debtors, subject to certain limited exceptions.

The Wynn Claims will be subordinated in the following manner: the first $400,000 to be distributed to general unsecured creditors will be paid to the general unsecured

---

[2] Although the Alter Ego Litigation complaint only seeks a declaratory judgment that the Debtors are Francis's alter ego related to the Nevada Marker Judgment, the Trustee states that Wynn and Wynn LV "have asserted that each of the Debtors is liable for over $31 million in judgments against Mr. Francis because each are his alter egos." Declaration of R. Todd Neilson in Support of the Motion (Neilson Decl.) ¶ 5.

[3] To the extent there is any inconsistency, the terms of the Settlement Agreement control over the description of the Settlement Agreement in this ruling.

creditors <u>other</u> than Wynn and Wynn LV. Certain parties listed in Exhibit 8 to the Settlement Agreement will not benefit from this subordination provision.[4]

The portion of the Nevada Defamation Judgment that is based on punitive damages (1/3 of that judgment) will be subordinated to all other general unsecured creditors—including those persons and entities listed in Exhibit 8—"whose allowed claims are not otherwise subordinated" pursuant to Bankruptcy Code § 510(c). Settlement Agreement ¶ 2e. Motion at 14.

   2. Trust Fund

There is currently $1,846,578.28 in David R. Houston, and his law firm, David R. Houston, Ltd's (collectively Houston) trust account (Trust Fund). Heyn Decl. ¶ 15. All of the money in the Trust Fund was transferred from Boulevard Management (Boulevard). According to the Trustee, Boulevard served as Francis's personal accountant. After reviewing business records reflecting all funds received from or for the benefit of Francis, the Trustee determined that GGW Direct directly transferred $710,967.99 to Boulevard. The balance of the funds transferred to Boulevard, $2,337,383.16, came from Francis or non-Debtor entities. *Id.* ¶ 16. The Trustee has "had limited success in finding additional amounts that the Debtors indirectly transferred to Boulevard Management." *Id.* An accounting of Francis's Boulevard account demonstrates that the funds in that account were used for a variety of Francis's personal expenses. Heyn Decl. ¶ 17; Exhibit S. The remaining funds in Francis's Boulevard account ($1,946,578.28) were transferred to Houston on 5/12/13. *Id.* ¶ 17; Exhibit S. Although the evidence demonstrates that Houston received $1,946,578.28, there is currently $1,846,578.28 in the Trust Fund. *Id.* ¶ 17.

Of the $1,846,578.28 in the Trust Fund, the Settlement Agreement provides that $800,000 will be paid to the Debtors, and the balance will be paid to Wynn LV and will be credited against the Nevada Marker Judgment. Additionally, Wynn LV will have an allowed administrative claim of $250,000 against whichever debtor's estate is determined to be the owner of the Trust Fund (Admin. Claim). The Admin. Claim will have priority over all claims and administrative expenses of the Debtors except for administrative expenses allowed under § 503(b)(2).

Wynn LV will also dismiss the Debtors from the Alter Ego Litigation and will not attempt to add them back into that litigation unless the Debtors' bankruptcy cases are dismissed. The Trustee will also stipulate to remand the Alter Ego Litigation to the Nevada State Court.

C. *Arguments in the Motion*

The Trustee asserts that the Settlement Agreement was negotiated at arm's length and is fair, reasonable, and in the best interests of the creditors. According to the Trustee,

---

[4] The parties listed in Exhibit 8 are those who "appear to be beneficially owned or controlled by Mr. Francis, and law firms, lawyers, and other persons that represented and/or assisted Mr. Francis in his efforts to resist Wynn LV's claims and collection efforts." Notice of Motion at 2, n.2.

4

the Settlement Agreement will allow the Trustee to avoid protracted multi-forum litigation during which he would have to assert legal positions that are of doubtful merit. Specifically, the Trustee "has determined that there is a substantial risk that he will lose the Alter Ego Litigation and each of the Debtors eventually will be determined to be Mr. Francis's alter egos." Motion at 14. The Trustee supports this conclusion by noting that the Nevada State Court has found that Wynn LV had shown a "substantial likelihood" that it would prevail on the merits on the Alter Ego Litigation, and that "two other courts have made similar findings." Id.

The Trustee contends that it is very likely whatever court were to decide the Alter Ego Litigation would find that the Debtors were Francis' alter egos and are therefore responsible for 100 percent of the Judgments. Id. at 14-15. Nevada law would likely apply, asserts the Trustee, because under Nevada's choice of law rules the law of the forum state applies unless there is an actual conflict between the forum state's law and other possibly applicable law (which the Trustee asserts is Delaware). Id. at 17. According to the Trustee, because it is unsettled whether reverse veil piercing is permitted under Delaware law, Nevada law (which explicitly allows it) is not in direct conflict with Delaware law. Id.

The Trustee also argues that even if the court adjudicating the Alter Ego Litigation declined to apply reverse veil piercing, Wynn and Wynn LV have indicated they will seek to hold the Debtors liable for the Judgments based on the theory that the Debtors hold assets as Francis's nominee. Id. at 17-18. The Trustee states that this theory "presents challenges" for the Debtors. Id. at 18.

The Trustee notes the difficulty and expense associated with litigating a case in another jurisdiction (Nevada), and argues that all the creditors' interests will be served by the Settlement Agreement because of the: 1) litigation costs saved; 2) subordination of a portion of Wynn and Wynn LV's claims; and 3) Wynn and Wynn LV's claims not being allowed in their full face amount. Id. at 20-22.

Regarding the Trust Fund, the Trustee notes that the Debtors' claims to the entirety of those funds are not on completely solid ground. Thus, obtaining $800,000 of those funds for the benefit of the estates is a fair result because it approximates what the Debtors would be legally entitled to if the matter were adjudicated by a court. Id. at 22. Finally, the Trustee notes that obtaining $800,000 of the Trust Fund without having to incur additional administrative costs will save the estates money. The Trustee contends that it is more beneficial to the Debtors' estates to receive $800,000 now and for Wynn LV to receive a $250,000 priority claim, rather than for the Debtors' estates to simply receive $550,000 now. Motion at 24. He reasons that the larger amount of cash available immediately will help the Debtors "operate and pay administrative costs." Id. at 24.

D. *Opposition of GGW Global Brands, Inc.*

GGW Global argues that Wynn and Wynn LV's claims against the Debtors are invalid "as a matter of law." GGW Global Oppo. at 1. GGW Global asserts that under conflict

5

of law principles, the laws of Delaware or California should apply and reverse piercing is not allowed under the laws of those states. As a result, GGW Global contends that Wynn and Wynn LV's claims have no merit and the proposed Settlement Agreement is therefore unreasonable. *Id.* at 8. GGW Global also argues that when the Nevada State Court found that Wynn LV had shown a "substantial likelihood" that it would prevail on the merits on the Alter Ego Litigation, that court was not presented with any conflict of law analysis and just assumed that Nevada law would apply. Therefore, GGW Global asserts that the Nevada State Court's conclusion "has no import" to determining whether the Trustee would prevail against Wynn and Wynn LV on a reverse veil piercing claim. *Id.* at 8-9. Additionally, GGW Global claims that an Oklahoma state court's finding that certain of the Debtors were alter egos of Francis was based solely on "deemed admissions because of the failure of such entities to timely respond to requests for admission." GGW Global Oppo. at 10, n.5.

GGW Global also argues that the nominee theory could not be used to hold the Debtors liable for the Judgments against Francis because that theory only applies to issues involving federal tax liens. *Id.* at 10. GGW Global then undertakes what it calls an "Economic Analysis of Proposed Settlement" in which it asserts that the large allowed claims that Wynn and Wynn LV will have under the Settlement Agreement will unfairly dilute the distribution to other creditors. *Id.* at 10-12.[5] GGW Global asserts that the majority of $800,000, which will be paid to the Debtors' estates from the Trust Fund, will be used to pay the Trustee and his professionals' fees. According to GGW Global, this raises the "question of whether the proposed settlement was negotiated in good faith." *Id.* at 14.

GGW Global asserts that it has standing to oppose the Motion because it claims to be the sole member of GGW Marketing, LLC. In connection with its "Motion to Dismiss Bankruptcy Case of GGW Marketing, LLC" (MTD GGW Marketing), GGW Global submitted a declaration from Francis stating that "GGW Global Brands, Inc. was formerly known as GGW Brands, Inc." and "is the sole Member of GGW Marketing, LLC and has been its sole Member since November 2, 2006." Declaration of Joseph R. Francis in Support of GGW Global Brands, Inc. [sic] Motion to Dismiss Bankruptcy Case of GGW Marketing, LLC" (Francis Decl.) ¶¶ 2, 5. Docket #223.[6] In sum, GGW Global

---

[5] Although GGW Global contends that the Settlement Agreement will unfairly dilute the distribution to other creditors, it does not claim to be a creditor of any of the Debtors. Instead, it claims to be a member of GGW Marketing, LLC.

[6] GGW Global also submitted Ronald Tym's declaration in support of the MTD GGW Marketing (Tym Decl). Docket #224. Attached as Exhibit A to the Tym Declaration is an operating agreement of GGW Marketing, LLC (GGW Marketing OA). Tym Decl. Ex. A. Francis's declaration submitted in support of the MTD GGW Marketing also references the GGW Marketing OA, stating that it "has been in place since its execution by me on or about November 2, 2006." Francis Decl. ¶ 4. The GGW Marketing OA lists GGW Brands, Inc. as the member of GGW Marketing, LLC. Tym Decl., Ex. A. Exhibit 2 to the Francis's declaration is a "Certificate of Revocation of Voluntary Dissolution" dated 5/11/13 and filed with the California Secretary of State on 5/24/13, which states that "GGW Global Brands, Inc. f/k/a GGW Brands, Inc." has revoked its dissolution.

On 7/26/13 the Trustee filed an "Ex Parte Application to Continue Response Times and Hearing on GGW Global Brands, Inc. Motion to Dismiss Bankruptcy Case of GGW Marketing, LLC" (Ex Parte), docket

contends that, as a member of GGW Marketing, LLC, it has standing to oppose the Motion. GGW Oppo. at 14.

Finally, GGW Global contends that the Trustee and Wynn LV cannot split the Trust Fund because they are not the only parties involved in the litigation over those funds. *Id.* at 14-15. According to GGW Global, the approximately $1 million dollars in the Trust Fund that the Settlement Agreement allocates to Wynn LV actually belongs to Pepe Bus, LLC, which is a party to the Alter Ego Litigation and purportedly assigned the rights to such monies to GGW Global. The Court notes that GGW Global did not submit any admissible evidence substantiating this allegation.

### E. Opposition of Tamara Favazza

Favazza obtained a judgment in Missouri state court against Mantra Films, Inc. (Mantra) and MRA Holdings, LLC (MRA) based on claims of invasion of privacy, emotional distress, and wrongful use of her image on a video without her authorization. Favazza Oppo., Ex. 25. Favazza asserts that her judgment, which was against Mantra and MRA, is valid against the Debtors. *Id.* at 6. Favazza presents evidence that she contends demonstrates the Debtors are successors in interest to Mantra and MRA. For example, Favazza cites a Client Data Assessment Form dated 10/10/11 and executed by Francis, which states that the girls gone wild business was "formerly operated under Mantra Films, Inc., an Oklahoma corporation. The business is currently operated under GGW Brands, LLC, a Delaware limited liability company." Favazza Oppo., Ex. 1. Favazza also provides website screenshots that she asserts demonstrate the name change from Mantra to the GGW Entities. *Id.* Ex. 26 (showing Mantra as the entity holding the copyrights associated with the website) and Ex. 27 (a later screenshot showing GGW Brands, LLC as the entity holding the copyrights associated with the website).

Favazza then offers a lengthy explanation of reverse veil-piercing law and surveys the status of that law in Delaware, California, and Nevada. *Id.* at 9-15. Next, she argues that the choice of law will depend on the forum state, and that the Trustee "could easily win" the motion to transfer the Alter Ego Litigation to this Court. *Id.* at 15. Favazza contends that regardless of whether the matter is litigated in Nevada or California, the court would apply California substantive law and would therefore reject the reverse piercing claim. *Id.* at 18.

---

#274, which raises issues regarding some of the evidence that has been presented in the Debtors' cases. For example, in Francis's 4/18/12 deposition the following exchange took place: "Q: Do you know of the GGW companies - - how their ownership is structured? A: No." Ex Parte, Ex. A, 73:10-12. When asked if he had any role with GGW Marketing, LLC, Francis testified: "Never heard of - - no, I don't do any work." This testimony does not harmonize with Francis's declaration filed in support of the MTD GGW Marketing, where he explains the ownership structure of several of the GGW entities and purports to authenticate the GGW Marketing OA which he claims to have signed in 2006. Francis Decl. ¶¶ 2-6. In the Ex Parte, the Trustee also notes that even though the GGW Marketing OA falls within the scope of a subpoena previously served on Ronald Tym by the Trustee, Tym did not produce that document in response to the subpoena. Ex Parte at 3 and Ex. B. The Trustee raises other issues in the Ex Parte, however, these issues are not central to the decision on this Motion and will not be addressed at this time.

7

Favazza, like GGW Global, argues that the nominee theory is not applicable here because it is only applies in tax cases. *Id.* at 18. And, she wades into the details surrounding the monies in the Trust Fund and argues that the Trustee should have negotiated for a larger amount of those funds. *Id.* at 19. According to Favazza, the Trustee is only getting $550,000 of the Trust Fund, which she contends is insufficient.[7] Favazza then claims that approximately 21.5% of the $3 million transferred to Boulevard belonged to the Debtors directly (a total of $655,741.06 from Mantra, GGW Direct, LLC and Pepe Bus, LLC) and claims that the remainder of the $3 million in total funds transferred to Boulevard came from Francis. She calculates that 21.5% of the approximately $1.8 million in the Trust Account ($387,000) "is clearly Debtors' money." Favazza Oppo. at 20. Favazza argues that because Francis siphoned more than $7.6 million dollars from the Debtors, the Trustee should have "just as a legitimate claim" to the money in the Trust Fund as Wynn LV. Favazza Oppo. at 20-21. For all of these reasons, Favazza argues that the Court must reject the Settlement Agreement because "[t]here are far more reasonable options available." *Id.* at 22.

On 7/24/13, Favazza filed a "Supplement to Her Opposition" (Supplement). Docket #266. The Court notes that such a supplement is not authorized by the Local Bankruptcy Rules (LBRs).[8] Therefore, it is not being considered in this analysis.

### F. Opposition of Judgment Creditors in In re Girls Gone Wild Class Action Litigation[9]

On 9/30/09, the Class Action Creditors obtained a judgment against Mantra, MRA, and Francis in Los Angeles County Superior Court based on claims of unfair business practices relating to the sale of girls gone wild merchandise. Class Complaint ¶¶ 1, 12. The Class Action Creditors assert that the Motion should be denied because the bar date for filing proofs of claims is 9/12/13, and therefore any proposed settlement is premature.[10] According to the Class Action Creditors, "any additional potential creditors would be greatly prejudiced by approval of the Settlement Agreement before the bar date lapses." Class Action Creditors Oppo. at 3.

---

[7] Favazza is wrong regarding the proposed amount of the Trust Fund that the Debtors will receive. The Settlement Agreement provides that the Debtors will receive $800,000 and Wynn LV will have a priority claim of $250,000.

[8] It appears that the arguments raised in the Supplement are in response to a telephone conversation Favazza's counsel had with the Trustee's counsel regarding the applicability of a particular California statute.

[9] Oppositions to the Motion had to be filed by 7/24/13. Although the Class Action Creditor's Oppo. was not timely filed, they were not served with the notice of hearing (docket #235). Therefore, the Court considered the Class Action Creditor's Oppo.

[10] Class Action Creditors assert that notice of the bar date has not yet been mailed. The Court notes that on 7/25/13, an "Order Granting Motion for Order (1) Fixing Deadlines for Filing Proofs of Claims . . . ." was entered, docket #273, and on 7/28/13, a "Proof of Service re Bar Date Order [Docket No. 273]" was filed. Docket #278.

The Class Action Creditors contend that the Settlement Agreement is "unfair and inequitable" because it ignores all other GGW Entities' creditors and seeks to resolve only Wynn and Wynn LV's claims. And, they argue that there is no reason "to fast track Wynn's alter-ego litigation, which has been pending since April 18, 2012" and "no need to settle Wynn's claims at the expense of the other creditors." *Id.* at 4. The Class Action Creditors take issue with the provision of the Settlement Agreement that grants Wynn LV a $250,000 priority claim, while "remaining silent on what, if any, will be left for the remaining creditors." *Id.* at 5. They further contend that there would be no "prejudice in moving this hearing a few weeks" and that they join in Favazza's reverse veil piercing arguments.

G. *Trustee's Reply*

The Trustee first notes that—like Wynn and Wynn LV—two of the three objectors are asserting alter ego claims against the Debtors and that the third, GGW Global, is controlled by "the ultimate alter ego, Mr. Francis." Trustee Reply at 1. He takes issue with Favazza's characterization of the successor relationship between Mantra and MRA, on the one hand, and the GGW Entities on the other, as being a mere name change. The Trustee notes that the two Mantra entities are "indisputably separate entities" from the Debtors, which is highlighted by the fact that those entities filed bankruptcy cases that are currently pending in this district: *In re Mantra Films, Inc.*, 13-bk-19216-RN and *In re MRA Holding, LLC*, 13-bk-19224-RK. *Id.* at 3, n.4.

The Trustee asserts that he has evaluated Wynn and Wynn LV's claims "dispassionately," and will do the same with the other creditors in due course. *Id.* The Trustee notes that 1) Wynn and Wynn LV are well-funded adversaries; 2) they, have been very successful to date in their litigation efforts; 3) their claims would overwhelm those of other unsecured creditors; and 4) the "estate cannot afford to engage in endless litigation with all adversaries." *Id.* at 2. The Trustee also asserts that the $400,000 subordination provision "will be adequate to satisfy those creditors who were relying on the credit worthiness of the Debtors and had reasonable and legitimate expectations that they would not have to share the assets of the Debtors with other creditors." *Id.* at 10.

The Trustee disputes GGW Global's characterization of the Oklahoma and Nevada courts' alter ego findings. To rebut the contention that the Oklahoma court found that the Debtors were Francis's alter ego solely based on "deemed admissions," the Trustee submits Brian Rayment's (Rayment) declaration which was filed with the Oklahoma court. Rayment, who previously represented the Debtors and who was the plaintiff in that Oklahoma lawsuit, stated in the declaration that certain of the Debtors and related entities "are so closely linked and inextricably intertwined with the assets and affairs of Defendant Joseph R. Francis and each other as to be effectively one person/entity." Heyn Decl., Ex. X. The Trustee also challenges GGW Global's assertion that before finding that Wynn LV had a substantial likelihood of success on the merits, the Nevada State Court was never presented with any argument that California and Delaware do not recognize reverse piercing. The Trustee highlights that the Debtors filed a brief in opposition to Wynn LV's motion for a preliminary injunction in the Alter Ego Litigation,

9

which contains citations to Delaware and California precedent and argument why reverse piercing should not be applied. Heyn Decl., Ex. W.

The Trustee also argues that the nominee theory of liability is not limited to tax cases and that, contrary to GGW Global and Favazza's assertions, the law regarding reverse veil piercing is not well settled in California. Trustee Reply at 12. The Trustee cites *Taylor v. Newton*, 117 Cal.App.2d 752 (1952) and *Wood v. Elling Corp.*, 572 P.2d 755, 762 (1977) to support this latter assertion.

In response to Favazza's argument that $295,000 of the Trust Fund came from Pepe Bus, LLC, and thus belongs to the Debtors, the Trustee notes that the money was transferred to the Trust Fund when Pepe Bus, LLC was a defunct entity. Trustee Reply at 15 (citing Heyn Decl. Ex. Z). Because Francis was the sole member of Pepe Bus, LLC. the Trustee concludes that the $295,000 transferred from that entity "is likely Mr. Francis's money." Trustee Reply at 15. The Trustee also notes that although buses owned by Pepe Bus, LLC were used by the Debtors, that does not mean the Debtors own "everything that the bus owner may have once owned." *Id.* at 15 n.11.

The Trustee also responds to GGW Global's contention that it owns a portion of the Trust Fund by virtue of being an assignee of Pepe Bus, LLC and it should have therefore been served with the summons and complaint in the Alter Ego Litigation. The Trustee notes that Pepe Bus, LLC was voluntarily terminated on 3/12/12—before the Alter Ego Litigation was commenced—and as a result it did not need to be served. *Id.* at 16; Heyn Decl. Ex. Z. The Trustee continues by asserting that even if Pepe Bus, LLC should have been served, it was properly served through its manager, Francis. Trustee Reply at 16 (citing Nev. State Rules of Civil Pro. Rule 4(d)(2)). Finally, the Trustee takes issue with GGW Global's assertion that Pepe Bus, LLC assigned its right in the Trust Fund to GGW Global, noting that after Pepe Bus, LLC was voluntarily terminated it ceased to exist and could not enter into contracts. Trustee Reply at 16.

## H. Wynn LV Reply

Wynn LV takes issue with Favazza's contention that she—and not Wynn LV or Wynn— is a "legitimate corporate creditor" of the Debtors, noting that Favazza's judgment is only against Mantra and MRA, and not against one of the Debtors. *Id.* at 14. Wynn LV contends that GGW Global's argument that the Nevada State Court was not presented with the choice of law issue is false. According to Wynn LV, its first motion for injunctive relief filed in the Alter Ego Litigation was based on Nevada's reverse piercing law. That motion was hard fought and neither Francis nor any of the Debtors asserted that California or Delaware law should be applied. Wynn Reply at 9; Exhibit S to the Declaration of Mitchell J. Langberg (Langberg Decl.) at 17.[11]

---

[11] In their respective reply briefs the Trustee and Wynn LV each discuss what was in the briefs in the Alter Ego Litigation when the Nevada State Court ruled on the request preliminary injunction and TRO. A review of the motion for preliminary injunction, Langberg Decl., Ex. S (PI Motion), and the opposition to that motion, Heyn Decl., Ex. W (PI Motion Oppo.), reveals the following: The PI Motion argued that Nevada law should apply but that there was a possibility that Delaware law should apply. PI Motion at 17 n.10. The PI Motion concluded that "Delaware's alter ego laws are substantially the same as Nevada's."

10

Next, Wynn LV argues that the proposed division of the Trust Fund is fair. In fact, Wynn LV claims that it has a right to all of the money in the Trust Fund. According to Wynn LV, the Boulevard account (which was transferred to the Trust Fund) consisted entirely of money that belonged to Francis. Wynn Reply at 4. And, although some of the money in the Boulevard account was transferred to Francis from GGW Direct, LLC, those funds were transferred to "Francis at a time when Francis was the manager of the debtors and the debtors were solvent and operating profitably." Therefore, according to Wynn LV, those funds were legitimately paid to Francis in consideration for his services to GGW Direct, LLC. Wynn Reply at 5 (citing Langberg Decl. Ex. N, 80:5-25). Wynn LV also notes that, pursuant to both California and Nevada law, it has a first priority lien on the entire Trust Fund by virtue of its serving a Notice to Appear at a Judgment Debtor Examination on Francis and filing abstract of judgments in two Nevada counties. Wynn Reply at 5-6 (citing Langberg Decl. Ex.'s O, P, Q and R).

Wynn LV also challenges GGW Global's standing to oppose the Motion, reasoning that because GGW Marketing, LLC's liabilities far exceed its assets, an equity holder such as GGW Global does not have standing pursuant to § 1109(b) and applicable case law. *Id.* at 13. The cases cited by Wynn LV discuss general constitutional standing principles and not the standing of an equity holder in a situation such as the one currently before the Court.

I. *Requests for Judicial Notice*

On 7/15/13, the Trustee filed a "Request for Judicial Notice in Support of Motion for Approval of Settlement with Wynn Las Vegas, LLC and Stephen A. Wynn" (Trustee's RJN). Docket #229. The Trustee requests that the Court take judicial notice of certain documents that have been filed in other courts. On 7/23/13, Favazza also filed a "Request for the Court to Take Judicial Notice of Court Documents and Secretary of State Documents" (Favazza's RJN). Docket #261. Favazza requests that the Court take judicial notice of certain documents that have been filed in other courts as well as documents filed with the Oklahoma, California, and Delaware Secretary of State.

Pursuant to Federal Rule of Evidence 201, the Court can take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, the parties request that the Court take judicial of publicly filed documents. The Court can take judicial notice of the fact that these documents, which are undisputed matters of public record, were filed. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

---

*Id.* The PI Motion Oppo. cites reverse piercing precedent from Nevada, California, and Delaware (and also North Carolina and the Tenth Circuit), but does not contain any argument regarding which state's law should apply. *See, e.g.,* PI Motion Oppo. at 5-6.

11

The Court, however, cannot take judicial notice of the facts stated in judgments or opinions rendered in other cases. See Lee, 250 F.3d at 690 ("[W]hen a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (quoting Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 425-27 (3d Cir. 1999)); United States v. Jones, 29 F.3d 1549 (11th Cir. 1994) ("If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous."); United States v. Sine, 493 F.3d 1021, 1036 (9th Cir. 2007) ("A court judgment is hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment. . . . [T]he introduction of discrete judicial findings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay.").

## II. Legal Standard For Approval of Settlements

Federal Rule of Bankruptcy Procedure (FRBP) 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." A bankruptcy court has "great latitude in approving compromise agreements." Woodson v. Fireman's Fund Ins. Co., (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). The court's discretion, however, is not unlimited. A bankruptcy court should approve a settlement if it was the result of "good faith negotiation" and is "fair and equitable." In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986). When determining whether a proposed settlement agreement is fair and equitable, courts must consider the following:

  (a) The probability of success in the litigation;
  (b) The difficulties, if any, to be encountered in the matter of collection;
  (c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
  (d) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id. The trustee has the burden of demonstrating that the "compromise is fair and equitable and should be approved." Id.

"A settlement may be approved if it is fair and equitable when comparing the claims being compromised against the likely rewards of litigation." In re HyLoft, Inc., 451 B.R. 104, 109 (Bankr. D. Nev. 2011). See generally Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 425 (1968). Moreover, "[w]hen assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues." Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (9th Cir. BAP 1997). When analyzing a proposed settlement, a court should not substitute its "judgment for that of the trustee." In re Carla Leather, Inc., 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 764 (S.D.N.Y. 1985). Instead, the court must determine whether "the settlement fall[s] below the lowest point in the range of reasonableness." In re W.T. Grant & Co., 699 F.2d 599, 608 (2d Cir. 1983).